**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| KAREN COCHENOUR, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:25-CV-00007-RP |
| v. | ) ) | |
| 360TRAINING.COM, INC., D/B/A MORTGAGE EDUCATORS AND COMPLIANCE, INC., | ) ) ) ) | |
| Defendant. | ) | |

**<u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO
FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6) AND
INCORPORATED MEMORANDUM OF LAW</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................1

ARGUMENT ........................................................................................................................2

I.    PLAINTIFF LACKS STANDING UNDER FED. R. CIV. P. 12(b)(1). ...........................2

    A.    Legal Standard ........................................................................................................2

    B.    Plaintiff Has Not Suffered Any Injury-In-Fact. .....................................................3

II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6)..............9

    A.    Plaintiff Does Not Allege Mortgage Educators Is A "VTSP." ...............................9

    B.    Plaintiff Does Not Allege That Mortgage Educators Knowingly Disclosed
PII. ........................................................................................................................11

        1.    The FID Is Not PII. ...................................................................................11

        2.    Mortgage Educators Did Not Knowingly Disclose PII. ...........................13

    C.    Plaintiff Fails to Allege Actual Damages. ............................................................14

    D.    The VPPA Violates The First Amendment. ..........................................................15

        1.    The VPPA Imposes Suspect Burdens. ......................................................16

        2.    The VPPA Fails First Amendment Scrutiny..............................................17

CONCLUSION....................................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................................................9

*Ballinger v. City of Oakland,*
    398 F. Supp. 3d 560 (N.D. Cal. 2019), *aff'd*, 24 F.4th 1287 (9th Cir. 2022) .........18

*Barclift v. Keystone Credit Services, LLC,*
    93 F.4th 136 (3d Cir. 2024) ....................................................................................9

*Barr v. Am. Ass'n of Pol. Consultants, Inc.,*
    591 U.S. 610 (2020)................................................................................................17

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..................................................................................................9

*Cantu v. Sunrun Inc.,*
    No. 23-CV-974-JO-AHG, 2023 WL 11795670 (S.D. Cal. Nov. 22, 2023) ...........11

*Cantu v. Tapestry, Inc.,*
    No. 22-cv-1974-BAS-DDL, 2023 WL 4440662 (S.D. Cal. Jul. 10, 2023) ...........11

*Carroll, et al., v. General Mills, Inc.,*
    No.CV231746DSFMRWx, 2023 WL 4361093 (C.D. Ca. Jun. 26, 2023) .............10

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,*
    447 U.S. 557 (1980)................................................................................................17

*Citizens United v. Fed. Election Comm'n,*
    558 U.S. 310 (2010)................................................................................................16

*City of Ladue v. Gilleo,*
    512 U.S. 43 (1994)..................................................................................................19

*Crane v. Am. Bar Ass'n,*
    663 F. Supp. 3d 747 (E.D. Mich. 2023)....................................................................6

*Dacostagomez-Aguilar v. U.S. Att'y Gen.,*
    40 F.4th 1312 (11th Cir. 2022) ..............................................................................14

*Doe v. Chao,*
    540 U.S. 614 (2004)................................................................................................14

*Edwards v. Learfield Commc'ns, LLC,*
  697 F. Supp. 3d 1297 (N.D. Fla. Oct. 6, 2023) ........................................................12

*Eichenberger v. ESPN, Inc.*,
  No. 14–cv–463 (TSZ), 2015 WL 7252985 (W.D. Wash. May 7, 2015) ................................12

*Ellis v. Cartoon Network, Inc.*
  803 F.3d 1251 (11th Cir. 2015) ..........................................................................12

*Fanin v. U.S. Dep't of Veterans Affs.*,
  572 F.3d 868 (11th Cir. 2009) .....................................................................14, 15

*FF Cosms. FL, Inc. v. City of Miami Beach*,
  866 F.3d 1290 (11th Cir. 2017) ..........................................................................18

*Frawley v. Nexstar Media Grp. Inc.*,
  No. 3:23-CV-2197-L, 2024 WL 3798073 (N.D. Tex. July 22, 2024), *report
  and recommendation adopted*, No. 3:23-CV-2197-L, 2024 WL 3807700
  (N.D. Tex. Aug. 13, 2024) ................................................................................13

*Fus v. CafePress, Inc.*,
  No. 19-CV-06601, 2020 WL 7027653 (N.D. Ill. Nov. 30, 2020) .....................................7

*Gale Force Roofing & Restoration, LLC v. Brown*,
  548 F. Supp. 3d 1143 (N.D. Fla. 2021) ..................................................................20

*Greater New Orleans Broad. Ass'n, Inc. v. United States*,
  527 U.S. 173 (1999) .......................................................................................19

*Heyman v. Cooper*,
  31 F.4th 1315 (11th Cir. 2022) ...........................................................................14

*In re Hulu Priv. Litig.*,
  No. C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ................................12

*Hunstein v. Preferred Collection & Management Services, Inc.*,
  48 F.4th 1236 (11th Cir. 2022) (*en banc*) ..............................................................8

*Johnson v. Sawyer*,
  47 F.3d 716 (5th Cir. 1995) ...............................................................................8

*Knowles v. City of Waco, Tex.*,
  462 F.3d 430 (5th Cir. 2006) ............................................................................17

*Lowe v. Hearst Commc'ns, Inc.*,
  414 F. Supp. 2d 669 (W.D. Tex. 2006), *aff'd*, 487 F.3d 246 (5th Cir. 2007) ....................8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)..............................................................................3

*McMorris v. Carlos Lopez & Assoc.*,
    995 F.3d 295 (2d Cir. 2021)..................................................................6

*Mirfasihi v. Fleet Mortg. Corp.*,
    No. 01 C 722, 2007 WL 2066503 (N.D. Ill. July 17, 2007), *aff'd*, 551 F.3d 682
    (7th Cir. 2008)......................................................................................7

*Nabozny v. Optio Solutions LLC*,
    84 F.4th 731 (7th Cir. 2023) .................................................................9

*In re Nickelodeon Consumer Privacy Litig.*,
    827 F.3d 262 (3d Cir. 2016)....................................................11, 12, 13

*Nuziard v. Minority Bus. Dev. Agency*,
    721 F. Supp. 3d 431 (N.D. Tex. 2024) ..................................................3

*Paterson v. Weinberger*,
    644 F.2d 521 (5th Cir. 1981) ................................................................2

*Reed v. Town of Gilbert, Ariz.*,
    576 U.S. 155 (2015)........................................................................16, 17

*Robinson v. Disney Online*,
    152 F. Supp. 3d 176 (S.D.N.Y. 2015).............................................11, 12

*Rodriguez v. Delta T LLC*,
    No. 2:23-CV-03717-HDV-AGR, 2023 WL 9419152 (C.D. Cal. Dec. 12,
    2023) ...................................................................................................11

*Rubin v. Coors Brewing Co.*,
    514 U.S. 476 (1995).............................................................................19

*Salazar v. Nat'l Basketball Ass'n*,
    118 F.4th 533 (2d Cir. 2024) ................................................................9

*Shields v. Prof. Bureau of Collections*, 55 F.4th 823, 829 (10th Cir. 2022)...................................9

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011)................................................................16, 17, 19

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)...............................................................................2

*Tawam v. Feld Ent. Inc.*,
    684 F. Supp. 3d 1056 (S.D. Cal. 2023)................................................20

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ................................................................2, 3, 8

*U.S. West, Inc. v. FCC*,
   182 F.3d 1224 (10th Cir. 1999) ........................................16, 18, 19

*United States v. Dawson*,
   64 F.4th 1227 (11th Cir. 2023) ....................................................15

*United States v. Palomares*,
   52 F.4th 640 (5th Cir. 2022) .......................................................14

*United States v. Sparks*,
   806 F.3d 1323 (11th Cir. 2015) ...................................................18

*In re Vizio, Inc., Consumer Priv. Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..................................10, 20

*Wollschlaeger v. Governor of Fla.*,
   848 F.3d 1293 (11th Cir. 2017) ...................................................17

*Wooten v. La Salle Corr.*,
   No. 7:22-CV-000148 (WLS), 2024 WL 4132331 (M.D. Ga. Sept. 10, 2024) ......................18

*Yankovich v. Applus Tech., Inc.*,
   621 F. Supp. 3d 269 (D. Conn. Aug. 9, 2022) ................................7

**Statutes**

7 Pa.C.S. § 6111 .........................................................................3

7 Pa.C.S. § 6131(f) .....................................................................3

7 Pa. Cons. Stat. § 6101 (2022) ...................................................6

7 Pa. Cons. Stat. § 6131.1(d)(1) ................................................3, 4

7 Pa. Cons. Stat. § 6131.1(d)(2) ..................................................4

7 Pa. Cons. Stat. § 6131.1(e)(7)-(8) .............................................4

5 U.S.C. § 552a(g)(4)(A) ............................................................14

12 U.S.C. § 5103(a) .....................................................................3

12 U.S.C. § 5105(b)(1) ..................................................................3

12 U.S.C. § 5105(b)(2) ..................................................................4

18 U.S.C. 2710(c)(2)(A) .................................................................................14

18 U.S.C. § 2710(a)(3) ..........................................................................11, 19

18 U.S.C. § 2710(a)(4) ..........................................................................10, 20

18 U.S.C. § 2710(b)(1) .....................................................................9, 12, 16

18 U.S.C. § 2710(b)(2) ...............................................................................9

18 U.S.C. § 2710(c) ....................................................................................9

18 U.S.C. §§ 2710, *et seq.* ........................................................................1

**Rules**

Fed. R. Civ. P. 12(b)(1) .......................................................................1, 2, 20

Fed. R. Civ. P. 12(b)(6) .......................................................................1, 9, 20

**Other Authorities**

1988 U.S.C.C.A.N. 4342-4 ........................................................................18

Black's Law Dictionary ............................................................................15

Black's Law Dictionary (5th ed. 1979) ...................................................15

Black's Law Dictionary (10th ed. 2014) .................................................15

https://mortgageeducators.com/ .................................................................1

https://nmlsconsumeraccess.org/ ................................................................5

https://www.merriam-webster.com/dictionary/business (last visited Feb. 12, 2025) ...................10

https://www.merriam-webster.com/dictionary/livelihood (last visited Feb. 12, 2025) ........................................................................10

S. Rep. No. 100-599 ..................................................................................18

S. Rep. No. 100-599 (1988) .........................................................................6

S. Rep. No. 100-599 (1988) ........................................................................18

## INTRODUCTION

Defendant 360training.com, Inc., d/b/a Mortgage Educators and Compliance ("Mortgage Educators") is an online training provider offering state-approved prelicensure education and continuing education for mortgage loan originators ("MLOs"). (*See* Def's Appendix at Ex. 1, Mehmood Decl. ("Mehmood Decl."), ¶ 4.) Mortgage Educators operates a website, https://mortgageeducators.com/ (the "Website") (Compl. ¶ 45) that offers online prelicensure and continuing education courses for purchase. (*See* Mehmood Decl. ¶ 5.)  Plaintiff Karen Cochenour ("Plaintiff") alleges that she purchased prerecorded video material from the Website, and that Mortgage Educators shared her personal information and purchase information with Meta, allegedly in violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. §§ 2710, *et seq.* Plaintiff, however, has no Article III standing to bring this suit, and her claims must be dismissed under Fed. R. Civ. P. 12(b)(1), because the information she alleges was disclosed—information about her completion of continuing education courses required to maintain her MLO license—is publicly available, she does not allege any harm, and she consequently has no injury-in-fact. Alternatively, Plaintiff has not stated a claim pursuant to Fed. R. Civ. P. 12(b)(6) because she has not alleged facts supporting that Mortgage Educators is a video tape service provider, that the information allegedly disclosed constitutes personally identifiable information, or that she suffered any damages, and the VPPA in any event cannot withstand First Amendment scrutiny.

## BACKGROUND

Plaintiff's relevant allegations amount to 1) she purchased a course from the Website (Compl. ¶ 10); 2) the course, or "prerecorded video material," was shipped or delivered to her (*Id.*); 3) she has a Meta account, Meta Profile, and a Facebook ID ("FID") associated with such profile (*id.*, ¶ 11); 4) without consent, Mortgage Educators disclosed to Meta Plaintiff's FID, the

fact that she "requested" or "purchased" "prerecorded video material," and the identity of the prerecorded material (*id.*,¶¶ 10-14). The Complaint alleges Mortgage Educators' disclosure of customer information occurs through the use of Facebook Pixel on the Website. (*Id.*, ¶ 47.)

Based on these allegations, the Complaint brings a single cause of action for alleged violation of the VPPA. Specifically, Plaintiff alleges that Mortgage Educators violated the VPPA by disclosing her identity and information that reveals specific videos that Plaintiff watched. Plaintiff claims this conduct violates the VPPA because Mortgage Educators allegedly did not receive Plaintiff's consent allowing the disclosure of Plaintiff's information to third parties.

## ARGUMENT

## I.    PLAINTIFF LACKS STANDING UNDER FED. R. CIV. P. 12(B)(1).

### A.    Legal Standard

A motion to dismiss under Rule 12(b)(1) disputes the existence of the Court's subject-matter jurisdiction. When considering a factual challenge to subject-matter jurisdiction, the Court is not limited to facts pleaded in the complaint and may consider "affidavits, testimony, or other evidentiary materials." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). "[A] plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Id.*

To have standing under Article III of the U.S. Constitution, Plaintiff must allege she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To meet the first requirement, she must allege she has suffered a "concrete – that is, real, and not abstract" injury that has a "close historical or common-law analogue" "traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424-25 (2021) (internal quotation marks omitted). Because standing is

a constitutional requirement, a court faced with a challenge to standing must resolve that issue before proceeding further with the case. *Nuziard v. Minority Bus. Dev. Agency*, 721 F. Supp. 3d 431 (N.D. Tex. 2024) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992)).

"For standing purposes … an important difference exists between (i) a plaintiff 's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law. Congress may enact legal prohibitions and obligations. And Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations. But under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Ramirez*, 594 U.S. at 426–27.

Here, as explained further below, the information Plaintiff alleges was disclosed is publicly available information concerning her completion of MLO continuing education requirements required by federal and state law. Moreover, Plaintiff does not allege that she suffered any tangible harm or an intangible harm with a sufficiently close relationship to harms recognized by American courts.  Consequently, Plaintiff has not suffered any injury-in-fact and lacks standing.

**B.    Plaintiff Has Not Suffered Any Injury-In-Fact.**

Both federal and Pennsylvania state law require MLOs to be licensed. 12 U.S.C. § 5103(a); 7 Pa.C.S. § 6111; 7 Pa.C.S. § 6131(f). Once a person is licensed, both federal and state law require the person to complete at least eight hours of continuing education programs annually to renew their MLO license, which must include three hours of federal law and regulations, two hours of ethics (including fraud, consumer protection, and fair lending issues), and two hours of lending standards for nontraditional mortgage products. 12 U.S.C. § 5105(b)(1); 7 Pa. Cons. Stat. § 6131.1(d)(1). For MLOs in Pennsylvania, the eighth hour of continuing education must cover one

hour of Pennsylvania law. 7 Pa. Cons. Stat. § 6131.1(d)(1). Continuing education courses must be reviewed and approved by the Nationwide Mortgage Licensing System and Registry ("NMLS"). 12 U.S.C. § 5105(b)(2); 7 Pa. Cons. Stat. § 6131.1(d)(2). Additionally, records of attendance must be freely available to the state. 7 Pa. Cons. Stat. § 6131.1(e)(7)-(8).

Mortgage Educators is an NMLS-approved continuing education provider. Mehmood Decl. ¶ 4. Mortgage Educators owns and operates the Website, which sells national and state-specific MLO continuing education courses that satisfy national and state-specific continuing education requirements, including those in Pennsylvania. *Id.* ¶ 5. After users complete a continuing education course on the Website, Mortgage Educators is required to report the completion of that course to NMLS within seven days so NMLS can track compliance. *Id.* ¶ 6.

Plaintiff purchased four courses from Mortgage Educators between January 1, 2023 through December 31, 2024. *Id.* ¶ 10. These courses included: (1) 2023 1 Hour PA SAFE State Law Continuing Education Course #15061; (2) 2023 7 Hour Core SAFE Continuing Education Course #15064; (3) 2024 1 Hour PA SAFE State Law Continuing Education Course #15951; and (4) 2024 7 Hour Core SAFE Continuing Education Course #16070. *Id.* These courses have all been approved by NMLS to satisfy federal and Pennsylvania state continuing education requirements for MLO license renewals. *Id.* As required by NMLS, Mortgage Educators reported Plaintiff's completion of these courses to NMLS so NMLS can track Plaintiff's compliance with Pennsylvania's continuing education requirements. *Id.*

NMLS maintains a website, NMLS Consumer Access, where any member of the public can look up a company or individual with whom they are contemplating doing business to verify whether that company or individual is authorized to do business. *Id.* ¶ 11. Information about Plaintiff's MLO licensure is publicly available on the NMLS website by searching for "Karen

Cochenour" on https://nmlsconsumeraccess.org/. *Id.* ¶¶ 11-12. These publicly available records on the NMLS Consumer Access website reflect that Plaintiff was licensed as an MLO on or around March 4, 2022. *Id.* ¶ 11. According to the NMLS website, Plaintiff's MLO licensure status as of November 3, 2022, has been "Approved-Inactive." *Id.* ¶ 12. The NMLS website explains that the "Approved-Inactive" status is assigned when "the last active sponsorship is removed from a mortgage loan originator license" or "when an entity or individual informs a regulator (outside NMLS) that they do not intend to conduct business under the license for a period of time, but will continue to comply with certain licensing requirements in order to retain the license." *Id.* ¶ 13. Because Plaintiff has had this status since 2022, and continuing education requirements must be completed on an annual basis, the publicly available NMLS records confirm that Plaintiff has completed the eight hours of continuing education courses required to maintain her MLO license for the years 2022, 2023, and 2024. *Id.* ¶ 14. Those include the eight hours of continuing education that Plaintiff took from Mortgage Educators in 2023 and 2024. *Id.*

In this case, Plaintiff bases her VPPA claim on the allegation that Mortgage Educators shared information about the coursework that she purchased with Meta. (ECF 1 ¶¶ 10-11.) However, as explained above, MLO continuing education requirements are established by law, and information about Plaintiff's MLO licensure status, which implicitly reflects completion of those legally required continuing education courses, is publicly available on the NMLS website. In other words, Plaintiff is purporting to premise her alleged injury in this case on a disclosure of information that is publicly available. The "prerecorded video material" Plaintiff allegedly purchased and watched consisted of federal and state-mandated continuing education courses that she was required to complete to maintain her MLO license in Pennsylvania, and Pennsylvania law required Mortgage Educators to disclose her completion of those courses so that the governing

body, NMLS, could track her compliance.

Plaintiff alleges in the Complaint that the purported injury the VPPA seeks to prevent is a disclosure of information that provides "a window into our loves, likes, and dislikes . . . ." (Compl. ¶ 6 (quoting S. Rep. No. 100-599 at 7-8 (1988).) Here, federal and Pennsylvania laws *codify* the continuing education requirements for mortgage loan originators, like Plaintiff, to maintain their licenses. Continuing education requirements have nothing to do with "loves, likes, and dislikes," and everything to do with protections for consumers who work with a mortgage loan originator to obtain a mortgage. In fact, the chapter of Pennsylvania's Consolidated Statutes that sets out the continuing education requirements is entitled "Mortgage Loan Industry Licensing and ***Consumer Protection***." *See generally* 7 Pa. Cons. Stat. § 6101 (2022) (emphasis added). The disclosure of information about continuing education courses that Plaintiff was legally required to take to maintain her license (and which Plaintiff voluntarily undertook) cannot possibly invade any privacy interest protected by the VPPA.

Furthermore, the same information Plaintiff alleges was disclosed in this case is publicly available on the NMLS Consumer Access website by virtue of Plaintiff's public listing as an MLO licensed in Pennsylvania—which implicitly reveals Plaintiff has completed the continuing education required by law to maintain her MLO license. Many courts have recognized that disclosure of publicly available information is generally not sufficient to support Article III standing because there is no injury or imminent risk of future injury. *See McMorris v. Carlos Lopez & Assoc.*, 995 F.3d 295, 302 (2d Cir. 2021) (holding in data breach case that "less sensitive data, such as basic publicly available information…does not pose the same risk of future identity theft or fraud to plaintiffs if exposed"); *Crane v. Am. Bar Ass'n*, 663 F. Supp. 3d 747, 753 (E.D. Mich. 2023) ("But where information is already made 'freely available to the public,' before any

disclosure by a defendant—as it was here—the common law would recognize no invasion-of-privacy claim for giving additional publicity to something a person has already made public."); *Yankovich v. Applus Tech., Inc.*, 621 F. Supp. 3d 269, 277-78 (D. Conn. Aug. 9, 2022) (holding plaintiffs lacked Article III standing to assert claims where information compromised in data breach was publicly available); *Mirfasihi v. Fleet Mortg. Corp.*, No. 01 C 722, 2007 WL 2066503, at *4 (N.D. Ill. July 17, 2007), *aff'd*, 551 F.3d 682 (7th Cir. 2008) ("Because the information disclosed was already a matter of public record ... [defendant's] disclosure could not have caused any harm."); *Fus v. CafePress, Inc.*, No. 19-CV-06601, 2020 WL 7027653, at *3 (N.D. Ill. Nov. 30, 2020) ("[M]ost of [plaintiff's] information possessed by [defendant] at the time of the hack was publicly available information.... [T]he disclosure of such information does not expose [plaintiff] to a significant risk of identity theft or fraud.").

In short, the type of information at issue in this case simply is not subject to any legitimate claim of privacy. MLO continuing education requirements are set by statute, completion of MLO continuing education is required to be reported to the state and the NMLS, and information about MLO licensure status is publicly available on the NMLS Consumer Access website. Under these circumstances, Plaintiff has not suffered any injury by virtue of the alleged disclosure of information about MLO courses she purchased on Mortgage Educators' website.

Furthermore, the alleged disclosure of information about the statutorily required and public coursework to Meta did not cause Plaintiff to suffer a concrete injury-in-fact under Article III. Plaintiff does not allege she suffered any tangible harm (*i.e.*, physical or monetary injury). Likewise, Plaintiff does not allege to have suffered any intangible harm (*i.e.*, injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.") In *Ramirez*, for instance, the Supreme Court held the harm from being misleadingly

labeled a "potential terrorist" bears a "sufficiently close relationship to the harm from a false and defamatory statement" to satisfy an intangible harm. 594 U.S. at 433. Here, however, Plaintiff does not allege Mortgage Educators made an allegedly defamatory statement about her.

Plaintiff also has not suffered a harm with a close relationship to the publication of private facts. "To establish the tort of invasion of privacy based upon the public disclosure of private facts, the plaintiff must demonstrate that (1) publicity was given to matters concerning his private life, (2) the publication of which would be highly offensive to a reasonable person of ordinary sensibilities, and (3) the matter publicized was not of legitimate public concern." *Lowe v. Hearst Commc'ns, Inc.*, 414 F. Supp. 2d 669, 673 (W.D. Tex. 2006), *aff'd*, 487 F.3d 246 (5th Cir. 2007). Plaintiff cannot satisfy any of the elements of this tort since the courses and her completion of the courses are required by law. Indeed, even if the facts were private or contained sensitive information, "[t]he Texas Supreme Court in *Industrial Foundation* further expressly held that this tort did *not* extend to publication of facts, no matter how intimate, embarrassing, or otherwise private, which were a matter of open public record, stating: 'the State may not protect an individual's privacy interests by recognizing a cause of action in tort for giving publicity to highly private facts, if those facts are a matter of public record.'" *Johnson v. Sawyer*, 47 F.3d 716, 731 (5th Cir. 1995). Additionally, "[t]his cause of action requires the plaintiff to prove … that such information was 'communicated to the public at large,' not simply to 'a small group of persons.'" *Id.* Thus, Plaintiff does not allege she suffered publication of private facts.

Finally, since *Ramirez*, several circuit courts have held that consumers do not suffer a concrete injury under Article III when their non-private information is disclosed to a business, rather than the public at large, because such claims "lack[] a necessary element of the comparator tort – the requirement that the disclosure be public." *Hunstein v. Preferred Collection & Mgmt.*

*Servs., Inc.*, 48 F.4th 1236, 1240 (11th Cir. 2022) (*en banc*); *Nabozny v. Optio Solutions LLC*, 84 F.4th 731, 735 (7th Cir. 2023); *Shields v. Prof. Bureau of Collections*, 55 F.4th 823, 829 (10th Cir. 2022); *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136 (3d Cir. 2024). *Contra Salazar v. Nat'l Basketball Ass'n,* 118 F.4th 533, 544 (2d Cir. 2024). Consequently, Plaintiff has not suffered a concrete, particularized injury-in-fact and therefore lacks Article III standing.

## II.     PLAINTIFF FAILS TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court assessing the sufficiency of a complaint must disregard legal labels or conclusions, which are not entitled to the presumption of the truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

To state a claim under the VPPA, plaintiff must allege that (1) Mortgage Educators is a video tape service provider; (2) who knowingly disclosed to any person; (3) personally identifiable information; (4) concerning any consumer; (5) without obtaining the consumer's informed, written consent; and (6) the consumer has suffered actual damages. *See* 18 U.S.C. § 2710(b)(1); 18 U.S.C. § 2710(b)(2); 18 U.S.C. § 2710(c).

Plaintiff's allegations fail to state a VPPA claim because she fails to plausibly allege that (1) Mortgage Educators is a video tape service provider; (2) the alleged disclosures by Mortgage Educators are not personally identifiable information ("PII"); (3) the disclosure of her purported PII would, with little or no extra effort, permit an ordinary person to identify Plaintiffs' video-watching habits; or (4) she suffered "actual damages."

### A.     Plaintiff Does Not Allege Mortgage Educators Is A "VTSP."

A "video tape service provider" ("VTSP") is defined as "any person, ***engaged in the***

*business*, in or affecting interstate or foreign commerce, *of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials* . . . ." 18 U.S.C. § 2710(a)(4) (emphasis added). The Complaint alleges, in a conclusory manner, that Mortgage Educators is "engaged in the business" of rental, sale or delivery of "similar audio-visual materials." But as Plaintiff acknowledges, Mortgage Educators is engaged in the business of providing licensure and continuing education courses. (Compl. ¶ 45.)

"Business" is defined as "a usually commercial or mercantile activity engaged in as a means of livelihood." *See* "business" (def. 1a), https://www.merriam-webster.com/dictionary/business (last visited Feb. 12, 2025). "Livelihood" is defined as "means of support or subsistence." *See* "livelihood" (def. 1), https://www.merriam-webster.com/dictionary/livelihood (last visited Feb. 12, 2025). Thus, to be "engaged in the business" of a particular activity, that activity must be the company's "means of support or subsistence." *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) (to be "engaged in the business…of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," "the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose"). In other words, delivering video content must be "a focus of the defendant's work" and businesses which are only "peripherally or passively involved in video content delivery do not fall within the statutory definition of a video tape service provider." *Id.* at 1221-22.

Plaintiff does not allege Mortgage Educators is substantially involved in the conveyance of video content on the Website, and her claim must fail. *See Carroll, et al., v. General Mills, Inc.*, No.CV231746DSFMRWx, 2023 WL 4361093 at *3-4 (C.D. Ca. Jun. 26, 2023) (finding General Mills was not a VTSP where "[t]he few allegations in the FAC about General Mills' business are

conclusory" and "[n]othing suggests that Defendant's business is centered, tailored, or focused around providing and delivering audiovisual content."); *Cantu v. Tapestry, Inc.*, No. 22-cv-1974-BAS-DDL, 2023 WL 4440662, *8 (S.D. Cal. Jul. 10, 2023); *Rodriguez v. Delta T LLC*, No. 2:23-CV-03717-HDV-AGR, 2023 WL 9419152,*4 (C.D. Cal. Dec. 12, 2023); *Cantu v. Sunrun Inc.*, No. 23-CV-974-JO-AHG, 2023 WL 11795670, *3 (S.D. Cal. Nov. 22, 2023).

### B. Plaintiff Does Not Allege That Mortgage Educators Knowingly Disclosed PII.

The VPPA states that PII "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Unless a VTSP has provided notice and obtained consent, it is prohibited from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015). "[T]he information disclosed by a video tape service provider must, at the very least, identify a *particular person*—not just an anonymous individual—and connect this particular person with his or her viewing history." *Robinson*, 152 F. Supp. 3d at 179.

### 1. The FID Is Not PII.

The most basic requirement of a VPPA claim is disclosure of "the kind of information that would ***readily permit an ordinary person*** to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 267 (3d Cir. 2016) (emphasis added). Plaintiff alleges the disclosure of her Facebook ID ("FID"), a sequence of numbers. (Compl. ¶ 4.) On its face, such numbers are not information that would ***readily permit an ordinary person*** to identify a specific individual's video-watching behavior without further steps or attempts to link information. Plaintiff admits a person would need to plug the FID into Facebook's website to pull up the associated profile and then attempt to identify the person based on the information available there. (Compl. ¶¶ 4, 50.) This multi-step investigative process does not make the FID

itself PII. *See Edwards v. Learfield Commc'ns, LLC*, 697 F. Supp. 3d 1297, 1307-08 (N.D. Fla. Oct. 6, 2023).

The FID is merely a static digital identifier which is not PII.[1] The VPPA "protects personally identifiable information that identifies a specific person and ties that person to particular videos that the person watched." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 285 (quoting *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 1724344, at *8 (N.D. Cal. Apr. 28, 2014)).[2] Static digital identifiers, as defined in *Ellis v. Cartoon Network, Inc.* 803 F.3d 1251, 1257 (11th Cir. 2015), include such things as a unique device identifier that is "randomly generated when a user initially sets up his device and should remain constant for the lifetime of the user's device." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 282, n.124 (citing *Ellis*). These random strings of numbers, when viewed by an ordinary person, do not identify the person. Rather, "[t]o an average person, an IP address or a digital code in a cookie file would likely be of little help in trying to identify an actual person*." In re Nickelodeon*, 827 F.3d at 283.

*In re Nickelodeon*, involved plaintiff's IP address, a user's browser and operating system settings, and most importantly, *a computing device's unique device identifier. Id*. at 281-82. The court explicitly held that "the expansion of privacy laws since the Video Privacy Protection Act's passage demonstrates that, whatever else 'personally identifiable information' meant in 1988, it did not encompass" such static digital identifiers. *Id*. at 286. And unlike other statutes which "gave

---

[1] The *Nickelodeon* Court noted that "[n]umerous district courts have grappled with the question of whether the Video Privacy Protection Act applies to static digital identifiers" and that "[m]ost have followed the rule adopted in *In re Hulu Privacy Litigation*" wherein "[t]he court [] concluded that static digital identifiers that could, in theory, be combined with other information to identify a person do not count as 'personally identifiable information' under the Act, at least by themselves." 827 F.3d at 283 (collecting cases holding the same including *Robinson*, 152 F. Supp. 3d at 182–83; *Eichenberger v. ESPN, Inc.*, No. 14–cv–463 (TSZ), 2015 WL 7252985, at *4–5 (W.D. Wash. May 7, 2015); *Ellis*, 2014 WL 5023535, at *3.

[2] *See also Robinson,* 152 F. Supp. 3d at 182 ("the most natural reading of PII suggests that it is the information actually 'disclos[ed]' by a 'video tape service provider,' 18 U.S.C. § 2710(b)(1), **which must itself do the identifying** that is relevant for purposes of the VPPA (literally, 'information which identifies')—**not information disclosed by a provider, plus other pieces of information** collected elsewhere by non-defendant third parties.") (emphasis added).

the FTC authority to expand the types of information that count as personally identifying under that law," "[t]he Video Privacy Protection Act…does not empower an administrative agency to augment the definition of 'personally identifiable information' in light of changing circumstances or new technologies. The meaning of that phrase in the Act is, it would appear, more static." *Id*. Further, and more importantly, *In re Nickelodeon* explained Congress's subsequent amendment of the VPPA in 2013 demonstrates Congress was "was keenly aware of how technological changes have affected the original Act" and "[d]espite this recognition, Congress did not update the definition of personally identifiable information in the statute." *Id*. "What's more, it chose not to do so despite . . . submitted written testimony that" specifically argued for "the addition of … account identifiers to the definition of [personally identifiable information]." *Id*. at 288.

This Court should follow *In re Nickelodeon* to hold the FID that Plaintiff alleges was disclosed is ***not*** PII because it is merely a static digital identifier that is automatically sent through a cookie file to a single company, which is nothing like the purposeful and public disclosures of actual names with video viewing history to the public at large.[3] *See id.* at 286. Indeed, "[t]he classic example will always be a video clerk leaking an individual customer's video rental history," and "every step away from that 1988 paradigm will make it harder for a plaintiff to make out a successful claim."

### 2.    Mortgage Educators Did Not Knowingly Disclose PII.

Plaintiff also does not allege that Mortgage Educators knew whether she, or any other user, had an FID, much less what those FIDs were. Therefore, Plaintiff does not plausibly allege that

---

[3] Defendant is aware of one recent case from the Northern District of Texas which grappled with similar questions. *Frawley v. Nexstar Media Grp. Inc*., No. 3:23-CV-2197-L, 2024 WL 3798073 (N.D. Tex. July 22, 2024), *report and recommendation adopted*, No. 3:23-CV-2197-L, 2024 WL 3807700 (N.D. Tex. Aug. 13, 2024). Defendant respectfully submits that *Frawley* reached the wrong conclusion because a static digital identifier, for example 12345, does not allow an ordinary person to identify an individual. To the extent that this Court disagrees, Plaintiff has failed to allege that her profile is publicly available; she has only alleged that her profile contained her full name. (Compl. ¶ 11.) If Plaintiff's profile is not publicly available, no identifying information would be available.

Mortgage Educators *knowingly* disclosed her FID, let alone her PII, to Facebook.

> **C.        Plaintiff Fails to Allege Actual Damages.**

Under the VPPA, a court may award "actual damages but not less than liquidated damages in an amount of $2,500." 18 U.S.C. 2710(c)(2)(A).  When read in context, it is apparent that the language "but not less than liquidated damages in an amount of $2,500" is intended to limit the phrase "actual damages." *See Heyman v. Cooper*, 31 F.4th 1315, 1319 (11th Cir. 2022) ("According to the rule of the last antecedent, a 'limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows.'"). The plain language of the VPPA indicates that Congress only intended to compensate for actual damages. Because Plaintiff does not allege any actual damages, she has failed to state a claim.

In *Doe v. Chao*, 540 U.S. 614 (2004), the Supreme Court interpreted the Privacy Act of 1974, which has language similar to the VPPA that provides for "actual damages sustained by the individual…but in no case shall a person entitled to recovery receive less than the sum of $1,000." *Id.* at 619 (quoting 5 U.S.C. § 552a(g)(4)(A)). The Court held that actual damages are a prerequisite to recovering the statutory amount. *Id.* at 627. *See also Fanin v. U.S. Dep't of Veterans Affs.*, 572 F.3d 868, 872 (11th Cir. 2009) ("Obtaining monetary damages under § 552a(g)(4) requires proof of 'actual damages.'"). The Court's explained that its interpretation of the damages language turned on the presence of the phrase "actual damages" in the statute, *see Doe*, 540 U.S. at 623 n.8—the phrase that is also present in the VPPA's damages provision.

To read the VPPA as permitting an award of $2,500 in the absence of actual damages requires substituting the conjunction "or" in the place of the phrase "but not less than." *See Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1316 (11th Cir. 2022) ("The use of the disjunctive 'or' indicates alternatives and requires that those alternatives be treated separately.") (internal quotation marks omitted); *United States v. Palomares*, 52 F.4th 640 (5th Cir. 2022) ("'Or'

is disjunctive.") (citing *Conjunctive/disjunctive canon*, Black's Law Dictionary (10th ed. 2014)). Such an interpretation is at odds with the plain language.

Here, Plaintiff has not alleged any actual damages that can open the door to the VPPA's statutory minimum damages. The phrase "actual damages" is not defined in the VPPA, but other circuits have interpreted "actual damages" as permitting "recovery only for proven pecuniary losses and not for generalized mental injuries, loss of reputation, embarrassment or other non-quantifiable injuries." *Fanin*, 572 F.3d at 872-73. The *Black's Law Dictionary* definition from the time the VPPA was enacted further supports this conclusion. *See United States v. Dawson*, 64 F.4th 1227, 1236 (11th Cir. 2023) (explaining that courts "look to the plain and ordinary meaning of the statutory language as it was understood at the time the law was enacted," which can be determined "by looking at dictionaries in existence around the time of enactment"). The applicable edition of *Black's Law Dictionary* defines "actual damages" as follows: "Real, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed on the one hand to 'nominal' damages, and on the other to 'exemplary' or 'punitive' damages. Synonymous with 'compensatory damages' and with 'general damages.'" *Damages*, *Black's Law Dictionary* (5th ed. 1979). The Complaint alleges nothing more than mere sharing of Plaintiffs' information, which is non-quantifiable, and thus, does not satisfy the "actual damages" requirement. (*see* Compl. ¶¶ 10, 28, 39, 47); *see also Fanin*, 572 F.3d at 870, 875 (holding that plaintiffs who names, social security numbers, birth dates, and healthcare files were contained on a stolen hard drive could not recover statutory damages under the Privacy Act of 1974 because they failed to show any pecuniary loss). Thus, Plaintiff is not entitled to the statutory minimum damages, and her Complaint fails to state a claim upon which relief can be granted.

### D.     The VPPA Violates The First Amendment.

The Complaint should be dismissed because it seeks to enforce an unconstitutional statute.

The First Amendment states, "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I. Laws like the VPPA that "burden" speech are unconstitutional unless they satisfy First Amendment scrutiny. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011); *U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1224 (10th Cir. 1999) (holding FCC regulation violated First Amendment where it restricted telecommunication carriers from using customer information "that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship" because it made speech more difficult by limiting carriers' ability to target speech to particular audience). The VPPA imposes severe speech restrictions that cannot be justified.

### 1.     The VPPA Imposes Suspect Burdens.

The VPPA triggers First Amendment scrutiny because it places speaker- and content-based restrictions on the dissemination of information. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015); *Sorrell*, 564 U.S. at 567. The First Amendment "[p]rohibit[s] restrictions [that] distinguish[] among different speakers." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010); *see also Reed*, 576 U.S. at 170.  Further, content-based restrictions "are presumptively unconstitutional. . . ." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).

A burden is speaker-based if it applies only to some classes of speakers and content-based if its application turns on the message of regulated speech.  *Sorrell,* 564 U.S. at 567. Here, the VPPA applies only to a "video tape service provider" and prohibits only the disclosure of "personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). Its dictates are speaker-based because they "target[s] those speakers" within their gateway definitions and no others, *Sorrell*, 564 U.S. at 565, and content-based because its applicability "depend[s] entirely on the communicative content of the" disclosures. *Reed*, 576 U.S. at 164. The Supreme Court in *Sorrell* held that a Vermont law restricting "the sale, disclosure, and use of prescriber-identifying information," which pharmacies receive when processing

prescriptions, was both content- and speaker-based and triggered "heightened scrutiny." 564 U.S. at 571. The VPPA likewise forbids specified speakers from disclosing information that can be identified only by its content. First Amendment scrutiny applies.

### 2.    The VPPA Fails First Amendment Scrutiny.

First Amendment scrutiny is not satisfied. As an initial matter, strict scrutiny is the applicable standard. *See Reed*, 576 U.S. at 163, 171. The VPPA must therefore be "narrowly tailored to serve compelling state interests." *Id*. Although *Sorrell* declined to decide whether strict scrutiny or the intermediate standard under *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980), applies to content- and speaker-based commercial speech, 564 U.S. at 571, the Court more recently applied strict scrutiny to a ban on robocalls, reasoning that, under its "precedents, a 'law that is content based' is 'subject to strict scrutiny.'" *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 621 (2020) (quoting *Reed*, 576 U.S. at 165). Strict scrutiny is therefore the appropriate standard here.

But the VPPA cannot even satisfy intermediate scrutiny, as the law is not "narrowly tailored to serve a significant governmental interest." *Knowles v. City of Waco, Tex.*, 462 F.3d 430, 433-34 (5th Cir. 2006) (quotation omitted). And a court "need not decide whether strict scrutiny applies," if a law does not survive constitutional scrutiny under either standard. *See Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293, 1308 (11th Cir. 2017).

For example, under an intermediate scrutiny "commercial speech inquiry" it must be shown "at least that the statute directly advances a substantial governmental interest and that the measure is drawn to achieve that interest." *Sorrell*, 564 U.S. at 572. This test is often expressed in four inquiries: (1) whether the speech at issue concerns "lawful activity" and is not "misleading," (2) whether the government interest in burdening speech is "substantial," (3) whether "the regulation directly advances the asserted government interest," and (4) whether the regulation is

"more extensive than is necessary to serve that interest." *FF Cosms. FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017). The VPPA fails each inquiry.

First, it does not prevent misleading speech or address illegal businesses.

Second, no substantial interest supports the severe speech prohibitions. "[T]he government cannot satisfy the second prong of the *Central Hudson* test by merely asserting a broad interest in privacy," but must also "specify the particular notion of privacy and interest served" and demonstrate "that the state has considered the proper balancing of the benefits and harms of privacy." *U.S. West*, 182 F.3d at 1234-35. Congress's record for the VPPA specified the statute protects the notion of privacy defined by the First and Fourth Amendments. S. Rep. No. 100-599, at 4-5 (1988), *as re-printed in* 1988 U.S.C.C.A.N. 4342-4. But both Amendments constrain only state action. *See United States v. Sparks*, 806 F.3d 1323, 1334 (11th Cir. 2015); *Ballinger v. City of Oakland*, 398 F. Supp. 3d 560, 574 (N.D. Cal. 2019), *aff'd*, 24 F.4th 1287 (9th Cir. 2022); *Wooten v. La Salle Corr.*, No. 7:22-CV-000148 (WLS), 2024 WL 4132331, *6 (M.D. Ga. Sept. 10, 2024). So the VPPA, which burdens private businesses, does not "extend" their rights, S. Rep. No. 100-599 at 2. And the choice to prohibit private speech in the name of "intellectual freedom," *id.* at 4, makes little sense.

The legislative history also cites an incident "when a weekly newspaper in Washington published a profile of Judge Robert H. Bork based on the titles of 146 films his family had rented from a video store" and one other incident where "the attorney for a woman in a child custody proceeding made an informal request for the records of every film rented by her husband in an effort to show that, based on his viewing habits, he was an unfit father." *Id.* at 5-6. But simply reciting two incidents—out of innumerable video rentals nationwide—does not "show that the dissemination of the information desired to be kept private would inflict specific and significant

harm on individuals." *U.S. West*, 182 F.3d at 1235. In neither incident did any harm arise. Judge Bork's Supreme Court nomination failed because of his judicial philosophy, not his video rentals, and there is no evidence that the attorney in the custody proceeding obtained the film records.[4] Simply put, the legislative history cites not one incident of harm arising from disclosure of video rentals. *See Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995) (explaining that the burden "is not satisfied by mere speculation or conjecture") (quotation marks omitted).

Third, even if a privacy interest were sufficient, the VPPA does not "directly advance[]" it. *Sorrell*, 564 U.S. at 572. "There must be a 'fit between the legislature's ends and the means chosen to accomplish those ends.'" *Id.* The VPPA is unconstitutionally underinclusive. *See Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 190 (1999). "While surprising at first glance, the notion that a regulation of speech may be impermissibly *underinclusive* is firmly grounded in basic First Amendment principles." *City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994) (footnote omitted). Underinclusive laws present "risks of viewpoint and content discrimination," and "[t]hey may diminish the credibility of the government's rationale for restricting speech in the first place." *Id.* at 52.

The VPPA protects privacy in the most selective and irrational of ways. It protects only "video" purchases, rentals, or deliveries, 18 U.S.C. § 2710(a)(3), but not books, magazines, music, and pictures. "The failure to prohibit the disclosure of" purchases of such materials "makes no rational sense if the Government's true aim is to" protect intellectual privacy or guard against embarrassment from public disclosure of information people consume at home. *Rubin*, 514 U.S. at 488. Under the statute, renting *Lassie* activates fulsome statutory penalties if that rental is disclosed, but books, magazines, and photographs with sexual content (or any content) receive no

---

[4] Given substantial amounts of private information are exchanged daily in litigation discovery, it is hard to see what a litigation incident could say about an important privacy interest.

protection. Likewise, because the statute protects only "prerecorded" materials, 18 U.S.C. § 2710(a)(4), someone who watches livestreamed video content (no matter how embarrassing) receives none of the rights provided to those who watch prerecorded content (no matter how innocuous). The *same* video content will be unprotected on a first, live showing but may be protected on later showings. The VPPA is also selective in its application to some businesses, but not others. The statute applies to a video obtained from a business having "a focus" of video rental (*e.g.*, Netflix) but not to the *same video* from a business without that focus (*e.g.*, Target). *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221-22 (C.D. Cal. 2017). And it selectively reaches renters, purchasers, and subscribers, but no one else. *Tawam v. Feld Ent. Inc.*, 684 F. Supp. 3d 1056, 1061 (S.D. Cal. 2023). This burdens some speakers, but not others, for no reason whatsoever.

Finally, Congress could have passed a privacy law that protects privacy in a rational manner without this selectivity, *see Gale Force Roofing & Restoration, LLC v. Brown*, 548 F. Supp. 3d 1143, 1160 (N.D. Fla. 2021), such as by applying directives to all content for which an intellectual-privacy interest might reasonably attach, and all suppliers of that content. Instead, Congress picked the case of a single judicial nominee, drew up a law to prevent *that* case from reoccurring, and protected practically nothing else. This is so irrational the VPPA will not even do that: if all internet images a future judicial nominee ever viewed are made public, the statute invoked here will say nothing—even though that would be no different from the Bork incident that inspired the VPPA. That is no way to protect privacy, and it does not justify severe speech burdens.

## **CONCLUSION**

Plaintiff's claims should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of standing or alternatively pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Dated: March 5, 2025

Respectfully submitted,

BAKER & HOSTETLER LLP

By:    */s/ Rachel Palmer Hooper*

Rachel Palmer Hooper
Texas Bar No. 24039102
811 Main Street, Suite 1100
Houston, Texas 77002
Tel: 713.646.1329
Fax: 713.751.1717
rhooper@bakerlaw.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, March 5, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record. I further certify that a true and correct copy of the foregoing document was served via certified mail on the following:

Pamela Bondi
Attorney General for the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001


/s/ *Rachel Palmer Hooper*