## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

KAREN COCHENOUR, individually and on behalf
of all others similarly situated,

               Plaintiff,

     v.

360TRAINING.COM, INC., d/b/a MORTGAGE
EDUCATORS and COMPLIANCE, INC.,

              Defendant.

Case No. 1:25-cv-00007-RP

## PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Karen Cochenour, by and through undersigned counsel, submits this response and incorporated memorandum of law in opposition to the Motion to Dismiss filed by Defendant 360Training.com, Inc. (Dkt. 10 (the "Motion")).

## I.    **INTRODUCTION**

Plaintiff brings a single claim against the Defendant for violating the Video Privacy Protection Act, 18 U.S. Code § 2710 ("VPPA"). (*See* Complaint ("Compl."), Dkt. 1). Her claim arises from Defendant's knowing and intentional installation of Meta Platform, Inc.'s tracking tool called the "Meta Pixel" on the www.mortgageeducators.com website (the "Website"). (*Id*., ¶ 2). When Plaintiff and other consumers requested or obtained prerecorded videos on that Website, Defendant sent their personally identifiable information to Meta in violation of the VPPA. (*Id*.).

Defendant has now moved to dismiss the Complaint on three grounds: *first*, that this Court lacks subject matter jurisdiction because Plaintiff lacks Article III standing to assert a VPPA claim; *second*, that Plaintiff has failed to state a claim under Rule 12(b)(6); and *third*, that the VPPA is unconstitutional under the First Amendment to the United States Constitution. (Dkt. 10). All three grounds for dismissal are without merit.

Defendant's first argument fails because this case is not about Defendant disclosing to Meta that Plaintiff satisfied the state continuing education requirements to be an active mortgage loan originator, as the Motion suggests. (Dkt. 10 at 3). Rather, Plaintiff's case is about Defendant's knowing and intentional decision to disclose to Meta that Plaintiff purchased certain online prerecorded videos. Satisfying continuing education requirements to be a mortgage originator is not synonymous with watching the prerecorded videos purchased by Plaintiff on Defendant's website, because satisfaction of mortgage loan originator educational requirements can be accomplished in any number of ways, including by attending in-person classes or online courses, completing online text-only modules, or by listening to audiobooks. *See* 7 Pa.C.S. § 6131.1

(d)(4). ("Continuing education programs may be offered either in a classroom, online or by any other means approved by the Nationwide Mortgage Licensing System and Registry."). Thus, notwithstanding the fact that Plaintiff satisfied her continuing education requirement as a mortgage loan originator by watching the prerecorded videos she purchased on Defendant's website, Defendant's disclosures to Meta of the specific titles of the prerecorded videos that Plaintiff purchased on Defendant's website – in clear violation of the VPPA – invaded Plaintiff's privacy in precisely the way that the statute was enacted to prevent, concretely harming her and thus readily satisfying the injury-in-fact prong of Article III's standing requirement.

Defendant's second ground for dismissal – that the complaint fails to state a claim for relief – rests on a series of arguments that courts nationwide have consistently rejected. For example, Defendant argues it is not a videotape service provider, that a Facebook ID ("FID") is not personally identifiable information, that a knowing disclosure under the VPPA requires a Defendant to know whether the plaintiff had an FID, and that the sum of statutory damages recoverable by a prevailing plaintiff is discretionary. Each of the arguments, as explained below, has been rejected by literally dozens of federal courts. This Court should adopt the reasoning of this legion of authority and reject Defendant's recycled arguments here as well.

Finally, Defendant's argument that the VPPA violates the First Amendment, an argument which also has been unanimously rejected by every court to have considered the argument in the VPPA context — and for good reason. The VPPA is a legitimate restriction on commercial speech and is thus constitutional under well-established Supreme Court precedent. *See Stark v. Patreon, Inc.* ["*Stark II*"], 656 F. Supp. 3d 1018, 1039 (N.D. Cal. 2023); *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 33 (D. Mass. 2024). The Court has subject-matter jurisdiction, and the Complaint states a claim. The Motion should be denied.

## II.    LEGAL STANDARD

**Rule 12(b)(1)**:  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  In evaluating a Rule 12(b)(1) motion, the court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).  A facial attack happens when a defendant files a Rule 12(b)(1) motion without accompanying evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). A "factual attack" upon the court's subject matter jurisdiction is one in which  "the defendant submits affidavits, testimony, or other evidentiary materials." *See id.*

**Rule 12(b)(6)**: "In analyzing the complaint, [the court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).  Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  To survive dismissal, a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.    ARGUMENT

### A. Plaintiff has suffered an injury in fact

To establish Article III standing, a plaintiff must allege an "irreducible constitutional minimum" of an "injury-in-fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "Injury in fact is a low threshold." *See Ross v. Bank of Am., N.A.*, 524 F.3d 217, 222 (2d Cir. 2008).  When

a plaintiff asserts harm to an intangible interest in this Circuit, courts "look to 'both history and the judgment of Congress' to determine whether that injury satisfies Article III's constitutional minimum." *Id.* (internal citations omitted).  Plaintiff has adequately alleged each element necessary for Article III standing, but because Defendant only challenges the "injury-in-fact" element, only that element is addressed below.[1]

Plaintiff has adequately alleged an injury-in-fact.  The Complaint alleges that Defendant knowingly disclosed "Plaintiff's and its other customers' identities and the titles of the prerecorded video materials that they purchased to Meta." (*See* Compl., Dkt. 1, ¶ 1). Indeed, the Complaint alleges that, "[w]henever a person with a Meta account purchases prerecorded video material from Defendant on its Website, Defendant uses – and has used at all times relevant hereto – the Meta Pixel to disclose to Meta the unencrypted FID of the person who made the purchase and the specific title of video material that the person purchased, as well as the URL where such video material is available for purchase." (*See id.*, ¶¶ 28, 47).  Thus, the Complaint adequately alleges facts demonstrating that Defendant disclosed to Meta information that identified Plaintiff as the purchaser of specific titles of prerecorded video products (among other details concerning Plaintiff and her purchase) – without first notifying Plaintiff of, or obtaining her prior written consent to, these practices – and that these disclosures not only violated the VPPA but additionally "inva[ded] . . . [her] statutorily protected right to privacy (as afforded by the VPPA), as well as intru[ded] upon [her] private affairs and concerns" in a way "that would be highly offensive to a reasonable person." (*See id.*, ¶ 59).

---

[1] The Court need not even reach the standing issue because Defendant is challenging whether its disclosure of information concerning Plaintiff was privileged—an element to her VPPA claim.  Such a tactic is improper. The Fifth Circuit has explained, where merits-based challenges are disguised as or are "intertwined with the jurisdictional issue of standing," challenges to standing should be "resolved in summary judgment proceedings—where the nonmovant is granted all reasonable factual inferences and the movant cannot succeed unless the court finds that no genuine issue of material fact exists—or at a trial on the merits." *See Barrett Computer Servs., Inc. v. PDA, Inc.*, 884 F.2d 214, 219 (5th Cir. 1989).

Defendant's invasion of Plaintiff's privacy in this way is sufficiently concrete to manifest an injury-in-fact as required by Article III.

Indeed, every federal circuit court of appeal to have considered the issue has found that the nonconsensual disclosure of a plaintiff's personally identifying video purchase-related information to a third party, in violation of the VPPA, readily satisfies the concreteness prong of Article III's standing requirement.    For example, in *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024), the Second Circuit recently found Article III standing where a plaintiff alleged a VPPA claim arising from the same sort of disclosures that Defendant is alleged to have made in this case, explaining:

> [W]e similarly have "no trouble" holding here that Salazar's alleged harm is sufficiently concrete to withstand dismissal. Like *Bohnak*, Salazar's core allegation is that his personally identifiable information was exposed to an unauthorized third party. And Salazar doesn't just allege that his data was *exposed* to a third party; rather, he asserts that it was *disclosed* as a result of an arrangement between the NBA and Meta pursuant to which the NBA deliberately uses the Facebook Pixel. This alleged harm is closely related to the public disclosure of private facts analog.

*Salazar*, 118 F.4th at 542 (internal citations omitted).    The Third, Seventh, Ninth, and Eleventh Circuits, in accord with *Salazar*'s reasoning, have likewise each held that plaintiffs alleging violations of the VPPA necessarily have Article III standing.[2]

This Court should adopt the persuasive reasoning of these decisions and conclude that Plaintiff has adequately demonstrated a concrete injury capable of satisfying Article III by alleging

---

[2] *See Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1339–41 (11th Cir. 2017) ("[W]e hold that a plaintiff such as Perry has satisfied the concreteness requirement of Article III standing, where the plaintiff alleges a violation of the VPPA for a wrongful disclosure."); *In re: Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) ("The purported injury here is clearly particularized, as each plaintiff complains about the disclosure of information relating to his or her online behavior. While perhaps 'intangible,' the harm is also concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally protected information."); *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) ("By alleging that Redbox disclosed their personal information in violation of the VPPA, Sterk and Chung have met their burden of demonstrating that they suffered an injury in fact that success in this suit would redress."); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982–84 (9th Cir. 2017) (same).

that Defendant disclosed her personally identifying video purchase-related information to Meta without her consent. (*See* Compl., Dkt. 1, ¶¶ 1, 3, 10, 28, 47, 59, 66, 68).

Notwithstanding the overwhelming precedent in Plaintiff's favor, the Motion argues that Plaintiff lacks Article III standing because (1) "MLO continuing education requirements are established by law, and information about Plaintiff's MLO licensure status, which implicitly reflects completion of those legally required continuing education courses, is publicly available on the NMLS website," (Dkt. 10 at 5); (2) "Plaintiff does not allege she suffered any tangible harm" or an intangible harm, (Dkt. 10 at 7); (3) "Plaintiff also has not suffered a harm with a close relationship to the publication of private facts" under the Texas Supreme Court's decision in *Indus. Found. of the S. v. Texas Indus. Acc. Bd.*, 540 S.W.2d 668, 684 (Tex. 1976), (Dkt. 10 at 8); and (4) Plaintiff cannot plead a public disclosure analog where "information is disclosed to a business, rather than the public at large." (Dkt. 10 at 8). None of these arguments have merit.

Defendant offers a declaration from Muhammad Hussam Mehmood, Defendant's VP of Operations and Regulatory, (Dkt. 10-1), and several exhibits to suggest that information about Plaintiff's video purchase history is public. Not so. The first exhibit to Mehmood's declaration is 7 Pa. Cons. Stat. § 6131.1, the statute that details the licensing requirements for mortgage loan originators, which, contrary to Defendant's suggestion, does not require public disclosure of the exact titles of prerecorded video courses completed in satisfaction of the statutory requirements. The second exhibit to Mehmood's declaration is Defendant's business records reflecting nothing more than a generic course name and number. Defendant does not otherwise demonstrate how this information is publicly available to any person in the world.

Defendant is simply misconstruing Plaintiff's case. This action is about Defendant's knowing and intentional decision to disclose to Meta that Plaintiff purchased certain online prerecorded videos. Her purchase information is not publicly available, unlike what Defendant suggests. Indeed,

neither Plaintiff's NMLS consumer-facing profile nor any of the other extrinsic documents attached to Mehmood's declaration reveal the titles of the continuing education courses or any other identifying information about which courses Plaintiff underwent to obtain her license. This fact alone distinguishes this case from the two lines of cases (public disclosure and data breach) relied on by Defendant.

For example, Defendant's relies on *Crane v. Am. Bar Ass'n*, 663 F. Supp. 3d 747 (E.D. Mich. 2023), which involved a claim that the American Bar Association violated Michigan's Preservation of Personal Privacy Act by disclosing a plaintiff's subscription to the ABA and demographic information about him as a subscriber to the ABA Journal. The court found that it lacked subject matter jurisdiction because that plaintiff had already disclosed the reading information protected by the statute—that he was a subscriber to the ABA journal—"on two well-trafficked websites: his law firm's, and that of the State Bar of Michigan." *See Crane*, 663 F. Supp. 3d at 753. Unlike in *Crane*, Plaintiff has not publicly disclosed information protected by the VPPA—that she requested or obtained prerecorded video materials from Defendant's website. Moreover, Defendant's reliance on *Crane* is further belied by 7 Pa.C.S. § 6131.1 (d)(4), which provides that continuing education requirements can be accomplished "classroom, online, or by any other means." Put simply, the act of satisfying continuing education requirements to be a mortgage originator is not synonymous with the act of watching or purchasing prerecorded videos.[3]

---

[3] The Motion also cited *Mirfasihi v. Fleet Mortg. Corp.*, No. 01 C 722, 2007 WL 2066503, at *4 (N.D. Ill. July 17, 2007), which is inapplicable. (Dkt. 10 at 7). This case offers no relevance because, unlike here, the information disclosed—class members' names and mortgage information—was otherwise publicly available. Further, Defendant's reliance on data breach cases for its point fares no better either because the cases, such as *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 302 (2d Cir. 2021), involved undefined future injuries making them distinguishable from the present case, which involves a current concrete injury from actual disclosures by the Defendant. And, neither *McMorris* nor the data breach cases involved VPPA claims, crystallizing their inapplicability. Thus, Defendant's argument fails.

Defendant's second and third arguments run together: the Motion claims that Plaintiff has not alleged a tangible harm and that she cannot allege intangible harm for the reasons stated in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432 (2021) and *Indus. Found. of the S. v. Texas Indus. Acc. Bd.*[4] (Dkt. 10 at 8). However, despite Defendant's suggestion to the contrary, the video purchase information alleged in the Complaint is information that is "private" under Texas law, even under the rule articulated in *Indus. Found. of the South v. Texas Indus. Acc. Bd.* There, the Texas Supreme Court examined whether workers' compensation claimants who previously submitted claims to the Industrial Accident Board had standing to prevent the Board from disclosing certain information to an employer who subpoenaed the records.[5] *See* 540 S.W.2d at 678. It concluded the claimants had standing to assert a privacy claim to prevent disclosure of information not exempted under Texas law. *Id.* Next, the court had to examine "whether any of the information requested by the Foundation is 'private' within the meaning of the tort law, and whether the Board's action in making the information available to the public would constitute a wrongful 'publicizing' of such information and thus an invasion of a claimant's right of privacy." This second question is where Defendant cherry picks its argument that "the State may not protect an individual's privacy interests by recognizing a cause of action in tort for giving publicity to highly private facts, if those facts are a matter of public record." (Dkt. 10 at 8). However, read in context with the holding, the court actually held "an individual does not forfeit all right to maintain the confidentiality of his personal affairs merely because he has disclosed facts about those affairs to a unit of government." *See* 540 S.W.2d at 685. In remanding the case, the court explained that the trial court should examine the files to separate public information— names, addresses, and date(s) of claims— from non-public information that is

---

[4] Plaintiff concedes she does not allege a defamation analog, so she does not further address *Ramirez* on this point.
[5] The information requested was "the file number, the claimant's name and social security number, the name of claimant's employer, the nature of the injury, and the name of claimants attorney, if any."

private such as the specific injuries in each claim file. *See id.* at 686.   As relevant here, Plaintiff's specific video purchase details are similar to the specific medical conditions that the Texas Supreme Court held were likely exempt from disclosure in *Indus. Found. of the South.*[6]  Thus, Defendant's second and third arguments fail.

Defendant's third standing argument is that Plaintiff cannot satisfy the publicity element of the public disclosure of private facts analog because a business is the recipient.  Defendant is wrong.  Each of the cases cited by Defendant is distinguishable because they involved intermediaries that sent collection letters on behalf of a creditor to a debtor.[7]  In those cases, the plaintiffs argued that publicizing a debt to a collection agency was a sufficient analog to the publication of private facts.  The courts disagreed finding that a collection agency's receipt of debt information is not publication because *inter alia* the agency is acting on behalf of the creditor.  On the contrary, here, there is an unrelated third party—Meta—who received the highly offensive information not for the purpose of acting on behalf of Defendant, but to republish that information in an Orwellian database for advertisers to see.  (Compl., Dkt. 1, ¶ 43).  As explained above, the Second Circuit's recent assessment of VPPA standing is the more appropriate analysis because Meta is not an intermediary acting on the defendant's behalf.  In *Salazar*, the NBA arranged for and used Meta Pixel to receive information protected by the VPPA, an arrangement parallel to the arrangement between Defendant and Meta here.  *See Salazar*, 118 F.4th at 542 ("Salazar doesn't just allege that his data was *exposed* to a third party; rather, he asserts that it was *disclosed* as a result of an arrangement

---

[6] Defendant cites *Johnson v. Sawyer*, 47 F.3d 716, 732 (5th Cir. 1995) as further support for its argument, but *Johnson* is distinguishable because the information disclosed consisted of "middle initial, age, street address, job title."  In contrast, the video purchase information here, is clearly information that Congress has determined is highly offensive to a reasonable person.

[7] The credit collection letter cases Defendant cited are: *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1240 (11th Cir. 2022) (*en banc*); *Nabozny v. Optio Solutions LLC*, 84 F.4th 731, 735 (7th Cir. 2023); *Shields v. Prof. Bureau of Collections,* 55 F.4th 823, 829 (10th Cir. 2022); *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136 (3d Cir. 2024).

between the NBA and Meta pursuant to which the NBA deliberately uses the Facebook Pixel. This alleged harm is closely related to the public disclosure of private facts analog."). Thus, Defendant's fourth argument fails, and the motion should be denied.

## B. Plaintiff has Sufficiently Pled Her VPPA Claim.

To state a claim under the VPPA, a plaintiff must allege that the defendant "(1) is a video tape service provider; (2) who knowingly disclosed to any person; (3) personally identifiable information; (4) concerning any consumer." *Brown v. Learfield Commc'ns, LLC*, 713 F. Supp. 3d 355, 360 (W.D. Tex. 2024) (citing 18 U.S.C. 2710 (b)(1)); *see also Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Plaintiff has sufficiently alleged each of these elements. Because Defendant challenges only the first three elements, Plaintiff only addresses the challenged elements below.

### 1. Defendant is a Videotape Service Provider

The VPPA defines "videotape service provider" as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials . . . ." *See* 18 U.S.C. 2710 (a)(4). The Fifth Circuit has not yet addressed the standard for determining when a defendant qualifies as a "videotape service provider," and courts are divided on this issue. Some courts follow a two-part test, which requires that the plaintiff allege facts supporting the inference that (1) the defendant is "in the business of delivering video content" and (2) the defendant's product is not only "substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose." *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017); *Lee v. Springer Nature Am., Inc.*, No. 24-CV-4493 (LJL), 2025 WL 692152, at *8 (S.D.N.Y. Mar. 4, 2025). Other courts simply require that a plaintiff allege the defendant is "in the business of delivering video content." *See Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1340 n.2 (N.D.

Ga. 2022); *Ambrose v. Bos. Globe Media Partners LLC*, No. CV 21-10810-RGS, 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022). The Complaint satisfies either test.

The Complaint alleges "Defendant operates and maintains the Website www.mortgageeducators.com, where it sells various types of pre-recorded videos." (*See* Compl., Dkt. 1 at 5). The Complaint then describes the "prerecorded video materials" offered on Defendant's www.mortgageeducators.com website as "online courses for licensure and continuing education, webinars, and trainings." (*See id*., ¶ 45). Far from incidental placement of videos, the Complaint specifically alleges that Defendant's website operates as an online video storefront processing transactions "when consumers add videos to their virtual 'cart' on Defendant's Website" and delivering those videos after consumers "proceed through the checkout flow[.]" (*See id*., ¶¶ 46-48). The Complaint further corroborates Defendant's active involvement by alleging that Plaintiff personally purchased prerecorded video material on December 7, 2023 and that "Defendant completed the sale[]" of that prerecorded video material "to Plaintiff by shipping or delivering the prerecorded video material she purchased to the address she provided in her order." (*See id*., ¶ 10). These allegations are on par with the more stringent test articulated in *In Re Vizio* because the Complaint alleges that Defendant's www.mortgageeducators.com Website is intimately involved in the delivery of video content to consumers like the Vizio Smart TVs, both of which "created a supporting ecosystem to seamlessly deliver video content to consumers." *See* 238 F. Supp. 3d at 1222. This conclusion is supported by the decisions of other courts applying that stringent test. *See Stark v. Patreon, Inc.* ["*Stark I*"], 635 F.Supp.3d 841, 852 (N.D. Cal. 2022) (videotape service provider element satisfied as to prerecorded materials because "it is reasonable to think that developing a website to deliver video content requires more significant "tailor[ing] to serve that purpose" than a package delivery service shipping videocassettes along with other physical

goods."); *Mata v. Zillow Grp., Inc.*, No. 24-CV-01095-DMS-VET, 2024 WL 5161955, at *3 (S.D. Cal. Dec. 18, 2024) (videotape service provider element satisfied).

Defendant has cited five cases for the proposition that "Plaintiff does not allege Mortgage Educators is substantially involved in the conveyance of video content on the Website." (Dkt. 10 at 10-11).[8]  None of these cases involved a defendant creating, selling, and delivering the prerecorded videos at issue, as Plaintiff alleges here.  Instead, these cases concerned defendants who were alleged to have used their website to market other products, or its website generally, by way of clickable videos.  Given these patent distinctions between the cases cited by Defendant and the facts of this case, this Court should find the Complaint sufficiently alleges Defendant is a videotape service provider.  *See also In re Vizio*, 238 F. Supp. 3d at 1222; *Stark I*, 635 F.Supp.3d at 852; *Saunders*, 711 F.Supp.3d at 30.  Thus, the Motion should be denied.

## 2. An FID is Personally Identifiable Information

The VPPA defines "personally identifiable information" as including "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  *See* 18 U.S.C. 2710 (a)(3).  Without guidance from the Fifth Circuit, courts are divided on this issue.  The First Circuit's approach stems directly from the VPPA's plain text and defines "personally identifiable information" as "information *reasonably and foreseeably* likely to reveal which . . . videos [a person] has obtained."  *See Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016) (Souter, J., sitting by designation).  The "ordinary person"

---

[8] *See Carroll, et al., v. General Mills, Inc.*, No.CV231746DSFMRWx, 2023 WL 4361093 at *3-4 (C.D. Ca. Jun. 26, 2023) (cereal manufacturer's website "increases its brand presence through the use of videos."); *Cantu v. Tapestry, Inc.*, No. 22-cv-1974- BAS-DDL, 2023 WL 4440662, *8 (S.D. Cal. Jul. 10, 2023) (luxury goods' website "monetize[es] instances in which consumers watch videos"); *Rodriguez v. Delta T LLC*, No. 2:23- CV-03717-HDV-AGR, 2023 WL 9419152,*4 (C.D. Cal. Dec. 12, 2023) (ceiling fan company's website used videos as a "critical marketing channel used by [d]efendant to attract potential, new customers and retain existing customers with appealing video content."); *Cantu v. Sunrun Inc.*, No. 23-CV-974-JO-AHG, 2023 WL 11795670, *3 (S.D. Cal. Nov. 22, 2023) (solar energy company's website used videos "to further market its solar products.").

test is the other approach adopted by the Third and Ninth Circuit, which limits "personally identifiable information . . . to the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *In re Nickelodeon,* 827 F.3d at 290. Plaintiff's allegations satisfy either test.

The Complaint alleges an FID is personally identifiable information because it begins by alleging that "A Meta profile . . . identifies by name the specific person to whom the profile belongs (and also contains other personally identifying information about the person)." (*See* Compl., Dkt. 1 at 2). It further alleges that an FID "identifies a person more precisely than a name, as numerous persons may share the same name, but each person's Facebook profile (and associated FID) uniquely identifies one and only one person." (*See id.*). The Complaint also alleges that any person can use an FID to identify a person "by accessing the URL www.facebook.com/[insert the person's FID here]/." (*See id.* at ¶ 50). Next, the Complaint ties the personally identifying nature of an FID to specific allegations of the Plaintiff's own experience by alleging that "when requesting or obtaining prerecorded video material from Defendant's website, Plaintiff had a Meta account, a Meta profile displaying her full name and picture, and an FID associated with such profile." (*See id.* at ¶ 11). These well-pled allegations must be accepted as true and are consistent with the overwhelming number of courts that conclude an FID is PII. *See Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 159 (S.D.N.Y. 2023) (collecting cases for the proposition that "[c]ourts have uniformly held Facebook IDs to constitute PII under the VPPA").

Such a conclusion is undisturbed even with consideration of the single inapposite case that Defendant exhaustively relies on for the notion that an FID is a static identifier—*In re Nickelodeon Consumer Priv. Litig.* (Dkt. 10 at 11-13). *In re Nickelodeon* did not involve the Meta Pixel or an

FID. Because an FID directly links to a person's Facebook profile, it is similar to a customer ID for the reasons explained by *In re Nickelodeon*, and the Motion should be denied. *See* 827 F.3d at 290.[9]

### 3. Defendant's Disclosures were Knowing

Liability under the VPPA attaches when a "videotape service provider" like Defendant, "knowingly discloses . . . personally identifiable information concerning any consumer of such provider[.]" *See* 18 U.S.C. 2710 (b)(1). Neither the VPPA nor the Fifth Circuit further define "knowingly" as stated in the VPPA, but courts in this Circuit have observed that "where a complaint alleges knowing disclosure under the VPPA, a motion to dismiss will not succeed." *See Li v. Georges Media Grp. LLC*, No. CV 23-1117, 2023 WL 7280519, at *4 (E.D. La. Nov. 3, 2023); *Frawley v. Nexstar Media Grp. Inc.*, No. 3:23-CV-2197-L, 2024 WL 3798073, at *9 (N.D. Tex. July 22, 2024). Against this backdrop, Plaintiff has alleged a knowing disclosure.

Here, the Complaint alleges that Defendant knowingly disclosed to Meta Plaintiff's and putative class members' FIDs and URLs identifying and containing the specific titles of the videos that were requested or obtained. The FAC alleges specifically that:

> Defendant knowingly disclosed Plaintiff's and Class members' Private Viewing Information to Meta via the Meta Pixel technology because Defendant intentionally installed and programmed the Meta Pixel code on its Website, **knowing that such code would transmit to Meta the titles of the video materials purchased by its customers coupled with its customers' unique identifiers** (including FIDs).

(*See* Compl., Dkt. 1, ¶ 67) (emphasis added).

The Complaint further alleges Defendant's knowledge based on its (1) "intentional installation" of the Meta Pixel, (*id.* at ¶¶ 28, 67); (2) "intentionally program[ing]" if the Meta Pixel "**so that all of their customers' Private Video Information is systematically disclosed to Meta**."

---

[9] Defendant argues in a footnote that *Frawley* required the plaintiff to allege that his or her profile is public. (Dkt. 10 at 13 n.3). Defendant is incorrect. *Frawley* held that the plaintiff satisfied the PII element because the complaint "alleged that the Facebook ID was disclosed alongside a URL containing a video title" *See* 2024 WL 3798073, at *8. *Frawley* did not and does not articulate a "public" profile pleading requirement as argued by Defendant.

(*see id.* at ¶¶ 49, 53 67 (emphasis added)); and (3) knowingly choosing to "configured the Meta Pixel on its Website to send Event Data to Meta" when other configurations existed. (*See id.*, ¶ 39). Any one of these well-pled allegations, standing alone, would be sufficient to allege Defendant's knowing disclosure of personally identifiable information. *See Frawley*, 2024 WL 3798073, at *9 (knowledge sufficiently alleged); *Li*, 2023 WL 7280519, at *4; *Lebakken*, 640 F. Supp. 3d at 1343 (same); *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022). Because Defendant cites not a single case at all, the Motion should be denied.

### 4.  The VPPA does not Require Actual Damages

Under the VPPA, a court may award (A) "actual damages but not less than liquidated damages in an amount of $2,500;" (B) "punitive damages;" (C) "reasonable attorneys' fees and other litigation costs reasonably incurred;" and (D) "such other preliminary and equitable relief as the court determines to be appropriate." *See* 18 U.S.C. 2710 (c). Defendant claims that Plaintiff has failed to allege actual damages because "[t]he Complaint alleges nothing more than mere sharing of Plaintiff['s] information, which is non-quantifiable, and thus, does not satisfy the 'actual damages' requirement." (Dkt. 10 at 15). This argument is meritless for at least five reasons.

First, actual damages are not an element of a VPPA claim. As explained above, Judge Ezra from this court observes only four elements to a VPPA claim: that the defendant "(1) is a video tape service provider; (2) who knowingly disclosed to any person; (3) personally identifiable information; (4) concerning any consumer." *See Brown*, 713 F. Supp. 3d at 360. Those elements are drawn from the statutory text of the section of the VPPA which creates the cause of action, 18 U.S.C. § 2710(b).

No part of this section requires an allegation of actual damages.[10]  *See id.*  For this reason alone, Defendant's argument fails.

Second, several other "remedies" are provided for in the VPPA beyond "actual damages." These include "liquidated damages," "punitive damages," "attorneys fees and other litigation costs," and "equitable relief."  18 U.S.C. § 2710(c)(2).  Plaintiff seeks each of those remedies in her Complaint.  (*See* Compl., Dkt. 1 at 2, 25-26).  Thus, even if Plaintiff is required to seek any specific remedy provided for by the VPPA as an element of her claim, she has done so throughout the Complaint by seeking each of these alternative remedies the statute affords.

Third, recovering liquidated damages does not require a showing of actual damages under the VPPA.  The relevant statutory text provides for the recovery of "actual damages but not less than liquidated damages in an amount of $2,500."  18 U.S.C. § 2710(c)(2)(A).  The *Saunders* court swiftly rejected the very argument has made, explaining that "[t]he problem with [Defendant's] reading of the statute is that the text of the VPPA does not condition recovery on proof of actual damages."  711 F. Supp. 3d at 32.  The *Saunders* court also rejected any comparison between the VPPA and Privacy Act.  *See* 711 F. Supp. 3d at 32.

Defendant's analogy to *Fanin v. U.S. Dep't of Veterans Affs.* 572 F.3d 868, 872 (11th Cir. 2009), (*see* Dkt. 10 at 14-15), fails because the Privacy Act's language is a mismatch to the VPPA, as explained above and in *Saunders*.  The Drivers' Privacy Protection Act ("DPPA") is a better comparison to the VPPA.  The DPPA provides that a "court may award . . . actual damages, but not less than liquidated damages in the amount of $2,500."  18 U.S.C. § 2724(b)(1).  And, the VPPA uses the same language by providing that a "court may award . . . actual damages but not less than

---

[10] Defendant articulates a new, fantastical six element test for stating a claim under the VPPA, (*see* Dkt. 10 at 11), which is inconsistent with the statutory text of the VPPA, caselaw including a decision by this court's own Judge Ezra, and any ordinary understanding of the VPPA's plain text.  *See Brown*, 713 F. Supp. 3d at 360.

liquidated damages in an amount of $2,500[.]"   Thus, the DPPA and VPPA are parallel and distinguishable from the Privacy Act's "in an amount equal to the sum of actual damages sustained by the individual as a result of the [violation], but in no case shall a person entitled to recovery receive less than the sum of $1,000."   This conclusion is further corroborated by *Kehoe v. Fid. Fed. Bank & Tr.*, 421 F.3d 1209, 1212 (11th Cir. 2005) (rejecting a comparison of the DPPA to Privacy Act).   The Eleventh Circuit specifically held "that a plaintiff need not prove actual damages to recover liquidated damages."  *See id.* at 1215 – 1216.

Fourth, even if the VPPA required a showing of "actual damages," and "actual damages" required pecuniary loss, Plaintiff has alleged pecuniary loss.   Plaintiff alleges that her personal information has market value.  (*See* Compl., Dkt. 1, ¶¶ 11-27).   The Complaint describes the data aggregation and resale industry, which includes the type of personally identifying information allegedly disclosed by Defendant.  (*Id.*, ¶¶ 17-23).   Plaintiff further alleges that her data is valuable to Defendant and that its systematic disclosure to Meta allowed Defendant to improve its marketing and increase its revenues.  (*Id.*, ¶¶ 22, 25).   Plaintiff has, therefore, alleged pecuniary harms.

Defendant does not cite a single case endorsing its position that actual damages are required to recover liquidated damages under the VPPA.   Nor can it.   Defendant's Motion should be denied.

### C.  The VPPA Does Not Violate the First Amendment

Federal district courts are in accord that the VPPA does not violate the First Amendment.   In *Saunders v. Hearst Television, Inc.*, for example, the court expressly rejected a First Amendment challenge to the VPPA.  711 F. Supp. 3d 24, 33 (D. Mass. 2024).   The court found that the complaint's alleged disclosures of personally identifiable information constituted commercial speech and was therefore subject to intermediate scrutiny.  *Id.*   Drawing on legislative history, the court wrote that "Congress's interest in enacting the VPPA was to 'preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials.'"  *Id.* (quoting S. Rep.

100-599 at 1). It determined that these privacy interests are important within the intermediate scrutiny framework given that the "Supreme Court has repeatedly recognized the sanctity of personal privacy." *Id.* (citing *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 625 (1995); *Frisby v. Schultz*, 487 U.S. 474, 483-485 (1988)). Next, the court found that the VPPA's restriction on the "precise videos that plaintiffs viewed alongside plaintiffs' PII directly and materially advances that interest." *Id.* Completing the analysis, the Court held that the "VPPA is narrowly drawn because it applies only to a narrow group of business entities and specific group of consumers" and that the "'fit' between Congress's goal of protecting privacy in this realm and its means to do so is at least reasonable." *Id.* (citing *Bd. of Trs. of State Univ. of New York v. Fox*, 492 U.S. 469, 481 (1989)). For these reasons, the court found the VPPA constitutional. *Id.*; *see also Stark II*, 656 F. Supp. 3d at 1039 (reaching the same conclusion). Several authorities have also taken the position that the VPPA is constitutional in other contexts.[11] The unanimous opinion of federal courts is that the VPPA does not violate the First Amendment.

Despite this clear guidance, Defendant argues the VPPA is unconstitutional because it (1) cannot survive strict or intermediate scrutiny,[12] (2) does not prevent misleading speech or illegal

---

[11] *See Boehner v. McDermott*, 484 F.3d 573, 578 n.2 (D.C. Cir. 2007) ("The government can also limit disclosures by persons who are not its employees without running afoul of the First Amendment"); *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1124 (9th Cir. 2020) (citing the VPPA as an example of the "many state and federal statutes [that] 'regulate data collection and disclosure' without implicating the First Amendment . . . ."). Additionally, courts examining analogous statutes have held those statutes were constitutional. *See Boelter v. Hearst Commc'ns, Inc.* ("*Hearst I*"), 192 F. Supp. 3d 427, 445 (S.D.N.Y. 2016) (holding Michigan Preservation of Personal Privacy Act (the "MPPPA"), Mich. Compl. Laws § 445.1711, is constitutional); *Boelter v. Advance Magazine Publishers Inc.*, 210 F. Supp. 3d 579, 584 (S.D.N.Y. 2016) (same); *Boelter v. Hearst Commc'ns, Inc.* ("*Hearst II*"), 269 F. Supp. 3d 172, 197–98 (S.D.N.Y. 2017) (same).

[12] Defendant argues that strict scrutiny applies based on *Reed v. Town of Gilbert*, Ariz., 576 U.S. 155, 163 (2015) and *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 621 (2020) but fails to otherwise offer any substantive discussion on the VPPA and strict scrutiny. Strict scrutiny does not apply because this case involves commercial speech, which is unaffected by the decisions in *Reed* and *Barr* as explained in *R J Reynolds* (which post-dates each of the decisions relied upon by Defendant). *See* 96 F.4th at 876; *see also Barr* 591 U.S. at 620 ("Our decision is not intended to expand existing First Amendment doctrine. . . .").

businesses, (3) no substantial interests are served, (4) "is unconstitutionally underinclusive", and (5) "Congress could have passed a privacy law that protects privacy in a rational manner without this selectivity." (Dkt. 10 at 16-20). Defendant's arguments are meritless.

Here, this Court should adopt the reasoning from *Stark II* and *Saunders* for several reasons.[13] First, consumers' right to privacy is a substantial government interest. *See e.g.*, *Stanley v. Georgia*, 394 U.S. 557, 564–565 (1969) (recognizing the "the right to read or observe what [one] pleases—the right to satisfy [one's] intellectual and emotional needs in the privacy of [one's] own home"); *Trans Union Corp. v. F.T.C.*, 245 F.3d 809, 818 (D.C. Cir. 2001). This is the exact interest that Congress intended to protect in adopting the VPPA. *See* S. Rep. 100–599, at *5. Contrary to the Motion's suggestion otherwise, the VPPA need not prevent misleading speech or address illegal businesses to trigger a substantial government interest.

Second, the VPPA directly and materially advances consumers' privacy interests. Under this element of the intermediate scrutiny analysis, the statute "may not be sustained if it provides only ineffective or remote support for the government's purpose." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505 (1996). That is not the case here. On the contrary, the VPPA's restrictions directly prohibit the disclosure of consumers' personally identifiable information with respect to the audio-visual materials they request or obtain. *See* 18 U.S.C. § 2710(b); *accord Hearst I*, 192 F. Supp. 3d at 449. The VPPA's private right of action, statutory damages, and other remedies further provide effective mechanisms to ensure that the privacy interests the law protects are enforced. *See* 18 U.S.C. §§ 2710(c)(1), 2710(2)(A)-(D). *See Saunders*, 711 F. Supp. 3d at 33.

_____

[13] The United States intervened in these actions and several others. Plaintiff incorporates by reference the United States' memorandums of law in three other matters and attaches them as exhibits to this response. *See* Exhibit A (*Walsh v. California Cinema Invs. LLC*, No. 2:23-CV-09608-ODW (AJRX) (C.D. Cal.)); Exhibit B (*Peterson v. Learfield Commc'ns, LLC*, No. 8:23-cv-00146 (D. Neb.)); Exhibit C (*Myers et al., v. Nat'l Assoc. Stock Car Auto Racing, Inc.*, No. 3:23-cv-00888 (W.D. NC)).

Third, the VPPA is narrowly drawn.  This neither requires the law to be "least restrictive means" nor the "single best disposition." *Fla. Bar*, 515 U.S. at 632.  Rather, the statute must only represent a "reasonable" means of accomplishing the government's goal, and its scope must be "in proportion to the interests served." *Fox*, 492 U.S. at 480.  Such is the case here, because only disclosures of "personally identifiable information" are prohibited,  only "video tape service provider[s]" are subject to liability, and only "consumer[s]" have standing to sue. *See* 18 U.S.C. § 2710; *Hearst I*, 192 F. Supp. 3d at 449.  These limitations indicate that the VPPA is narrowly drawn. *See e.g.*, *Saunders*, 711 F. Supp. 3d at 33. ("the VPPA is narrowly drawn").

Defendant has cited no case finding the VPPA unconstitutional.  Instead, Defendant offers *Gale Force Roofing & Restoration, LLC v. Brown*, 548 F. Supp. 3d 1143 (N.D. Fla. 2021), which concerned the constitutionality of a Florida law that "prohibits speech encouraging someone to contact a contractor or public adjuster for purposes of filing an insurance claim for roof damage." The law in question, legislative history, and interest protected in *Gale* are so obviously different and minuscule compared to the robust materials concerning the VPPA in this case.[14]

Rather than infringe upon the First Amendment, Congress understood that the VPPA would protect the interests and values that the First Amendment embodies. *See* S. Rep. 100-599, at 4. Indeed, striking down the VPPA would endanger a wide range of privacy interests protected by similar laws across the United States.  This Court should find that the VPPA withstands First Amendment scrutiny because it is narrowly tailored to directly and materially advance a substantial interest in personal privacy.

---

[14] Further, the VPPA is not "underinclusive" because, like the MPPPA, it "only permits disclosure based on narrow exceptions that still provide some measure of privacy protection." *Advance Mag. Publishers*, 210 F. Supp. 3d at 601.  The statutory exceptions in the VPPA essentially mirror those in the MPPPA. *Compare id.* (listing the MPPPA exceptions) *with* 18 U.S.C. § 2710(b)(2) (listing the VPPA exceptions).  Both the MPPPA and the VPPA's exceptions embody the approach recommended by the Supreme Court in *Sorrell* of "allowing the information's sale or disclosure in only a few narrow and well-justified circumstances." 564 U.S. at 573.

Dated: April 9, 2025                    Respectfully submitted,

**HEDIN LLP**

*/s/ Elliot O. Jackson*
Elliot O. Jackson
Florida Bar No. 1034536
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone:    (305) 357-2107
Facsimile:    (305) 200-8801
ejackson@hedinllp.com

*Counsel for Plaintiff and Putative Class*