# EXHIBIT C

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ANGELA MYERS *et al.*, on behalf of themselves and all others similarly situated, | |
| *Plaintiffs*, | Case No. 3:23-cv-888-FDW-SCR |
| v. | Judge Frank D. Whitney |
| NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, INC. *et al.*, | Magistrate Judge Susan C. Rodriguez |
| *Defendants*. | |

## UNITED STATES OF AMERICA'S MEMORANDUM OF LAW IN DEFENSE OF THE CONSTITUTIONALITY OF THE VIDEO PRIVACY PROTECTION ACT

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND .................................................................................................2

    I.    Legal Background .................................................................................2

    II.   Plaintiffs' Claims ..................................................................................5

    III.  Procedural History ..............................................................................5

ARGUMENT.......................................................................................................5

    I.    The Court Should Adhere to Constitutional Avoidance Principles.......................6

    II.   The VPPA Is Not Facially Void for Vagueness. ....................................7

    III.  The VPPA Withstands Intermediate Scrutiny. ......................................8

        A. *The VPPA Advances a Substantial Government Interest* .................................9

        B. *The VPPA Directly Advances the Asserted Interest.*.......................................11

        C. *The VPPA Is Sufficiently Tailored.* .................................................12

    IV.  The VPPA Withstands NASCAR's As-Applied Constitutional Challenge..........13

CONCLUSION....................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
457 U.S. 853 (1982) .................................................................................10

*Bd. of Trs. of State Univ. of N.Y. v. Fox*,
492 U.S. 469 (1989) ........................................................................ 6, 8, 12, 13

*Bell Atl. Md., Inc. v. Prince George's County*,
212 F.3d 863 (4th Cir. 2000) ......................................................................6

*Boelter v. Advance Mag. Publishers Inc.*,
210 F. Supp. 3d 579 (S.D.N.Y. 2016) .......................................................4, 5, 9

*Boelter v. Hearst Commc'ns, Inc.*, ("*Hearst I*"),
192 F. Supp. 3d 427 (S.D.N.Y. 2016) ................................................ 4, 5, 11, 13

*Boelter v. Hearst Commc'ns, Inc.*, ("*Hearst II*"),
269 F. Supp. 3d 172 (S.D.N.Y. 2017) .......................................................4, 5, 9

*Broadrick v. Oklahoma*,
413 U.S. 601 (1973) ..................................................................................7

*Brown v. Ent. Merchts. Ass'n*,
564 U.S. 786 (2011) .................................................................................10

*Burson v. Freeman*,
504 U.S. 191 (1992) .................................................................................10

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
447 U.S. 557 (1980) ...........................................................................1, 4, 9

*City of Cincinnati v. Discovery Network, Inc.*,
507 U.S. 410 (1993) .................................................................................12

*Czarnionka v. Epoch Times Ass'n*,
No. 22 Civ. 6348 (AKH), 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022), *motion to certify appeal denied*, 2022 WL 1778689 (S.D.N.Y. Dec. 15, 2022)................................11, 13

*Edenfield v. Fane*,
507 U.S. 761 (1993) .................................................................................11

*Educ. Media Co. at Va. Tech, Inc. v. Insley*,
731 F.3d 291 (4th Cir. 2013) ......................................................................13

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) ................................................................9

*Ellis v. Cartoon Network, Inc.*,
  803 F.3d 1251 (11th Cir. 2015) ............................................................7

*Fla. Bar v. Went for It, Inc.*,
  515 U.S. 618 (1995) ..............................................................8, 9, 13

*Fusaro v. Howard*,
  19 F.4th 357 (4th Cir. 2021) ................................................................7

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972) ............................................................................14

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981) ................................................................................6

*Harris v. Pub. Broad. Serv.*,
  662 F. Supp. 3d 1327 (N.D. Ga. 2023) ..........................................11, 13

*Holder v. Humanitarian L. Project*,
  561 U.S. 1 (2010)...................................................................................8

*In re Hulu Priv. Litig.*,
  No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012).......12

*In re Nickelodeon Consumer Priv. Litig.*,
  827 F.3d 262 (3d Cir. 2016) ................................................................2

*In re Vizio, Inc., Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017)................................................11

*Martin v. Lloyd*,
  700 F.3d 132 (4th Cir. 2012) ................................................................7

*Mollett v. Netflix, Inc.*,
  795 F.3d 1062 (9th Cir. 2015) ..............................................................2

*NAACP v. Alabama ex rel. Patterson*,
  357 U.S. 449 (1958) ............................................................................10

*Nat'l Cable & Telecomms. Ass'n v. FCC*,
  555 F.3d 996 (D.C. Cir. 2009)..............................................................11

*Recht v. Morrisey*,
  32 F.4th 398 (4th Cir.), *cert. denied*, 143 S. Ct. 527 (2022) ....................................................8

*Rubin v. Coors Brewing Co.*,
  514 U.S. 476 (1995) ...........................................................................................................11

*Saunders v. Hearst Television, Inc.*,
  No. 23-CV-10998-RGS, 2024 WL 126186 (D. Mass. Jan. 11, 2024) ........................ 3, 4, 9, 11

*Stanley v. Georgia*,
  394 U.S. 557 (1969) ...........................................................................................................10

*Trans Union Corp. v. FTC*,
  245 F.3d 809 (D.C. Cir. 2001) ..............................................................................................9

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
  489 U.S. 749 (1989) ............................................................................................................9

*United States v. Chappell*,
  691 F.3d 388 (4th Cir. 2012) ...............................................................................................8

*United States v. Hamilton*,
  699 F.3d 356 (4th Cir. 2012) ...............................................................................................6

*United States v. Hansen*,
  599 U.S. 762 (2023) ............................................................................................................6

*United States v. Hosford*,
  843 F.3d 161 (4th Cir. 2016) ...............................................................................................7

*United States v. Salerno*,
  481 U.S. 739 (1987) ............................................................................................................7

*United States v. Williams*,
  553 U.S. 285 (2008) ............................................................................................................8

*Van Hollen v. Fed. Election Comm'n*,
  811 F.3d 486 (D.C. Cir. 2016) ............................................................................................10

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
  455 U.S. 489 (1982) ............................................................................................................7

*Wag More Dogs Liab. Corp. v. Cozart*,
  680 F.3d 359 (4th Cir. 2012) ...............................................................................................7

*Yershov v. Gannett Satellite Info. Network, Inc.*,
   820 F.3d 482 (1st Cir. 2016)................................................................................11

*Zadvydas v. Davis*,
   533 U.S. 678 (2001) .......................................................................................6

**Statutes**

18 U.S.C. § 2710....................................................................................*passim*

**Rules**

Federal Rule of Civil Procedure 5.1.........................................................5

Federal Rule of Civil Procedure 12(b)(6)................................................5

**Other Authorities**

S. Rep. No. 100-599, at 5 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342-1 .......................2, 9, 12

## INTRODUCTION

The Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, prohibits "video tape service provider[s]" from knowingly disclosing their customers' personally identifiable information, with limited exceptions. Here, Plaintiffs Angela Myers, Oscar Rodriguez, Paul Sutton, Trevor Adkins, Brent Rish, Derek Sammelman, and Mary Martin, individually and on behalf of a putative class, allege that Defendants National Association for Stock Car Auto Racing, Inc., and NASCAR Digital Media, LLC, (collectively, "NASCAR") violated the VPPA by knowingly disclosing to Facebook information about videos Plaintiffs viewed on NASCAR's website. NASCAR moved to dismiss the complaint primarily on non-constitutional grounds. NASCAR also challenges the constitutionality of the VPPA under the First Amendment and the Due Process Clause of the Fifth Amendment.

Consistent with settled constitutional avoidance principles, the Court should resolve all non-constitutional questions before addressing constitutional issues. Although the United States takes no position on these non-constitutional questions,[1] analyzing the statute and applying the statute to the facts of this dispute may resolve or substantially narrow the constitutional questions.

Should a constitutional analysis remain necessary, the Court should reject NASCAR's constitutional challenges. NASCAR's vagueness challenge fails because the VPPA has reasonably clear terms set by statute and interpreted by various court decisions, and NASCAR had ready notice of those terms' possible application. The VPPA also passes intermediate scrutiny under *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980), because the statute serves the government's substantial interest in protecting consumer

---

[1] The United States takes no position on NASCAR's non-constitutional arguments in favor of dismissal; the United States intervenes in this matter solely for the limited purpose of defending the constitutionality of the VPPA.

privacy and intellectual freedom, directly advances that interest, and is no more extensive than necessary to serve that interest.

Accordingly, if the Court determines it must reach NASCAR's constitutional arguments to resolve the motion to dismiss, the Court should reject them and affirm the VPPA's constitutionality.

## **BACKGROUND**

I.     Legal Background

Congress enacted the VPPA in 1988 in response to the *Washington City Paper*'s publication of then-Supreme-Court-nominee Robert Bork's video rental history, obtained without his knowledge or consent.  *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 278 (3d Cir. 2016).  "Members of the Judiciary Committee 'denounced the disclosure,'" and Congress passed the VPPA soon after.  *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (quoting S. Rep. No. 100-599, at 5 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342-1,5).  The VPPA was enacted "[t]o preserve personal privacy with respect to the rental, purchase[,] or delivery of video tapes or similar audio visual materials."  *Id.* (quoting S. Rep. No. 100-599, at 1).  Among other justifications, the Senate Report cited consumers' First Amendment right to intellectual freedom as one of the bases underlying the legislation.  *See* S. Rep. No. 100-599, at 4-5.

The statute prohibits a "video tape service provider" from "knowingly" disclosing "personally identifiable information concerning any consumer" to "any person."  18 U.S.C. § 2710(b)(1).  It provides several exceptions to this prohibition, permitting (1) disclosure to the consumer; (2) disclosure the consumer has authorized via "informed, written consent" provided "in a form distinct and separate from any form setting forth other legal or financial obligations"; (3) disclosure to a law enforcement agency pursuant to a warrant, subpoena, or court order; (4) disclosure that is "solely of the names and addresses of consumers," provided the consumer had

2

the ability to opt out and the disclosure does not identify the subject matter of any material (unless the sole purpose is marketing directly to the consumer); (5) disclosure "incident to the ordinary course of business of the video tape service provider"[2]; and (6) disclosure pursuant to a court order in a civil proceeding.  *Id.* § 2710(b)(2).  The statute creates a private right of action for any aggrieved person to bring a civil suit against any person who violates its terms.  *Id.* § 2710(c).  The VPPA does not contemplate civil or criminal enforcement by the government.

The statute defines several key terms.  Relevant here, a "video tape service provider" is "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  *Id.* § 2710(a)(4).  "Personally identifiable information" ("PII") is "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  *Id.* § 2710(a)(3).  A "consumer" is "any renter, purchaser, or subscriber of goods or services from a video tape service provider."  *Id.* § 2710(a)(1).

The VPPA has recently been subject to several First Amendment challenges similar to the one advanced here.  Notably, a court in the District of Massachusetts recently upheld the VPPA's constitutionality as applied to the disclosure of viewing history to third-party analytics companies.  *Saunders v. Hearst Television, Inc.*, No. 23-CV-10998-RGS, 2024 WL 126186, at *1 (D. Mass. Jan. 11, 2024).  The court determined that the VPPA withstood intermediate scrutiny as a restriction on commercial speech.  *Id.* at *5.  The court noted that the "Supreme Court has repeatedly recognized the sanctity of personal privacy," and held that prohibiting disclosure "to third parties the precise videos that plaintiffs viewed alongside plaintiffs' PII directly and

---

[2] The VPPA defines "ordinary course of business" to include only "debt collection activities, order fulfillment, request processing, and the transfer of ownership."  18 U.S.C. § 2710(a)(2).

materially advances that interest." *Id.* The court further held that "the VPPA is narrowly drawn because it applies only to a narrow group of business entities and specific group of consumers." *Id.*

Although no court yet has adjudicated the merits of a *facial* constitutional challenge to VPPA, an analogous state statute has survived such challenges: two different judges in the Southern District of New York determined that a Michigan statute's similar restrictions on disclosure did not violate the First Amendment. *See Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 435 (S.D.N.Y. 2016) ("*Hearst I*"); *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 585-86 (S.D.N.Y. 2016) ("*Advance Mag.*"); *see also Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 196-98 (S.D.N.Y. 2017) ("*Hearst II*"). A magazine subscriber sued two publishing companies under the Michigan Video Rental Privacy Act ("MVRPA")—a statute with prohibitions similar to the VPPA, but that also prohibits disclosing written materials and sound recordings consumers acquire—over their practice of selling customer information to data miners. The publishers defended the suits, in part, by arguing that the MVRPA was unconstitutional under the First Amendment on its face and as applied to them. Both courts rejected these arguments.

The court in *Hearst I*, the first of the two cases, applied the test governing commercial speech, *see Cent. Hudson*, 447 U.S. at 566, and found that the statute was constitutional as applied to the publisher's practice of selling information about its consumers to data miners and other third parties, *Hearst I*, 192 F. Supp. 3d at 451. The court determined that consumer privacy was a substantial state interest, *id.* at 447-48; the data disclosure restrictions in the MVRPA directly advanced that interest, *id.* at 449; and the statute was sufficiently narrowly tailored because it limited "precisely the kind of information with which the state [was] concerned"—namely, information disclosing individuals' reading, listening, and viewing preferences—and "target[ed]

4

those most likely to disseminate it," *id.*  The court in *Advance Magazine* reached the same conclusions a few months later.  *See Advance Mag.*, 210 F. Supp. 3d at 596-603.  And in *Hearst II*, the court reaffirmed its *Hearst I* holding that the MVPRA constituted a valid restriction on commercial speech that did not offend the First Amendment.  *See Hearst II*, 269 F. Supp. 3d at 196-98.

II.      Plaintiffs' Claims

Plaintiffs brought this putative class action for declaratory and injunctive relief and damages based on NASCAR's alleged disclosure of PII and video watching data.  Compl. ¶¶ 20-28, ECF No. 1.  NASCAR provides video content on its website, from which data was allegedly collected and distributed via a tracking pixel.  *Id.* ¶¶ 1-2, 7.  This information is allegedly used to target and deliver ads.  *Id.* ¶ 16.  Plaintiffs' proposed class encompasses "[a]ll persons in the United States with a subscription to the [NASCAR] Website that had their Personal Viewing Information improperly disclosed to Facebook through the use of the Facebook Pixel."  *Id.* ¶ 174.

III.     Procedural History

Plaintiffs filed their Complaint on December 21, 2023.  Compl.  On March 4, 2024, NASCAR moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), raising statutory and constitutional arguments.  Mot. to Dismiss, ECF No. 14.  At the same time, NASCAR filed a notice of constitutional challenge pursuant to Federal Rule of Civil Procedure 5.1, explaining that NASCAR's Motion to Dismiss "argues that the VPPA is an unconstitutional restraint on speech in violation of the First Amendment of the United States Constitution and a violation of the Due Process Clause of the Fifth Amendment."  ECF No. 15.

**ARGUMENT**

The Court should decline to address the constitutionality of the VPPA until it resolves all non-constitutional issues raised in NASCAR's Motion to Dismiss.  If the Court does reach

NASCAR's constitutional challenges, it should reject them. The VPPA is not facially vague, withstands intermediate scrutiny, and would be constitutional if applied to NASCAR.

I.    The Court Should Adhere to Constitutional Avoidance Principles.

Much of NASCAR's brief addresses statutory, non-constitutional grounds for dismissal. Although the United States takes no position on the non-constitutional arguments raised by NASCAR, the Court should consider them before taking up the constitutional issues. It is well-established that "prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); *see also Bell Atl. Md., Inc. v. Prince George's County*, 212 F.3d 863, 865 (4th Cir. 2000) ("[C]ourts should avoid deciding constitutional questions unless they are essential to the disposition of a case."). And even when courts need to address constitutional issues, the Supreme Court has directed that courts should first resolve as-applied challenges before addressing facial challenges. *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484 (1989).

As in the VPPA cases cited in the Part I of NASCAR's brief, statutory interpretation could prove dispositive or else substantially narrow the constitutional analysis. *See, e.g.*, Mot. to Dismiss at 3-5 (collecting cases). The Court may be able to further avoid constitutional problems by adopting a particular construction of the statute. *See United States v. Hansen*, 599 U.S. 762, 781 (2023) ("When legislation and the Constitution brush up against each other, our task is to seek harmony, not to manufacture conflict."); *United States v. Hamilton*, 699 F.3d 356, 367 (4th Cir. 2012) ("As a 'cardinal principle' of statutory interpretation, we may avoid such serious constitutional concerns if we are able to 'ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" (quoting *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001))).

II.     <u>The VPPA Is Not Facially Void for Vagueness.</u>

NASCAR's argument that the VPPA is facially void for vagueness in violation of the Due

Process Clause is unavailing.  To successfully challenge a statute as facially vague, "a movant

'must establish that no set of circumstances exists under which [an act] would be valid.'"  *Fusaro*

*v. Howard*, 19 F.4th 357, 373 (4th Cir. 2021) (quoting *United States v. Hosford*, 843 F.3d 161, 165

(4th Cir. 2016)); *see also Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 497

(1982).  "That is a particularly demanding standard and is the 'most difficult challenge to mount

successfully.'"  *Fusaro*, 19 F.4th at 373 (quoting *United States v. Salerno*, 481 U.S. 739, 745

(1987)).  NASCAR does not attempt to allege that *all* applications of the VPPA are impermissibly

vague.  As such, NASCAR's facial challenge fails.

A law is unconstitutionally vague if it "fails to provide a person of ordinary intelligence

fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously

discriminatory enforcement."  *Id.* at 371 (quoting *Martin v. Lloyd*, 700 F.3d 132, 135 (4th Cir.

2012)).  The operative question is whether the statute is "set out in terms that the ordinary person

exercising ordinary common sense can sufficiently understand and comply with."  *Id.* (quoting

*Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973)).  "That inquiry is aided by both 'dictionary

definitions and old-fashioned common sense.'"  *Id.* (quoting *Wag More Dogs Liab. Corp. v.

Cozart*, 680 F.3d 359, 371 (4th Cir. 2012)).

Most terms in the VPPA are statutorily defined, *see* 18 U.S.C. § 2710(a), and additional

clarity has been added by the courts, *see, e.g.*, *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256

(11th Cir. 2015) (noting that a "subscription" must involve "some type of commitment,

relationship, or association . . . between a person and an entity").  NASCAR challenges the terms

"business," "delivery," "subscriber," and "goods or services" as impermissibly vague.  Mot. to

Dismiss at 13 (emphasis omitted).  But NASCAR does not argue that a person of ordinary

intelligence would not understand these terms.  And these terms are "quite different from the sorts of terms that [courts] have previously declared to be vague."  *Holder v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010).  For instance, the Supreme Court has "struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent'—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings."  *Id.* (quoting *United States v. Williams*, 553 U.S. 285, 306 (2008)).  Applying the VPPA's terms, on the other hand, does not require subjective judgments.  *Cf. id.* at 21 (holding the statutory terms "training," "expert advice or assistance," "service," and "personnel" were not vague).  Moreover, the VPPA's "knowledge requirement . . . further reduces any potential for vagueness."  *Id.*; *see* 18 U.S.C. § 2710(b)(1) (only applying to those "who *knowingly* disclose" PII (emphasis added)).

"As the Supreme Court has repeated, facial invalidation of legislation is disfavored" and "contrary to principles of judicial restraint."  *United States v. Chappell*, 691 F.3d 388, 392 (4th Cir. 2012).  Here, NASCAR has not met its high burden of establishing a facial constitutional problem.

III.   The VPPA Withstands Intermediate Scrutiny.

NASCAR does not dispute that the disclosures at issue here amount to commercial speech.  Mot. to Dismiss at 14.  "Commercial speech enjoys a limited measure of protection."  *Fla. Bar v. Went for It, Inc.*, 515 U.S. 618, 623 (1995) (quoting *Fox*, 492 U.S. at 477) (alterations omitted).  Because the VPPA regulates commercial speech, its constitutionality under the First Amendment is analyzed using the *Central Hudson* standard.  *Id.*  That standard examines: (1) "whether the asserted governmental interest is substantial"; (2) "whether the regulation directly advances the governmental interest asserted"; and (3) "whether it is not more extensive than is necessary to serve that interest."  *Recht v. Morrisey*, 32 F.4th 398, 408 (4th Cir.), *cert. denied*, 143 S. Ct. 527 (2022)

(quoting *Cent. Hudson*, 447 U.S. at 566).  The VPPA's disclosure prohibitions satisfy this standard.

A.  *The VPPA Advances a Substantial Government Interest*

The governmental interest underlying the VPPA is "substantial."  Congress passed the VPPA "[t]o preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials."  S. Rep. No. 100-599, at 1; *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (explaining that the VPPA "protects privacy interests . . . by ensuring that consumers retain control over their personal information").  Protecting privacy has long been recognized as a substantial governmental interest.  *Fla. Bar*, 515 U.S. at 625.  "[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person."  *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989).  Courts have specifically acknowledged the government's substantial interest in protecting the privacy of consumer information.  *See, e.g.*, *Saunders*, 2024 WL 126186, at *5; *Hearst II*, 269 F. Supp. 3d at 197; *Advance Mag.*, 210 F. Supp. 3d at 599; *see also Trans Union Corp. v. FTC*, 245 F.3d 809, 818 (D.C. Cir. 2001) (finding that the government's "interest [in] protecting the privacy of consumer credit information . . . is substantial").

The government's interest in protecting privacy is reinforced by its interest in protecting consumers' own First Amendment-protected activities.  That is, the VPPA prevents the chilling of consumers' right to view expressive videos of their choosing.  The VPPA was passed in recognition of "the relationship between the right of privacy and intellectual freedom" as a "central part" of the First Amendment.  S. Rep. No. 100-599, at 4.  And "[p]rotecting an individual's choice of books and films is a . . . pillar of intellectual freedom under the first amendment."  *Id.* (citing

*Stanley v. Georgia*, 394 U.S. 557, 565 (1969)); *see also Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 866-67 (1982) ("[W]e have held that in a variety of contexts 'the Constitution protects the right to receive information and ideas.'" (citation omitted)). Disclosure can chill the exercise of that right. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958) ("This Court has recognized the vital relationship between freedom to associate and privacy in one's associations."); *Van Hollen v. Fed. Election Comm'n*, 811 F.3d 486, 488 (D.C. Cir. 2016) ("Disclosure chills speech.").  To that end, the government has a substantial interest in regulating disclosures to protect the expressive speech rights of consumers. *See Burson v. Freeman*, 504 U.S. 191, 208 (1992) (plurality op.) (holding that certain regulations on speech were permissible given "compelling interest in securing the right to vote freely and effectively").

NASCAR's argument to the contrary applies the wrong law.  NASCAR cites *Brown v. Entertainment Merchants Association*, 564 U.S. 786 (2011), for the assertion that without a long tradition of proscription, the government may not impose new restrictions on commercial speech. Mot. to Dismiss at 14.  But *Brown* is inapplicable here.  *Brown* addresses when legislators may establish a new category of *unprotected* speech (like obscenity or incitement of violence), not when or how legislators may regulate *protected* speech.  *Brown*, 564 U.S. at 794.  The VPPA, in contrast, does not seek to create a new category of unprotected speech.  Because it is undisputed that this case involves commercial speech within the ambit of First Amendment protection, there is no need to determine whether there is a "long tradition of proscription" justifying no protection at all.  The standard for this case is set by *Central Hudson*—a case *Brown* had no occasion to discuss because *Brown* did not involve commercial speech—and the substantial body of case law defining government interests.

B.  *The VPPA Directly Advances the Asserted Interest.*

NASCAR does not appear to deny that the VPPA "directly and materially advances" the government's asserted interest.  *See* Mot. to Dismiss at 13-14.  The VPPA does indeed "directly advance" the government's interest in protecting the privacy of individuals' video viewing choices. When regulating commercial speech, the government must "demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree."  *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995) (quoting *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993)). On its face, the VPPA applies to individuals who sell, rent, or deliver video recordings—the only individuals, other than the consumer, likely to have access to the information the statute seeks to keep private.  *Hearst I*, 192 F. Supp. 3d at 449; *see also Saunders*, 2024 WL 126186, at *5 ("[T]he VPPA is narrowly drawn because it applies only to a narrow group of business entities and specific group of consumers.").  Restricting the ability of these individuals to disclose such information directly advances the goal of keeping that information private.  *Saunders*, 2024 WL 126186, at *5; *see also Nat'l Cable & Telecomms. Ass'n v. FCC*, 555 F.3d 996, 1001 (D.C. Cir. 2009) ("The privacy of customer information cannot be preserved unless there are restrictions on the carrier's disclosure of it.").  And the lawsuits that have credibly alleged VPPA violations over the years demonstrate that the disclosures the statute seeks to prevent are a legitimate concern.  *See, e.g.*, *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 484 (1st Cir. 2016) (finding that plaintiffs adequately stated a claim under the VPPA); *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1336-37 (N.D. Ga. 2023) (same); *Czarnionka v. Epoch Times Ass'n*, No. 22 Civ. 6348 (AKH), 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022), *motion to certify appeal denied*, 2022 WL 1778689 (S.D.N.Y. Dec. 15, 2022) (same); *In re Vizio, Inc., Consumer Priv. Litig.*, 238

F. Supp. 3d 1204, 1221-26 (C.D. Cal. 2017) (same); *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) (same).

### C. *The VPPA Is Sufficiently Tailored.*

Finally, the VPPA is sufficiently narrowly drawn. The *Central Hudson* standard requires a fit between the governmental interest and the statute restricting commercial speech that is "not necessarily perfect," but rather "reasonable." *Fox*, 492 U.S. at 480. Such a fit exists here. As explained, the VPPA's disclosure prohibitions are targeted at the commercial entities most likely to have, and thus be able to disclose, the information Congress intended to protect. The statute also includes exemptions that allow consumers to make choices about their own information and permit regulated entities to conduct business and comply with law enforcement and judicial directives as necessary. The statute's consent requirements, like providing consumers an opportunity to withdraw consent on a case-by-case basis and requiring consent to be re-obtained every two years, "allow[] consumers to maintain control over personal information." S. Rep. No. 100-599, at 8.

NASCAR's complaint about the VPPA's standalone, written consent requirement does not undermine the fit between the statute's prohibitions and the government's interest. NASCAR cites no case law that suggests that this requirement might render the statute unconstitutional. In arguing that Congress could have chosen less burdensome forms of consent, *see id.* at 15, NASCAR provides no support for the assertion that Congress must choose the floor for enforceability in its attempts to protect consumer privacy. To the contrary, robust consent requirements can serve salutary purposes: ensuring that consumers are fully and knowingly abdicating their privacy interests serves the "interest in preventing commercial harms [that] justifies more intensive regulation of commercial speech than noncommercial speech." *City of Cincinnati v. Discovery*

*Network, Inc.*, 507 U.S. 410, 426 n.21 (1993).  And setting aside whether, or by how much, less-restrictive consent requirements could also advance the statute's objectives, *Central Hudson* does not require the least restrictive means of regulating commercial speech, but rather a "fit between the legislature's ends and the means chosen to accomplish those ends" that is "reasonable."  *See Fla. Bar*, 515 U.S. at 632 (quoting *Fox*, 492 U.S. at 480).  So long as the fit is "reasonable," courts "leave it to governmental decisionmakers to judge what manner of regulation may best be employed."  *Fox*, 492 U.S. at 480.  Given the interests at stake, the VPPA is sufficiently narrowly tailored.  *Accord Hearst I*, 192 F. Supp. 3d at 451.

Accordingly, the VPPA passes intermediate scrutiny.

IV.    The VPPA Withstands NASCAR's As-Applied Constitutional Challenge.

In the final two sentences of its brief, NASCAR argues that the VPPA violates NASCAR's Due Process and First Amendment rights if applied to it.  Mot. to Dismiss at 15.  Even assuming these arguments were adequately raised, they lack merit.  NASCAR's as-applied First Amendment challenge fails because, as discussed above in Part III, the VPPA survives intermediate scrutiny.  *See Educ. Media Co. at Va. Tech, Inc. v. Insley*, 731 F.3d 291, 298 (4th Cir. 2013) ("*Central Hudson* applies to both facial and as-applied challenges.").

Additionally, the extended string of cases applying the VPPA to conduct like that alleged here necessarily defeats NASCAR's vagueness challenge.  Although not every VPPA case has been successful on the merits, many courts have applied the VPPA to disclosures to social media companies through a tracking pixel.  *See, e.g.*, *Czarnionka,* 2022 WL 17069810, at *1 (disclosure of video viewing history through Facebook pixel); *Harris*, 662 F. Supp. 3d at 1336 (same).  The statute also provides clear standards for how businesses can comply with the VPPA, including providing exemptions, *see* 18 U.S.C. § 2710(b)(2)(A)-(F), and detailing consent requirements, *see id.* § 2710(b)(2)(B)(i)-(iii).  These cases, combined with the statute itself, provided NASCAR with

13

a "reasonable opportunity to know what is prohibited" including "explicit standards." *Grayned v.*

*City of Rockford*, 408 U.S. 104, 108 (1972).

## **CONCLUSION**

For the foregoing reasons, the Court should reject Defendants' constitutional challenge.

Date:  May 3, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Bonnie E. Devany*
BONNIE E. DEVANY
Trial Attorney (Tex. Bar No. 24131173)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 616-8101
Email: bonnie.e.devany@usdoj.gov

DENA J. KING
UNITED STATES ATTORNEY

*/s/ Gill P. Beck*
GILL P. BECK
Assistant United States Attorney
N.C. State Bar No. 13175
Room 233, U.S. Courthouse
100 Otis Street
Asheville, North Carolina 28801
Phone:  (828) 271-4661
Fax:  (828) 271-4327
Email:  Gill.Beck@usdoj.gov

*Counsel for United States*

14

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify, subject to Rule 11, that the United States of America's Memorandum of Law in Defense of the Constitutionality of the Video Privacy Protection Act complies with the Court's 4,500-word limitation.

<u>/s/ Bonnie E. Devany</u>
BONNIE E. DEVANY

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 3, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants for this matter.


<u>*/s/ Bonnie E. Devany*</u>
BONNIE E. DEVANY