# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| KAREN COCHENOUR, individually and on behalf of others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| | ) Civil Action No. 1:25-CV-00007-RP |
| v. | )<br>) |
| 360TRAINING.COM, INC., D/B/A MORTGAGE EDUCATORS AND COMPLIANCE, INC., | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)

**TABLE OF CONTENTS**

        **Page**

I.     PLAINTIFF LACKS STANDING UNDER FED. R. CIV. P. 12(b)(1). ............................1

II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6). ..............3

       A.     Plaintiff Does Not Allege Mortgage Educators Is A "Video Tape Service Provider." ................................................................................................................3

       B.     Plaintiff Does Not Allege That Mortgage Educators Knowingly Disclosed PII. ..............................................................................................................................4

            1.     The FID Is Not PII. .......................................................................................4

            2.     Mortgage Educators Did Not Knowingly Disclose PII. ..............................5

       C.     Plaintiff Fails to Allege Actual Damages. ................................................................6

       D.     The VPPA Violates The First Amendment. .............................................................8

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alexander v. Cahill*,
    598 F.3d 79 (2d Cir. 2010)..........................................................................................9

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
    591 U.S. 610 (2020)....................................................................................................8

*Boehner v. McDermott*,
    484 F.3d 573 (D.C. Cir. 2007)..................................................................................10

*Boelter v. Hearst Commc'ns, Inc.*,
    192 F. Supp. 3d 427 (S.D.N.Y. 2016).......................................................................10

*Brown v. Entm't Merchants Ass'n*,
    564 U.S. 786 (2011)....................................................................................................9

*Brown v. Learfield Commc'ns, LLC*,
    713 F. Supp. 3d 355 (W.D. Tex. 2024)......................................................................6

*Computer Servs., Inc. v. PDA, Inc.*,
    884 F.2d 214 (5th Cir. 1989) .....................................................................................1

*Dahlstrom v. Sun-Times Media, LLC*,
    777 F.3d 937 (7th Cir. 2015) .....................................................................................8

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)....................................................................................................1

*Doe v. Chao*,
    540 U.S. 614 (2004)................................................................................................6, 7

*Edenfield v. Fane*,
    507 U.S. 761 (1993)....................................................................................................9

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) .....................................................................................5

*Ellis v. Cartoon Network, Inc.*
    803 F.3d 1251 (11th Cir. 2015) .................................................................................4

*Fanin v. U.S. Dep't of Veterans Affairs*,
    572 F.3d 868 (11th Cir. 2009) ...................................................................................6

*IMDb.com Inc. v. Becerra*,
   962 F.3d 1111 (9th Cir. 2020) ....................................................................................10

*Kehoe v. Fid. Fed. Bank & Tr*,
   421 F.3d 1209 (11th Cir. 2005) ....................................................................................7

*Mollett v. Netflix, Inc.*,
   795 F.3d 1062 (9th Cir. 2015) ......................................................................................5

*In re Nickelodeon Consumer Priv. Litig.*,
   827 F.3d at 285 .........................................................................................................4, 5

*Pac. Frontier v. Pleasant Grove City*,
   414 F.3d 1221 (10th Cir. 2005) ....................................................................................9

*Peterson v. Learfield Commc'ns, LLC*,
   705 F. Supp. 3d 937 (D. Neb. 2023).............................................................................10

*Reed v. Town of Gilbert, Ariz.*,
   576 U.S. 155 (2015).......................................................................................................8

*RJ Reynolds Tobacco Co. v. Food & Drug Admin.*,
   96 F.4th 863 (5th Cir. 2024) .........................................................................................8

*Salazar v. Nat'l Basketball Ass'n*,
   118 F.4th 533 (2d Cir. 2024) ........................................................................................2

*Saunders v. Hearst Television, Inc.*,
   711 F. Supp. 3d 24 (D. Mass. 2024) .............................................................................8

*Silha v. ACT, Inc.*,
   807 F.3d 169 (7th Cir. 2015) ........................................................................................7

*Stark v. Patreon, Inc.*,
   656 F. Supp. 3d 1018 (N.D. Cal. 2023) ..................................................................8, 10

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021).......................................................................................................2

*U.S. W., Inc. v. F.C.C.*,
   182 F.3d 1224 (10th Cir. 1999) ....................................................................................9

*United States v. Fredrickson*,
   996 F.3d 821 (7th Cir. 2021) ......................................................................................10

*Walsh v. California Cinema Invs. LLC*,
   2024 WL 3593569 (C.D. Cal. July 29, 2024)..............................................................10

*Yershov v. Gannett Satellite Info. Network, Inc.*,
   820 F.3d 482 (1st Cir. 2016) ........................................................................................5

**Statutes**

7 Pa. Cons. Stat. § 6131.1(d)(1) ........................................................................................1

18 U.S.C. § 2710(a)(4) ......................................................................................................3

18 U.S.C. § 2710(c) ..........................................................................................................7

18 U.S.C. § 2710(c)(2)(A) ................................................................................................6

**Other Authorities**

www.mortgageeducators.com ..........................................................................................3

I.      **PLAINTIFF LACKS STANDING UNDER FED. R. CIV. P. 12(B)(1).**

Plaintiff's arguments miss the mark. First, it is irrelevant that Plaintiff could have satisfied continuing education requirements through live training or other means. (Opp. at 1.) The crux of Mortgage Educators' argument is that Plaintiff's completion of a continuing education course required to maintain her MLO license is not subject to any legitimate claim of privacy and, indeed, is information that is publicly available on the NMLS Consumer access website. (Mot. at 4-7). Mortgage Educators is an NMLS-approved continuing education provider, Plaintiff purchased continuing education courses, and Plaintiff's continuing education compliance was reported to NMLS as required for Plaintiff to maintain her license. (*Id.*). The very same information that Plaintiff contends is private, is, in fact, a matter of public record—as required by law. (*See id.*; *see also* 7 Pa. Cons. Stat. § 6131.1(d)(1).) Plaintiff argues that disclosing video titles as opposed to Plaintiff's course completion is what supports injury-in-fact, (Opp. at 6-7), but it is undisputed that *the videos at issue were all continuing education courses*. (Mehmood Decl, ECF No. 10-1, ¶¶ 8-10.) It is patently absurd to suggest that whether there is a privacy interest sufficient to support injury-in-fact turns on whether Plaintiff completed continuing education via a video course or other means (for example, live attendance or audio-only). Whether the course content is conveyed via video or in-person simply has no bearing on whether there is a privacy interest in that content.

Second, this Court has an obligation to confirm whether Plaintiff has standing to bring suit. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006). Mortgage Educators' challenge turns on whether there can be an invasion of a privacy interest sufficient to constitute injury-in-fact and support Article III standing. (Mot. at 2-9.) Plaintiff's citation to *Computer Servs., Inc. v. PDA, Inc.*, 884 F.2d 214, 219 (5th Cir. 1989), (Opp. at 4, n.1),[1] addressed privity of contract and standing,

---

[1] The VPPA does not use the word "privileged" and Plaintiff does not explain what she means by that word.

- 1 -

where privity was intertwined with the merits of the breach of contract claim. Here, Mortgage Educators' argument that Plaintiff lacks standing is not intertwined with the merits of her claim. The VPPA does not differentiate between decent and obscene video viewing, but to demonstrate an injury-in-fact, Plaintiff is required to have a legitimate claim of privacy over the video materials allegedly disclosed. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432-34 (2021). Plaintiff has no privacy interest in required coursework codified under federal and Pennsylvania law, which is meant to protect consumers that deal with MLOs. Plaintiff's suggestion that information about her legally required continuing education courses is "highly offensive" and akin to "specific medical conditions," (Opp. at 9), is disingenuous and illogical.

Third, there is no injury that shares a close relationship to harms traditionally recognized as a basis for lawsuits. *TransUnion*, 594 U.S. at 432-34. In her attempt to claim harm, Plaintiff cites *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024), concluding that a violation of the VPPA is analogous to public disclosure of private facts. But Plaintiff has not alleged *publication* (*i.e.*, communication to the public at large) by Mortgage Educators or Meta, an essential component of public disclosure of private facts under Texas law. (Mot. at 8.) As noted in Mortgage Educators' opening brief, numerous federal appellate courts outside the Second Circuit have held, in opinions which post-date *TransUnion* and Plaintiff's other cited authority (Opp. at 5 n.2), that there was no standing where information was disclosed to a single company because there was no publication. (Mot. at 8-9.) Plaintiff mischaracterizes her allegations and falsely claims she has alleged that Meta "republish[es] that information . . . for advertisers to see." (Opp. at 9.) But what Plaintiff actually alleges is that *Meta* uses the information so that *Meta* can deliver targeted advertising to Facebook users, not that Meta makes the information available for anyone else to see. (Compl. ¶ 43 ("Meta . . . sell[s] advertisers the ability to serve highly targeted

advertisements to the persons whose personal information is contained within it."). Plaintiff makes no effort to compare the alleged statutory violation in this case to any traditionally recognized privacy tort, as *TransUnion* requires.

## II. PLAINTIFF FAILS TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6).

### A. Plaintiff Does Not Allege Mortgage Educators Is A "Video Tape Service Provider."

Plaintiff argues Mortgage Educators is subject to the VPPA because it is engaged in the business of delivering videos. But Plaintiff's specific allegations regarding Mortgage Educators' business demonstrate she purchased a *course*, and any videos are secondary to Mortgage Educators' business of providing continuing education courses—*not renting, selling, or delivering video content* in and of itself. (Compl. ¶ 45 ("The prerecorded video materials that Defendant offers include **online courses for licensure and continuing education, webinars, and trainings**.").)

If any authorities can be read to support Plaintiff's argument that companies which provide mortgage continuing education courses containing prerecorded videos are covered by the VPPA but those that provide live webinars,[2] in-person courses, or audio podcasts are not, these authorities are inconsistent with the statutory language limiting VTSPs to entities "engaged in the business" of delivering video content. *See* 18 U.S.C. § 2710(a)(4). The focus of all of those businesses is providing continuing education, regardless of the medium used to do so. Mortgage Educators' business is very different than a 1980s video rental store where customers could rent a wide variety of genres, and it makes no sense to interpret the VPPA as applying or not applying to a continuing

---

[2] Mortgage Educators itself offers live webinars. *See* www.mortgageeducators.com. Under Plaintiff's nonsensical theory, Mortgage Educators would be a VTSP and violate the VPPA if it disclosed that she purchased prerecorded video-based courses, but would not be a VTSP and would not violate the VPPA if it disclosed that she purchased the *exact same courses* via live webinar. Mortgage Educators is "engaged in the business of" offering courses, not prerecorded videos.

education provider based on whether the continuing education provider conveys content live, via audio-only, or via video.

B.  **Plaintiff Does Not Allege That Mortgage Educators Knowingly Disclosed PII.**

1.  **The FID Is Not PII.**

Plaintiff does not allege that the information Mortgage Educators allegedly disclosed constitutes PII under the VPPA. Mortgage Educators relies on *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 285 and *Ellis* to argue that the FID and other static digital identifiers are not PII because they do not identify a specific person. (Mot. at 11-13). Plaintiff argues that an FID is PII under the VPPA simply because some other courts have found it to be so. However, the most basic requirement of a VPPA claim is disclosure of "the kind of information that would *readily permit an ordinary person* to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cir. 2016) (emphasis added). But Plaintiff admits the FID does not itself identify her—Plaintiff's Complaint describes a FID as a "unique sequence of numbers linked to a specific Meta profile," and admits that a person must "type www.facebook.com/[FID] into a web browser" to load an individual's profile, and that is only if they can identify the FID within "various query string parameters and cookie values." (Compl. ¶¶ 4, 48.)  This is not information that would readily permit an ordinary person to identify a specific individual's video-watching behavior and is, therefore, not covered by the VPPA.

Significantly, several courts have found that a "static digital identifier" similar to an FID is not PII. *See Ellis v. Cartoon Network, Inc*. 803 F.3d 1251, 1257 (11th Cir. 2015); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 283. Although Plaintiff argues an FID is PII because it can be plugged into a Facebook URL and PII might be found on the resulting Facebook profile, this multi-step investigative process does not make the FID itself PII.

Plaintiff's opposition also mischaracterizes both Mortgage Educators' cited authority and the applicable legal standard under the VPPA. Plaintiff attempts to distinguish *In re Nickelodeon* by arguing that it did not involve the Meta Pixel or an FID—but that case involved the alleged sharing of plaintiff's IP address, browser and operating system settings, and a computing device's unique device identifier. 827 F.3d at 281-82. The Third Circuit explicitly held that the disclosed IP addresses and digital identifiers were not PII because they did not, on their own, identify an individual. *Id.* at 286. An FID is a similar numeric identifier.

This Court should decline to follow *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016) because the "'ordinary person' test better informs video service providers of their obligations under the VPPA . . . It looks to what information a video service provider discloses, not to what the recipient of that information decides to do with it." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). "'[P]ersonally identifiable information' must have the same meaning without regard to its recipient's capabilities. Holding otherwise would make '[t]he lawfulness of [a] disclosure . . . depend on circumstances outside of [a video service provider's] control.'" *Id.* (quoting *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015)). There is no basis in the statutory text to hold information which does not itself identify a person can somehow constitute "information which identifies a person" merely because it might theoretically be possible to use that information to launch an investigation attempting to identify a person.

### 2. Mortgage Educators Did Not Knowingly Disclose PII.

Plaintiff argues she has adequately pled that Mortgage Educators knowingly disclosed PII because "Defendant intentionally installed and programmed the Meta Pixel code on its Website." (Opp. at 14.) Yet Plaintiff does not contest Mortgage Educators' argument that Mortgage

Educators has no way to know whether Plaintiff—or any users—had FIDs, much less what those FIDs were, or whether Plaintiff set her browser to allow Facebook cookies. (Mot. at 13.)

      **C.     Plaintiff Fails to Allege Actual Damages.**

The language of the VPPA under which Plaintiff seeks relief in this case makes clear a plaintiff must establish actual damages to recover under the statute: "[t]he court may award actual damages but not less than liquidated damages in an amount of $2,500." 18 U.S.C. § 2710(c)(2)(A). This language does not create two separate and independent avenues for recovery; it establishes that actual damages must be alleged and proven. The Supreme Court squarely addressed this issue in construing a federal statute with similar language in *Doe v. Chao*, 540 U.S. 614 (2004), where it held that actual damages are a prerequisite to recovering the statutory amount. *Id.* at 627; *see also* Mot. at 14-15. Plaintiff's repeated citation to *Brown v. Learfield Commc'ns, LLC*, 713 F. Supp. 3d 355 (W.D. Tex. 2024) is puzzling because that case did not even address this issue.

*Doe*'s reasoning applies with full force here, making clear that Plaintiff cannot bypass the requirement to plead actual damages by simply asserting a right to other types of damages. Indeed, courts applying *Doe* have held a plaintiff must establish actual damages in order to be entitled to relief under the statute. *See, e.g.*, *Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 872 (11th Cir. 2009) (requiring a showing of pecuniary harm to recover for Privacy Act violation). It would make no sense to allow a person who has suffered no actual damages to recover punitive damages, attorneys' fees and costs, or equitable relief—because the predicate for recovery under the VPPA is actual damages. Moreover, although there is a single reference to injunctive relief in Plaintiff's prayer for relief, nowhere in her Complaint does she actually identify any injunctive relief she purportedly seeks or any facts that could support a claim for injunctive relief. She does not even allege that she intends to visit Mortgage Educators' website again. Alternatively, at a very

minimum, Plaintiff's damages claims must be dismissed even if she is permitted to seek unspecified injunctive or other relief.

The non-binding *Saunders* decision that Plaintiffs cites misapplies *Doe* and *Fanin* and does not address the Supreme Court's emphasis that its interpretation of the damages language in *Doe* turned on the presence of the phrase "actual damages" in the statute, *see Doe*, 540 U.S. at 623 n.8—the phrase that is also present in the VPPA's damages provision. Similarly, *Kehoe v. Fid. Fed. Bank & Tr* is distinguishable because, unlike the VPPA, the subject statute did not include any requirement that an individual bringing a claim be "aggrieved by any act of a person in violation of" the statute, 18 U.S.C. § 2710(c), but rather provides an action may be brought by anyone whose personal information was knowingly obtained, disclosed, or used. *See Kehoe.*, 421 F.3d 1209, 1212-13 (11th Cir. 2005) (interpreting language providing, "(a) Cause of action.—A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court. (b) Remedies.—The court may award—(1) actual damages, but not less than liquidated damages in the amount of $2,500; . . . ."). To the extent *Kehoe* and *Fanin* are in tension, *Fanin* was decided more recently and presents the better approach.

Plaintiff alternatively argues that she has alleged actual damages because "her personal information has market value." (Opp. at 17.) However, this injury theory has been rejected by courts, where, as here, Plaintiff does not allege any facts regarding how the value of her PII was diminished or that she intended to sell her own PII. *See, e.g., Silha v. ACT, Inc.*, 807 F.3d 169, 172 (7th Cir. 2015) ("reject[ing] the claimed injury of diminished value of PII because Plaintiff failed to 'allege that they have the ability to sell their personal information or that Defendant' conduct

foreclosed them from entering into a 'value for value transaction' relating to their PII.").

### D. The VPPA Violates The First Amendment.

Mortgage Educators' opening brief (at 15–20) demonstrated the VPPA imposes severe speech restrictions not justified under either strict or intermediate scrutiny. Plaintiff does not adequately support her invocation of intermediate scrutiny over strict scrutiny. She asserts commercial-speech restrictions "are subject to intermediate scrutiny," Opp. at 17, but she does not cite recent Supreme Court cases applying strict scrutiny to content-based speech regulations. *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 618–19 (2020); *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 172 (2015). Both decisions involved commercial speech: *American Association of Political Consultants* involved a ban on robocalls to cell phones, 591 U.S. at 816, and *Reed* involved sign advertising, 576 U.S. at 165–71. These decisions make clear "*content-based*" distinctions "are subject to strict scrutiny" and governments have "ample content-neutral options available to resolve problems" they attempt to resolve with content-based restrictions. *Reed*, 576 U.S. 172–73.[3] "The appropriate standard of review for such a regulation hinges on whether the regulation is content based, which requires us to apply strict scrutiny, or content neutral, which demands only an intermediate level of scrutiny." *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 949 (7th Cir. 2015). Because the VPPA is content-based, as Plaintiff's cited authority acknowledges, *Stark v. Patreon, Inc.*, 656 F. Supp. 3d 1018, 1031 (N.D. Cal. 2023), strict scrutiny applies.[4] Plaintiff makes no argument that the VPPA can survive strict scrutiny.

Plaintiff's arguments under intermediate scrutiny are also unconvincing. Her sweeping

---

[3] The Fifth Circuit case Plaintiff cites involved "government-compelled speech—not speech restrictions," *RJ Reynolds Tobacco Co. v. Food & Drug Admin.*, 96 F.4th 863, 875 (5th Cir. 2024), and has no bearing on the correct level of scrutiny in this case.
[4] For this reason, Plaintiff's citation to *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24 (D. Mass. 2024) fails. The court applied the wrong standard (intermediate scrutiny), and *Saunders* involved an as-applied challenge. The court declined "to raise a *sua sponte* facial challenge to the statute at this stage." *Id.* at 33.

assertion that "privacy interests" justify the VPPA are precisely the type of "broad" assertion that does not work. *U.S. W., Inc. v. F.C.C.*, 182 F.3d 1224, 1235 (10th Cir. 1999). While Plaintiffs contend the VPPA protects First Amendment interests, Opp. 20, they have no response to Defendant's point (at Mot. 18) that the First Amendment constrains state action whereas the VPPA constrains private speech—and thus *invades* rather than *protects* First Amendment interests. Plaintiffs also fail to respond to Defendants' observation that no meaningful evidence before Congress justified the VPPA's speech restrictions: the First Amendment cannot be satisfied with only two referenced incidents resulting in no cognizable harm. *See, e.g.*, *Edenfield v. Fane*, 507 U.S. 761, 771 (1993); *Alexander v. Cahill*, 598 F.3d 79, 92 (2d Cir. 2010); *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235 n.12 (10th Cir. 2005).

In addition, Plaintiff does not meaningfully attempt to explain how the VPPA is properly tailored when it protects only privacy interests in recorded videos but not books, magazines, music, and pictures. Mot. at 19. Plaintiff's footnote argument on under-inclusivity merely asserts the VPPA's "exceptions" are narrow. Opp. 20 n.14. But the VPPA is not principally underinclusive because of the exceptions it creates from its speech ban but rather because the ban accomplishes so little. The VPPA does next to nothing to protect Americans from disclosures about activities that may expose them to ridicule because most of that activity occurs through engagement with pictures, books, magazines, newspapers, online subscriptions, texts, blogs, letters, and other materials beyond the VPPA's ambit. A consumer who watches a video version of a book receives full protection under the VPPA, but one who reads the book itself receives nothing. The statute singles out some content providers for disfavored treatment and relieves similarly situated content providers from the same burdens. *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 802 (2011). Plaintiff simply does not address this point.

Rather than engage with the concepts and binding precedent, Plaintiff asks the Court to follow decisions she claims "took the position that the VPPA is constitutional in other contexts." Opp. at 18. But three decisions addressed the Michigan Preservation of Personal Privacy Act, which prohibits disclosures—not only about videos—but also about "retail, renting, or lending books or other written materials, sound recordings, or video recordings." *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 435 (S.D.N.Y. 2016) (quoting the statute). The tailoring inquiry is therefore fundamentally different from the inquiry in this case, *see id.* at 449, and the Michigan legislature appears to have done more than Congress to justify the statute. *See id.* at 447–48. Other decisions Plaintiffs cite, Opp. at 18 n.11, only referenced the constitutionality of the VPPA in brief dictum, *see Boehner v. McDermott*, 484 F.3d 573, 578 n.2 (D.C. Cir. 2007); *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1124 (9th Cir. 2020), which Plaintiff's own cited authority recognizes is not binding even within those circuits or even "persuasive as to this issue that they addressed only in passing," *Stark*, 656 F. Supp. 3d at 1028.[5]

The remaining case, *Stark*, did not hold "the VPPA does not violate the First Amendment." Opp. at 17. *Stark* punted the question until after "a factual record" was developed. 656 F. Supp. at 1038. But it is a mystery what "factual record" would bear on whether the VPPA is properly tailored. The challenge presents a constitutional question that is a pure matter of law. *United States v. Fredrickson*, 996 F.3d 821, 823 (7th Cir. 2021). Moreover, Plaintiff has not asked for discovery but rather a holding *now* that the VPPA is constitutional—which neither *Stark* nor her other authority supports.

---

[5] Plaintiff cites the United States' intervening brief in three other cases to suggest constitutionality, but two of the district court decisions did not address constitutional issues because they found no claim stated under the VPPA. *Peterson v. Learfield Commc'ns, LLC*, 705 F. Supp. 3d 937, 963 (D. Neb. 2023); *Walsh v. California Cinema Invs. LLC*, 2024 WL 3593569, at *7 (C.D. Cal. July 29, 2024). The third was voluntarily dismissed before the court ruled on the pending motion to dismiss. *See Myers et al., v. Nat'l Assoc. Stock Car Auto Racing, Inc.,* No. 3:23-cv-00888 (W.D.N.C.).

Dated: April 23, 2025

Respectfully submitted,

BAKER & HOSTETLER LLP

By: */s/ Rachel Palmer Hooper*

Rachel Palmer Hooper
Texas Bar No. 24039102
811 Main Street, Suite 1100
Houston, Texas 77002
Tel: 713.646.1329
Fax: 713.751.1717
rhooper@bakerlaw.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, April 23, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

/s/ *Rachel Palmer Hooper*