IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KAREN COCHENOUR, | § | |
| Plaintiff, | § | |
| | § | 1:25-CV-00007-RP |
| v. | § | |
| 360Training.COM, Inc., d/b/a MORTGAGE EDUCATORS and COMPLIANCE, INC., | § | |
| Defendant. | § | |

**PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiff Karen Cochenour, by and through undersigned counsel, submits this Notice of Supplemental Authority in response to the supplemental authority notifying this Court of the *Solomon v. Flipps Media, Inc.*, No. 23-7597-cv (2d Cir. May 1, 2025) decision filed by Defendant 360Training.com, Inc. (ECF No. 14).

1. Plaintiff writes to inform the Court of a recent decision related to similar Meta Pixel allegations as the pleading and the briefing in opposition to Defendant's Motion to Dismiss in this case. The decision was issued by the United States District Court for the Southern District of Florida, and it is captioned: *Kueppers v. Zumba Fitness LLC*, No. 0:24-cv-61983, ECF No. 23 (S.D. Fla. May 8, 2025). Plaintiff could not have cited this authority previously because the decision was issued on May 8, 2025, which was after the briefing had closed. A copy of the *Kueppers* opinion is attached hereto as Exhibit A.

2. In *Kueppers*, the Third Circuit's decision was questioned by the court when it explained that:

> There is evidence from the *Nickelodeon* opinion that the Third Circuit didn't specifically raise the standard for who needed to be able to tie the disclosure to an

> individual person. Instead, the court's holding seems to be about the ease with which one could draw the connection between the numerical identifier disclosed and the individual video consumer. *See Nickelodeon*, 827 F.3d at 284 ("Our review of the legislative history convinces us that Congress's purpose in passing the Video Privacy Protection Act was quite narrow: to prevent disclosures of information that would, with little or no extra effort, permit an *ordinary recipient* to identify a particular person's video-watching habits.") (emphasis added). **This "ordinary recipient" language suggests that its holding applies to any recipient, not an "ordinary person" in the legal sense of the term.**

*See id.*, at page 8 (emphasis added, italics in original).

3. The court in *Kueppers* then rejected the ordinary person standard, explaining:

> **In the absence of binding precedent, the Court finds ample support from case law and from the statute itself for the proposition that, so long as the person or entity receiving the disclosure could reasonably and foreseeably identify which videos a person has obtained, Plaintiff sufficiently alleges a violation of the statute**. *See Yershov*, 820 F.3d at 486. Here, the Complaint alleges Defendant intentionally installed the Meta Pixel which transmitted to Meta Plaintiffs' Facebook IDs in conjunction with the URL link to the training course purchased. And certainly, (contrary to Defendant's ancillary point), "Meta can easily 'link' the FID to a specific user." *Li v. Georges Media Grp. LLC*, No. CV 23-1117, 2023 WL 7280519, *4 (E.D. La. Nov. 3, 2023); see also Compl. ¶ 51 (quoting Meta's developer guide as stating that "a Meta Pixel installed on a company's website allows Meta to 'match [] website visitors to their respective Facebook User accounts.'").
>
> **In the alternative, Plaintiffs argue that, to the extent there is an ordinary person requirement, Plaintiff has alleged an ordinary person could tie the videos to the consumers. The Court agrees.** *See Martinez v. D2C, LLC*, No. 23-21394-CIV, 2023 WL 6587308, at *4 (S.D. Fla. Oct. 10, 2023) (assuming without deciding the ordinary person standard applied, but finding Plaintiff nonetheless stated a claim where it alleged the Facebook ID was disclosed because "[t]he [Facebook ID] is a unique identifier that is enough, on its own, to identify a person.") (quoting *Sellers*, 2023 WL 4850180 at *4).

*See id.*, at page 9-10 (emphasis added).

4. The Second Circuit's *Solomon* decision should be disregarded because it is not binding on this Court and merely repeats the same errors committed by the Third and Ninth Circuits, which based their decisions on *inter alia* post-enactment legislative history despite the

U.S. Supreme Court's admonishment against such a practice. *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011). Indeed, the Second Circuit did just that when it relied on the following excerpt to justify its holding:

> The evolution of the VPPA provides additional insights into its purpose. In 2013, some twenty-five years after its inception, Congress amended the VPPA in recognition that "the Internet ha[d] revolutionized the way that American consumers rent and watch movies and television programs." *Salazar*, 118 F.4th at 545 (quoting S. Rep. No. 112-258, at 2 (2012)).[13] ***Congress, however, declined to amend the definition of personally identifiable information, even in the face of testimony asking for an expansion of the definition to include IP addresses.*** *See In re Nickelodeon*, 827 F.3d at 288 ("Despite this recognition [that the Internet has revolutionized the way that Americans rent and watch movies and television programs], Congress did not update the definition of personally identifiable information in the statute.").
>
> The decision to not amend the VPPA suggests that Congress believed that the VPPA "serves different purposes, and protects different constituencies, than other, broader privacy laws." *Id*. This is especially notable when we compare the VPPA to other, later privacy statutes that included a more expansive definition of personally identifiable information or related terms.

*Solomon*, No. 23-7597-CV, 2025 WL 1256641, at *10 (2d Cir. May 1, 2025).

Dated: May 12, 2025

Respectfully submitted,

**HEDIN LLP**

/s/ *Elliot O. Jackson*
Elliot O. Jackson
Florida Bar No. 1034536
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
ejackson@hedinllp.com