IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KAREN COCHENOUR, | § § § | |
| Plaintiff, | § § | 1:25-CV-00007-RP |
| v. | § § | |
| 360Training.COM, Inc., d/b/a MORTGAGE EDUCATORS and COMPLIANCE, INC., | § § § | |
| Defendant. | § | |

## PLAINTIFF'S THIRD NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiff Karen Cochenour, by and through undersigned counsel, submits this Notice of Supplemental Authority to notify this Court of the *Manza v. Pesi*, No. 3:24-cv-00690-jdp (W.D. Wis. May 20, 2025) decision. Plaintiff further states as follows:

1. The *Manza* decision involved similar Meta Pixel allegations, evaluated and rejected the *Solomon v. Flipps Media, Inc.* decision, and was issued by the United States District Court for the Western District of Wisconsin. Plaintiff could not have cited this authority previously because the decision was issued on May 20, 2025, which was after the briefing had closed. A copy of the *Manza* opinion is attached hereto as Exhibit A.

2. In *Manza*, the Court considered and rejected the "ordinary person" standard for the definition of "personally identifiable information" as that term appears in the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710(a)(3).

3. The Court in *Manza* expressly engaged with the Second Circuit's reasoning in *Solomon*. It wrote:

> The courts that have adopted the "ordinary person" standard have identified little textual basis for the limitation they impose. *Solomon* acknowledged that the plain

language of the VPPA was broad enough "to encompass computer code and digital identifiers," but the court concluded that the statute is "more naturally read as referring to information that would permit an ordinary person to learn another individual's video-watching history," 2025 WL 1256641, at *9, **without explaining why**.

. . .

Rather than rely on the text, the courts adopting an "ordinary person" test have concluded that the meaning of PII is ambiguous in the VPPA, and they rely on other tools of statutory construction to support a narrower reading. *See, e.g., Nickelodeon*, 827 F.3d at 284. But the reasons they provide are not persuasive.

First, they say that a narrower interpretation is supported by legislative history and the purpose of the VPPA. For example, *Nickelodeon* quotes extensively from congressional committee reports. *See* S. Rep. No. 100-599 (1988) (Senate Report); Video and Library Privacy Protection Act of 1988: Hearing on H.R. 4947 & S. 2361 Before the Subcomm. on Courts, Civil Liberties & the Admin. of Justice of the H. Comm. on the Judiciary & the Subcomm. on Tech. & the Law of the S. Comm. on the Judiciary, 100th Cong. (1988). **But there are no references to the "ordinary person" standard or anything similar in those reports**. . .

**If anything, the text, purpose, and history of the statute suggest that Congress intended the meaning of PII to be expansive** so that it could adapt to changing technology. Even *Nickelodeon* acknowledged that there was support for such a view. *See* 827 F.3d at 285 ("[T]here are portions of the legislative history that might be read to support . . . a view [that] Congress intended to pass a broad statute that would protect consumer privacy even as video-watching technology changed over time.").

Second, *Nickelodeon, Solomon, and Eichenberger* focused on the specific impetus for the VPPA—a reporter's disclosure of Judge Robert Bork's video tape rental history—and the state of technology in 1988 . . . **Neither of these observations is a reason to interpret the VPPA narrowly.** "[S]tatutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79 (1998). **The question is not whether Congress had a plaintiff's specific problem in mind when it enacted the statute, but whether the statute uses language broad enough to cover the problem.** This court has concluded that it does.

Third, *Nickelodeon* and *Solomon* reviewed other statutes that include definitions of PII. They focused on the Children's Online Privacy Protection Act (COPPA) in

particular, **noting that the definition of PII in that statute is a discrete list of items and that the Federal Trade Commission may add more items, one of which is "[a] persistent identifier, such as a customer number held in a cookie or a processor serial number, where such identifier is associated with individually identifiable information."** *Nickelodeon*, 827 F.3d at 287. *Nickelodeon* observed that the VPPA "does not empower an administrative agency to augment the definition of 'personally identifiable information' in light of changing circumstances or new technologies. The meaning of that phrase in the Act is, it would appear, more static." *Id. Solomon* made the same point. 2025 WL 1256641, at *10. **Again, the courts did not explain how their observation supported an "ordinary person" standard. "Static" does not mean "narrow."** COPPA is not instructive because its definition of PII is a laundry list; **VPPA's more general definition does not need to be "updated."**

Fourth, *Nickelodeon* and *Solomon* made a similar argument related to Congress's failure to amend the definition of PII when it amended other provisions of the VPPA in 2013 . . . **This argument again rests on the false assumption that the VPPA defines PII narrowly, so it was necessary to amend the statute to keep up with modern technology. But as this court has already explained, the VPPA is already broad enough so that it does not need to be updated.**

**In any event, the Supreme Court has cautioned against using Congress's failure to amend a statute as evidence of legislative intent** . . . **Even if subsequent legislative history were an appropriate basis for statutory interpretation, neither Nickelodeon nor Solomon cite any legislative reports or other evidence shedding light on why Congress chose not to amend the definition of PII in the VPPA.**

Fifth, and finally, *Nickelodeon*, *Solomon*, and *Eichenberger* were concerned about the potential breadth of the VPPA and unfairness to video tape service providers

. . .

This concern is misplaced in two respects. **First, the "ordinary person" standard does turn on circumstances outside the video tape service provider's control and it does not provide clear guidance to a video tape service provider because it rests on what a hypothetical third party may do with the information it received, and it requires the video tape service provider to speculate on the abilities of an "ordinary person." How computer savvy is the "ordinary person?" What access to information does she have? How motivated is she to obtain that information? These are all questions that a video tape service provider must ask itself under the "ordinary person" standard, and they do not have obvious answers. For example, courts have come to different conclusions about whether an "ordinary person" could identify a video**

> **customer using a Facebook ID.** *Compare Solomon*, 2025 WL 1256641, at *10–11 *with Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023). In contrast, a test that asks whether the information aids in uniquely identifying the customer is objective and focuses on the nature of the information rather than on speculation about a third party.
>
> **Second, concerns about unfairness to video tape service providers are addressed by the VPPA's intent element. A video tape service provider may be held liable only if it "knowingly discloses" PII.** The word "knowingly" generally applies to all subsequently listed elements of a statute. *See Flores-Figueroa v. U.S.*, 556 U.S. 646, 650 (2009). So if a video tape service provider is not aware either that it is disclosing certain information or that the information it is disclosing can be used to identify an individual's video purchases, the provider did not violate the VPPA.

*See id*. at 10-15 (emphasis added).

4.       After thoroughly examining the flaws in the decisions of the Second, Third, and Ninth Circuits, the *Manza* court further explained that:

> **There is another reason why the "ordinary person" standard is not persuasive, which is that it creates a substantial loophole in the VPPA's coverage and allows easy evasion, at least as the standard is understood by Pesi.** Under Pesi's view, a video tape service provider is free to disclose a customer's video purchases to social media companies, data brokers, or anyone else, even when the provider knows that the third party will be able to easily identify the customer, so long as the provider uses a "code" that an "ordinary person" could not decipher.
>
> . . .
>
> **[Defendant's] view makes no sense. The purpose of the VPPA is to prevent video tape service providers from disclosing information that allows third parties to identify a customer's video purchases. That purpose is not served by allowing video tape service providers and third parties to knowingly evade the statute by disclosing a customer's identity with a number unknown to the "ordinary person" but known by the recipient. It is rarely the "ordinary person" who is seeking to invade a consumer's privacy.** More commonly, it is entities like those discussed in Manza's amended complaint. If the court were to adopt Pesi's view, it would suggest that even Social Security numbers are not PII because an "ordinary person" might not be able to use the number to identify an individual without significant effort. *See In re Vizio, Inc., Consumer Privacy Litigation*, 238 F. Supp. 3d 1204, 1224–25 (C.D. Cal. 2017).

*See id*. at 16-17 (emphasis added).

Dated: May 20, 2025                                          Respectfully submitted,

                                                             **HEDIN LLP**

                                                             */s/ Elliot O. Jackson*
                                                             Elliot O. Jackson
                                                             Florida Bar No. 1034536
                                                             1395 Brickell Ave., Suite 610
                                                             Miami, Florida 33131-3302
                                                             Telephone:   (305) 357-2107
                                                             Facsimile:   (305) 200-8801
                                                             ejackson@hedinllp.com