# EXHIBIT B

Case 1:25-cv-00007-RP    Document 34-2    Filed 09/23/25    Page 2 of 8
SHERHONDA GOLDEN, individually and on behalf of all others..., Slip Copy (2025)
2025 WL 2530689

2025 WL 2530689
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

SHERHONDA GOLDEN, individually and on
behalf of all others similarly situated, Plaintiff,
v.
NBCUNIVERSAL MEDIA, LLC, Defendant.

22 Civ. 9858 (PAE)
|
Filed 09/03/2025

OPINION & ORDER

Paul A. Engelmayer United States District Judge

 *1 Plaintiff Sherhonda Golden brings this putative class action against NBCUniversal Media, LLC ("NBCU"), claiming violations of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), and unjust enrichment. Golden claims that NBCU knowingly disclosed to Meta Platforms, Inc. ("Facebook")—the parent company of popular social media service Facebook—personally identifiable information ("PII") about Golden and other digital visitors to Today.com ("users"), and also information about their video consumption. This information, which Golden contends was disclosed without users' consent, was allegedly transmitted through the Facebook Pixel, a functional software code that collects users' data. The data consisted of (1) a sequence of characters, letters, and numbers which, when interpreted, would identify the user's video title and uniform resource locator ("URL" or web address), and (2) the user's Facebook identification number ("FID" or "Facebook ID"), a unique sequence of numbers linked to the user's Facebook profile.

This case has a complex history, as reflected in the fact that the complaint that NBCU now moves to dismiss is Golden's Fourth Amended Complaint. In November 2022, Golden filed her first complaint. Dkt. 1. In August 2023, the Court dismissed her First Amended Complaint, holding that Golden had not plausibly alleged her consumer status under the VPPA. Dkt. 34 ("2023 Decision"). But the Court granted Golden leave to amend to add factual allegations as to the operation of NBCU's mobile app and email newsletter. *See id.* at 26. Golden eventually filed the Third Amended Complaint, Dkt. 38 ("TAC"), [1] which the Court dismissed under Federal Rule of Civil Procedure 12(b)(6), finding that Golden's receipt of a non-video email newsletter did not make her a "consumer" under the VPPA, Dkt. 44 ("September 2024 Decision"). In dismissing, however, the Court noted that an appeal was pending in *Salazar v. National Basketball Association*, 685 F. Supp. 3d 232 (S.D.N.Y. 2023) ("*Salazar I*"), which this Court had cited in dismissing. *See* September 2024 Decision at 13 n.7. The Court stated that "[i]n the event the Second Circuit resolves *Salazar* in a manner inconsistent with this decision, Golden may ... seek an indicative ruling from this Court under Rule 62.1." *Id.*

[1] On September 7, 2023, Golden filed a Second Amended Complaint. Dkt. 35. In September 2023, after the parties conferred, Golden, with NBCU's consent, filed the TAC. Dkt. 38.

Golden appealed. While her appeal was pending, the Circuit issued *Salazar v. National Basketball Association*, 118 F.4th 533 (2d Cir. 2024) ("*Salazar II*"). It held, contrary to a premise of the September 2024 Decision, that a subscription to a digital newsletter linked to video content could establish "consumer" status under the VPPA. *Id.* at 544. This Court then issued an indicative ruling to the effect that, if remanded, it would deny NBCU's motion to dismiss Golden's VPPA claim on the basis of *Salazar II*. Dkt. 51 ("November 2024 Ruling"). Golden then moved to dismiss her appeal and remand to this Court, which the Second Circuit granted. *See* Dkt. 52.

 *2 Golden thereupon amended and filed the Fourth Amended Complaint, the operative complaint today. *See* Dkt. 56 ("FAC"). NBCU now moves anew to dismiss the FAC, on a ground not previously litigated. For the reasons that follow, the Court grants NBCU's motion.

I. Factual Background[2]

[2] The following facts are drawn primarily from the FAC. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). For the purpose of resolving the motion to dismiss under Rule 12(b)(6), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of

Case 1:25-cv-00007-RP     Document 34-2     Filed 09/23/25     Page 3 of 8
SHERHONDA GOLDEN, individually and on behalf of all others..., Slip Copy (2025)
2025 WL 2530689

plaintiff. See *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

The Court incorporates by reference the facts recounted in its earlier decisions. The following summary focuses on the factual allegations—including those added by the FAC—necessary to resolve the limited issue presented.

### A. Today.com's Website and Newsletter

NBCU owns and operates Today.com, a website accessible from a desktop computer or a mobile app. FAC ¶¶ 1, 4. Today.com offers both live and on-demand video content.

The website also allows users to "sign up" for a daily digital newsletter. *Id.* ¶ 42. Today.com directs users who wish to sign up for the newsletter to enter an email address and click "sign up." *Id.* As an illustration, the FAC presents the following screenshot that users, interested in signing up for a newsletter, would have seen on November 18, 2022:

Tabular or graphical material not displayable at this time.

*Id.* Newsletter recipients provide NBCU with their internet protocol ("IP") address, a unique number assigned to all information technology connected devices, which conveys to NBCU the device's city, zip code, and physical location. *Id.* ¶ 49.

Once a user signs up, a daily digital newsletter is delivered to the email address that the user provided to Today.com. The newsletters contain hyperlinks to "web-hosted audio visual content, exclusive content, and direct, prominently featured links to audio visual content on Today.com." *Id.* ¶ 53.

The FAC contains an excerpt of a screenshot of a "This is Today" daily digital newsletter from September 6, 2023 that would have been sent to a user's email address:

Tabular or graphical material not displayable at this time.

*Id.* ¶ 43. Today.com notifies users who have signed up for a daily newsletter that they can: (1) refer a friend to "subscribe here"; (2) manage their "subscriptions"; and (3) "unsubscribe" from their subscription to the newsletter. *Id.* ¶ 44.

Today.com permits users to sign up for multiple daily digital newsletters. These include ones entitled: This is TODAY; Start TODAY; Stuff We Love; TODAY On the Show; TODAY Food; TODAY Parents; Read with Jenna; and Concert Series Alerts, Show Updates, Special Events & Offers. *Id.* ¶ 45. NBCU offers these daily newsletters "with the goal of building an ongoing relationship with its subscribers ... by having direct access to and delivering content to each subscriber's inbox." *Id.* ¶ 46. These daily digital newspapers also "drive interactions with [NBCU's] own website and video content." *Id.*

### B. Facebook Pixel

**\*3** As of May 2025, Today.com's privacy policy states that it automatically collects certain information—including "content you view and duration." *Id.* ¶ 57. [3] But the policy does not disclose that Today.com shares that information with third parties, including, as relevant here, Facebook. *Id.* ¶ 59.

[3]   NBCU updated its privacy policy on December 16, 2022, approximately one month after Golden filed this lawsuit. *Id.* ¶ 57 n.2.

Today.com installed Facebook's tracking pixel (the "Pixel") to transmit certain information about users to Facebook, which Facebook then uses to target ads for particular users. *Id.* ¶ 61. The Pixel tracks users' actions on Facebook advertisers' websites and reports these to Facebook. *Id.* ¶ 78. The website advertiser informs Facebook which website events it wishes to track. *Id.* Facebook, in turn, generates corresponding pixel code for the advertiser to include in the code of its website. *Id.* Thus, when a digital newsletter recipient watches video content, Today.com transmits to Facebook a cookie [4] with the video content name, the URL of the prerecorded video that was viewed, and, for visitors with an active and logged in Facebook account, the viewer's Facebook ID. *Id.* ¶¶ 80–81. An FID is a unique and persistent identifier Facebook assigns to each Facebook user. *Id.* ¶ 81. Any "ordinary user" can use an FID to look up a Facebook profile, "thereby identifying the person who watched the video and revealing any public details displayed on that profile," such as photos, posts, location, occupation, spouse, and education. *Id.* ¶ 95.

[4]   A cookie is "a small file or part of a file stored on a World Wide Web user's computer, created and subsequently read by a website server, and containing personal information (such as a user identification code, customized preferences, or a record of pages visited)." *Cookie*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/cookie.

When installing the Facebook Pixel, "[d]evelopers and marketers can *optionally choose* to send additional information about the visit through Custom Data events." *Id.* ¶ 83 (emphasis in original). The FAC alleges that NBCU programmed the Pixel to transmit, to Facebook, users' PII and their video viewing history. *Id.* (NBCU declined to program website or app so as not to transmit user information); *id.* ¶ 81 (NBCU installed Pixel so that Facebook received video content name, URL, and user's FID).

As a result of the Pixel installation, when users have clicked on hyperlinks on the daily digital newsletter to view video content on Today.com, the Pixel has transmitted to Facebook "the content name of the URL, which identifies: (1) that there was a video on the page; (2) the video was 'watched;' (3) an identifier for the video content; and (4) the subscriber's FID." *Id.* ¶ 106. As an illustration, the FAC reproduces this screenshot of the computer code transmission sent to Facebook via the Pixel:

Tabular or graphical material not displayable at this time.

*Id.* ¶ 106. The screenshot depicts a video URL path (*e.g.*, the line of code after ":path:" that contains the text "2Fvideo%2Fthe-line-to-pay-respects-to-queen-elizabeth-wraps-around-london"), which "reveals the video name [and] URL." *Id.* It also depicts a cookie value (*e.g.*, the line of code after "cookie:" that contains the text "c_user=100003190670927") that reveals "the viewer's FID." [5] *Id.*

[5]  The phrase "c_user=" is followed by a string of numbers comprising the user's FID. *Id.* ¶ 90.

 *4  The Pixel transmits users' information without their consent or knowledge. *Id.* ¶ 103. NBCU benefits financially from providing this information to Facebook. *Id.* ¶ 127.

### C. Golden's Experience

In 2022, Golden signed up to receive a Today.com newsletter. *Id.* ¶ 114. She has since received emails and other communications from Today.com. *Id.* Golden has accessed audio-visual content via hyperlinks provided in the daily digital newsletters. *Id.* ¶ 115. She has also accessed Today.com's content through its website and mobile app. *Id.* ¶ 118.

Golden has had a Facebook account since approximately 2012. *Id.* ¶ 116. During the period relevant here, she has used her Today.com subscription to view videos through Today.com or its mobile app while concurrently logged into her Facebook account. *Id.* ¶¶ 122–23. Golden never agreed, authorized, or otherwise consented to NBCU's disclosure of her personal video viewing information to Facebook, and has not been given written notice stating that it is NBCU's practice to do so. *Id.* ¶ 124.

### II. Procedural History

On November 18, 2022, Golden filed an initial Complaint. Dkt. 1. On January 27, 2023, NBCU moved to dismiss under Rule 12(b)(6). Dkt. 8. On February 17, 2023, after the Court issued an amend-or-oppose order, Dkt. 13, Golden filed the First Amended Complaint, on behalf of a putative class, bringing VPPA and unjust enrichment claims, Dkt. 14. On March 10, 2023, NBCU moved to dismiss. Dkt, 15. On August 23, 2023, the Court issued the 2023 Decision dismissing the First Amended Complaint, finding that it had not pled that Golden was a "subscriber" within the meaning of the VPPA, without prejudice to Golden's right to amend to add allegations regarding the operation of Today.com's mobile app and email newsletter, which might buttress its claim that Golden qualified as a VPPA subscriber, Dkt. 34.

On September 14, 2023, Golden filed the Third Amended Complaint ("TAC"). Dkt. 38. On September 21, 2023, NBCU moved to dismiss the TAC under Rule 12(b)(6). Dkt. 40. On September 11, 2024, the Court granted NBCU's motion to dismiss. Dkt. 44.

On October 4, 2024, Golden appealed. *See* Dkt. 46. While her appeal was pending, the Second Circuit decided *Salazar II*, holding that newsletter subscribers can be VPPA "consumers." 118 F.4th at 550–53. On November 27, 2024, this Court issued an indicative ruling that, were the case remanded, it would deny NBCU's motion to dismiss. Dkt. 51, On January 3, 2025, the Second Circuit dismissed Golden's appeal and remanded. *See* Dkt. 52.

On May 9, 2025, Golden, with the Court's permission, *see* Dkt. 55, amended and filed the FAC, the operative complaint, Dkt. 56. On June 5, 2025, NBCU moved to dismiss the FAC, Dkt. 57, on a different ground—that the FAC does not adequately allege that NBCU disclosed Golden's PII under the VPPA—and filed a memorandum of law, Dkt. 58 ("Def. Br."), and declaration, Dkt. 59, in support. On June 27, 2025, Golden opposed. Dkt. 62 ("Pl. Opp."). On July 17, 2025, NBCU replied. Dkt. 65 ("Def. Reply"). On August 1 and 22, 2025, Golden filed notices of supplemental authority. Dkts.

66, 68. On August 7 and 29, 2025, NBCU replied. Dkts. 67, 69.

### III. Applicable Legal Standards

**\*5** To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." Twombly, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." Koch, 699 F.3d at 145; see also A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."). That tenet, however, does not apply to legal conclusions. See Iqbal, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

### IV. Discussion

On NBCU's earlier motions to dismiss, the decisive issue was whether Golden had plausibly pled that she was "a subscriber of goods and services," and thus a "consumer" within the VPPA's meaning. In light of *Salazar II*, the Court held (and NBCU no longer appears to dispute) that Golden's TAC adequately so pled. *See* November 2024 Ruling at 2–3. The FAC, the operative pleading today, reprises the allegations that Golden subscribed to Today.com's digital newsletters, which provided hyperlinks to video content. *See, e.g.*, FAC ¶¶ 121–23. Under *Salazar II*, that subscription makes Golden a consumer. *See* 118 F.4th at 549–50.

NBCU's current motion to dismiss presses a different point. It argues that the FAC does not adequately allege that NBCU disclosed Golden's PII within the meaning of the VPPA.

The FAC undisputedly alleges that NBCU, through the Facebook Pixel, transmitted Golden's URL, FID, and video-watching history. *See, e.g.*, FAC ¶¶ 81, 100. Its basis for claiming that NBCU disclosed Golden's PII is that an FID uniquely identifies a Facebook user. *See id.* ¶¶ 12, 119. In moving to dismiss, NBCU, relying on the Second Circuit's recent decision construing the VPPA in *Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025), counters that the FAC does not allege an actionable disclosure of PII. Def. Br. at 1–2, 7–16. NBCU is correct.

#### A. VPPA Claim

The VPPA was enacted in 1988 after a newspaper profile disclosed the video rental history of Supreme Court nominee Robert Bork. *See Salazar II*, 118 F.4th 544–45 (citing S. Rep. No. 100-599, at 5–6 (1988)). Seeking to "preserve personal privacy with respect to the rental, purchase, or delivery of video tapes or similar audio visual materials," the VPPA creates a private right of action for consumers to sue video tape service providers who disclose personally identifiable information about the consumers' video-watching habits. *Id.* at 545 (quoting S. 2361, 100th Cong. (1988)). Under the Act, "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person[.]" 18 U.S.C. § 2710(b)(1). As further defined by the Act,

> (1) "consumer" means any renter, purchaser, or subscriber of goods or services from a video tape service provider; ...
>
> (3) "personally identifiable information" includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider; and
>
> (4) "video tape service provider" means any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials[.]

**\*6** *Id.* § 2710(a). Salient here, PII, under the VPPA, has three distinct elements: (1) the consumer's identity, (2) the video material's identity, and (3) the connection between them. *Id.* It "constitutes more than just information that identifies an individual, but also information that can be *used* to identify an individual." *Solomon*, 136 F.4th at 48 (collecting cases) (emphasis in original).

The courts of appeals have diverged in interpreting PII under the statute. The First Circuit has adopted a "reasonable foreseeability" standard. It has held that PII is "not limited to

Case 1:25-cv-00007-RP Document 34-2 Filed 09/23/25 Page 6 of 8
SHERHONDA GOLDEN, individually and on behalf of all others..., Slip Copy (2025)
2025 WL 2530689

information that explicitly names a person," but also includes information disclosed to a third party that is "reasonably and foreseeably likely to reveal which ... videos [the plaintiff] has obtained." *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016). In contrast, the Third and Ninth Circuits—and, now, the Second, in *Solomon*—have adopted the "ordinary person" standard. It limits personally identifiable information to "the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 267 (3d Cir. 2016) (adopting ordinary person standard); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (same); *Solomon*, 136 F.4th at 51–52 (same).

In adopting the ordinary person standard in *Solomon*, the Second Circuit rejected a materially identical VPPA claim to the one here—that a Facebook Pixel had disclosed a video user's FID and video URLs to Facebook. *Id.* at 54–55. The Circuit held that PII "encompasses information that would allow an ordinary person to identify a consumer's video-watching habits, *but not information that only a sophisticated technology company could use to do so*." *Id.* at 52 (emphasis added). Therefore, it held, to survive a motion to dismiss, a complaint must "plausibly allege[ ] that [the defendant's] disclosure of [information] 'would, with little or no extra effort, permit an ordinary recipient to identify [the plaintiff's] video-watching habits.' " *Id.* at 54 (quoting *In re Nickelodeon*, 827 F.3d at 284). In *Solomon*, the complaint reproduced an exemplar screenshot with several lines of computer code, interspersed with characters, numbers, and letters, which it contended represented an actionable disclosure of PII. *Id.* The Circuit rejected that claim. It found "implausible that an ordinary person would look at [that code] ... and understand it" to reveal a video title or the plaintiff's FID, as opposed to "just one phrase embedded in many other lines of code." *Id.* And, the Circuit noted, the complaint "lack[ed] any details about how an ordinary person might access the information on the Pixel's PageView," or "any details about *how* an ordinary person would use an FID to identify [plaintiff]." *Id.* (emphasis in original); *see In re Nickelodeon*, 827 F.3d at 283 ("To an average person, an IP address or a digital code in a cookie file would likely be of little help in trying to identify an actual person."). In short, because the alleged disclosure could not be appreciated—decoded to reveal the actual identity of the user, and his or her video selections—by an ordinary person but only by a technology company such as Facebook, it did not amount to PII. *Solomon*, 136 F.4th at 55.

**\*7** The Circuit reiterated the point—and reached the same conclusion—just over two months ago, in *Hughes v. National Football League*, No. 24-2656, 2025 WL 1720295 (2d Cir. June 20, 2025) (summary order), where it again affirmed the dismissal of a VPPA claim. The plaintiff there, as in *Solomon*, had alleged that the defendant's website transmitted FIDs and video URLs to Facebook through the Pixel. *Id.* at *2*. Rejecting that claim, the Circuit stated that "*Solomon* [had] effectively shut the door for Pixel-based VPPA claims." *Id.* And it denied leave to amend, explaining that the result would be the same "regardless of how the code is later manipulated or used by Facebook," notwithstanding "the ubiquity of Facebook accounts," or the availability of artificial intelligence tools, like ChatGPT, that might facilitate identification. *Id.* at *3. In other words, the Circuit held, the dispositive inquiry is whether the disclosure itself, as transmitted, would be intelligible to an ordinary person.

A month later, Judge Rochon reached the same outcome, applying the recent Circuit authority, The plaintiffs in *Nixon v. Pond5, Inc.* had alleged that the defendant's website disclosed FIDs and video titles through the Pixel, citing code transmission screenshots in their pleadings. No. 24 Civ. 5823, 2025 WL 2030303, at *4–5 (S.D.N.Y. July 21, 2025). Following *Solomon* and *Hughes*, Judge Rochon dismissed the complaint without leave to amend. *Id.* at *6. She reasoned that because "an ordinary person would not plausibly be able to identify Plaintiffs' video-watching habits as a result of the Pixel transmissions," the complaint had not plausibly alleged a disclosure of PII in violation of the VPPA. *Id.* at *5.

This emergent line of authority disposes of the FAC here as well. Like the complaints in *Solomon, Hughes*, and *Nixon*, the FAC alleges that the defendant disclosed users' video-viewing activity to Facebook via the Pixel, specifically by transmitting URLs, FIDs, and video-watching history without their knowledge or consent. FAC ¶¶ 80–81, 106. It includes a screenshot of computer code showing the alleged transmissions to Facebook. *Id.* ¶ 106. It alleges that because a person with the right tools can use an FID to identify a specific Facebook user, the data constitutes PII. *Id.* ¶¶ 81, 95.

Those allegations do not materially differ from those in *Solomon, Hughes*, and *Nixon*. Indeed, the FAC tacitly underscores its inability to satisfy the Second Circuit's ordinary person standard, in its description of the Pixel's disclosures as "technical," *id.* ¶ 33, and embedded in HTTP transmissions inaccessible to ordinary persons, *id.* ¶ 106; and in its reproduction of the screenshot consisting of several

jumbled lines of code separated by characters, numbers, and letters unintelligible to ordinary persons, *id.* [6] The FAC does not explain how an ordinary person, "with little or no extra effort," could discern that these strings contained Golden's FID or the titles of videos she had watched. *Solomon*, 136 F.4th at 54 (quoting *In re Nickelodeon*, 827 F.3d at 284). At most, the FAC pleads that *Facebook*—through its proprietary systems—could decode these technical strings. But disclosures comprehensible only to Facebook or other sophisticated actors are not PII. *See Hughes*, 2025 WL 1720295, at *2–3; *Solomon*, 136 F.4th at 54–55. That forecloses Golden's claim.

[6] The representative cookie data that includes the user's FID is reproduced, in full, below:
sb=5HftYmuKvY9744LJOIj0fWM8; datr=T3_tYn4t9Ihm5ShZA4tHvGlR;c_user=100003190670927 dpr=1.5; xs=40%3ADRvBU-LlwPna1g %3A2%3A1662066646%3A-1%3A2997%3A %3AAcXJvfy_fGr6B_A1g1_dAqvC9RXRM8opsbHAJttBkU; fr=0IQFkgt53TAn2Iz3s.AWX6muyZgZBx8fB6ciyIcmWGTPM.BjI00M.U8.AAA.0.0.BjI00M.AWXqh6rFsPI; *Id.*

The Court accordingly dismisses the VPPA claim. [7] *See, e.g.*, *Hughes*, 2025 WL 1720295, at *3 (affirming dismissal of Pixel-based VPPA claim and declining to remand); *Solomon*, 136 F.4th at 54–55 (affirming dismissal of Pixel-based VPPA claim and denial of leave to amend); *Nixon*, 2025 WL 2030303, at *5–6 (dismissing Pixel-based VPPA claim and denying leave to amend); *see also In re Nickelodeon*, 827 F.3d at 283, 86–90 (affirming dismissal of VPPA claim involving "static digital identifiers," such as "IP address[es] or a digital code in a cookie file"); *Eichenberger*, 876 F.3d at 985–86 (similar, as to Roku device serial numbers).

[7] Golden has not sought leave to amend or proposed any amendments to the FAC. The dismissal is thus without leave to further amend. *See Gregory v. ProNAi Therapeutics Inc.*, 757 F. App'x 35, 39 (2d Cir. 2018) (summary order) (affirming denial of leave to amend where plaintiffs sought leave to amend only briefly at the end of an opposition to the motion to dismiss and "included no proposed amendments"); *Hughes*, 2025 WL 1720295, at *3 (despite plaintiff's requests to add greater detail about his Pixel-based claims, explaining that there was "no basis for remanding because amendment would likely be futile").

### B. Unjust Enrichment

**\*8** The FAC's unjust enrichment claim is based on the same allegations as its VPPA claim. *See, e.g.*, FAC ¶¶ 150–53. NBCU moves to dismiss it as duplicative, *see* Def. Br. at 16–17, and Golden does not oppose, *see* Def. Reply at 10 ("Plaintiff makes no effort to rebut this argument [and] thus concedes that her unjust enrichment claim should be dismissed as well." (citing *Ventillo v. Falco*, No. 19 Civ. 3664, 2020 WL 7496294, at *12 (S.D.N.Y. Dec. 18, 2020))). NBCU's motion is meritorious.

To allege unjust enrichment under New York law, a plaintiff must plead that the defendant benefitted at the plaintiff's expense, and that equity and good conscience require restitution. *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). Unjust enrichment "is not a catchall cause of action to be used when others fail," and is not available where "it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012); *see Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010) (summary order) ("Unjust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists."). "[E]ven pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action," *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017); *see Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 466 (S.D.N.Y. 2019) (same); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015) (same).

Here, Golden does not distinguish her unjust enrichment claim from her VPPA claim. The FAC states that the basis of the unjust enrichment claim is that NBCU wrongfully shared users' PII without their consent. FAC ¶¶ 150–53. That claim effectively replicated the FAC's VPPA allegations, and Golden, by not responding to NBCU's motion to dismiss, has waived any opposition. *See Ventillo*, 2020 WL 7496294, at *12 ("As Plaintiff did not respond to Defendants on this point, he effectively conceded the argument by his failure to respond." (cleaned up)).

The Court accordingly dismisses the unjust enrichment claim as duplicative of the FAC's VPPA claim. *See, e.g.*, *Corsello*, 18 N.Y.3d at 791 (dismissing unjust enrichment claim because, to the extent that the VPPA claim "succeed[s], the unjust enrichment claim is duplicative," and if the

VPPA claim is "defective, an unjust enrichment claim cannot remedy the defects"); *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 168 (S.D.N.Y. 2023) (same); *Gardener v. MeTV*, No. 22 Civ. 5963, 2023 WL 4365901, at *5 (N.D. Ill. July 6, 2023) (same); *see also Lin v. Canada Goose US, Inc.*, No. 21 Civ. 7614, 2022 WL 16926312, at *6 (S.D.N.Y. Nov. 14, 2022) (dismissing unjust enrichment claim as duplicative of statutory claim); *Ohanian v. Apple Inc.*, No. 20 Civ. 5162, 2022 WL 826415, at *4 (S.D.N.Y. Mar. 18, 2022) (same).

**CONCLUSION**

For the foregoing reasons, the Court grants NBCU's motion to dismiss the FAC with prejudice. The Clerk of Court is respectfully directed to terminate the motion pending at Docket 57, and to close this case.

SO ORDERED.

**All Citations**

Slip Copy, 2025 WL 2530689

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.