IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KAREN COCHENOUR, § | | |
| § | | |
| Plaintiff, § | | |
| § | 1:25-CV-00007-RP | |
| v. § | | |
| § | | |
| 360Training.com, INC., d/b/a MORTGAGE § | | |
| EDUCATORS and COMPLIANCE, INC., § | | |
| Defendant. § | | |

## PLAINTIFF'S FOURTH NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiff Karen Cochenour, by and through undersigned counsel, submits this Notice of Supplemental Authority in response to Defendant's Notices of Supplemental Authority. *See* ECF No. 34–35. None of the decisions cited by Defendant are factually relevant or controlling on this Court's assessment of the pending motion to dismiss. Plaintiff also writes to notify this Court of four decisions that are more persuasive and instructive on the questions presently before this Court. Those decisions are: *Cole v. LinkedIn Corp.*, No. 25-CV-01097-PCP, 2025 WL 2963221 (N.D. Cal. Oct. 20, 2025); *Goodman v. Hillsdale College*, No. 1:25-cv-417, 2025 WL 2941542 (W.D. Mich. Oct. 17, 2025); *Nguyen v. Elsevier, Inc.*, No. 25-cv-00825-NC, 2025 WL 2901059 (N.D. Cal. Oct. 7, 2025); and *Haines v. Cengage Learning, Inc.*, No. 1:24-cv-710, 2025 WL 2045644 (S.D. Ohio July 22, 2025). Plaintiff states as follows:

1. First, the *Cole* decision is directly instructive because it (1) involves similar Meta Pixel allegations, (2) evaluated whether a complaint adequately alleged LinkedIn was a "video tape service provider" under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, and (3) utilized the ordinary person standard (which Defendant relies upon) to conclude that the

complaint adequately alleged the disclosure of personally identifiable information. Regarding the latter two points, the court in *Cole* rejected the very arguments that Defendant now raises by explaining:

    a.    The complaint contains no discussion of LinkedIn's services other than the video content on LinkedIn Learning. The complaint thus casts LinkedIn Learning as substantially—indeed, exclusively—involved in conveying audiovisual content and as "significantly tailored" to that purpose. LinkedIn's argument to the contrary "raises factual questions" about the nature and focus of its services that are "premature at the motion to dismiss stage." *See* 2025 WL 2963221, at *3.

    b.    LinkedIn also argues that any information it disclosed about Cole's viewing history was paired with voluminous other information and that an ordinary person would therefore have been unable to sift through the morass of data to find the pieces that identified Cole and her video-watching behavior. Again, LinkedIn's argument relies on facts not alleged in the complaint, which does not discuss the other data disclosed alongside Cole's personally identifiable information. This argument thus raises factual disputes better resolved on a motion for summary judgment. And in any case, it is not clear that the manner in which a defendant discloses personally identifiable information is relevant. As the Ninth Circuit explained in *Eichenberger*, the VPPA focuses on the content of the disclosed information, i.e., whether an ordinary person who knows the information could readily identify an individual and her video-watching behavior. *See* 876 F.3d at 985; *see also* 18 U.S.C. § 2710(a)(3). Nothing in the statute suggests that a defendant can escape liability by disclosing such information in a format that makes it less likely that an ordinary person receiving the information would actually use it to identify an individual's video-watching behavior. . . In sum, Cole has plausibly alleged that LinkedIn disclosed her personally identifiable information by transmitting the URLs of videos Cole watched on LinkedIn Learning "along with" her Facebook ID, which together would "readily permit an ordinary person to identify [Cole]'s video-watching behavior." *See id.* at *6.

Plaintiff could not have cited *Cole* previously because the decision was issued on October 20, 2025, which was after the briefing had closed. A copy of the *Cole* decision is attached hereto as **Exhibit A**.

2

2.  Second, the *Goodman* decision is directly instructive because it (1) involves similar Meta Pixel allegations, (2) evaluated whether a complaint adequately alleged that a non-profit college was a "video tape service provider" under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, and (3) rejected ordinary person standard (which Plaintiff argues is the proper court of action by this Court) to conclude that the complaint adequately alleged the disclosure of personally identifiable information. Regarding the latter two points, the court in *Cole* rejected the very arguments that Defendant now raises by explaining:

> a.  The College also suggests a different reason why it is not engaged in the business of video delivery: its primary purpose is in-person education, and **the video lectures are merely a side project**. **But nothing in the VPPA limits liability to entities that *primarily* distribute videos**. Rather, "'video tape service provider' is defined broadly to include even those businesses that dabble in video rentals." *NBA*, 118 F.4th at 549; *see also* S. Rep. No. 100-599, at 12 (VPPA Senate Committee Report) (recognizing that the VPPA would apply to "a department store that sells video tapes" along with other products); *Salazar v. Paramount Glob.*, 133 F.4th 642, 655 (6th Cir. 2025) (Bloomekatz, J., concurring and dissenting in part) ("[A] 'video tape service provider' need not be exclusively, or even primarily, engaged in the 'rental, sale, or delivery of prerecorded cassette tapes or similar audio visual materials.'"); *Cappello v. Walmart Inc.*, No. 18-CV-06678-RS, 2019 WL 11687705, at *1–2 (N.D. Cal. Apr. 5, 2019) (plaintiffs stated VPPA claim against Walmart because it sells DVDs in addition to other products).
>
> **The College also contends that its online lectures do not put it in the business of video delivery because they are essentially a form of marketing for its other products**. Some courts have held that defendants are not video tape service providers because the videos they deliver are purely for marketing purposes. *See Carroll v. Gen. Mills, Inc.*, No. CV 23-1746 DSF (MRWX), 2023 WL 4361093, at *3 (C.D. Cal. June 26, 2023) (General Mills was not engaged in the business of delivering videos because the videos on its website were only intended to advertise its food products and increase its brand presence); *Cantu v. Tractor Supply Co.*, No. 23-CV-3027, 2024 WL 1601257, at *4 (C.D. Cal. Mar. 21, 2024) (tractor supply company that posted "inspirational" videos to raise "brand awareness" was not a video tape service provider); *Hernandez v. Container Store, Inc.*, No. 23-CV-5067, 2024 WL 72657, at *2 (C.D. Cal. Jan. 3,

3

2024) (hosting advertisements for own products does not make defendant a video tape service provider). But these cases do not imply that a defendant can never be a video tape service provider if its videos support its marketing efforts. Rather, they suggest that a defendant's business is usually not significantly tailored to the purpose of video delivery when the only videos they make are advertisements. And **while the College's lectures function to some degree as advertisements, they are not *just* advertisements**. The lectures have an educational purpose entirely independent of their marketing function. **This purpose is enough to establish that the College's work is significantly tailored to the production and delivery of videos.** *Cf. Shapiro v. Peacock TV*, No. 23-CV-6345 (KMK), 2025 WL 968519, at *6 (S.D.N.Y. Mar. 31, 2025) (VPPA applied where plaintiffs watched online trailer that served as advertisement for defendant's television shows).

**In sum, Plaintiffs have sufficiently alleged that the College is engaged in the business of delivering online videos and is therefore a "video tape service provider" under the VPPA.** *See* 2025 WL 2941542, at *5 (emphasis added).

b. **Moreover, the Court agrees with the persuasive reasoning of the district court in *Manza*, which rejected application of the ordinary person standard. 784 F. Supp. 3d at 1116–23.** As that court observed, "[t]he courts that have adopted the 'ordinary person' standard have identified little textual basis for the limitation they impose." *Id.* at 1119. Courts have justified the ordinary person standard based on the fact that the VPPA only prohibits "knowing[ ] disclos[ure]," which frames "disclosure from the perspective of the disclosing party." *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). But "[t]he intent element places a limitation on when a video tape service provider can be held liable for disclosing PII; the element does not explain what PII is." *Manza*, 784 F. Supp. 3d at 1119. Moreover, if (as here) the defendant knows that the recipient of the disclosure can readily use the information to determine a user's identity, the knowledge requirement is satisfied regardless of whether the ordinary person standard is met. **The VPPA's "purpose is not served by allowing video tape service providers and third parties to knowingly evade the statute by disclosing a customer's identity with a number unknown to the 'ordinary person' but known by the recipient."** *Id.* at 1122. Thus, "[c]ourts across the country...have indicated that providing a third party with PII that is legible to that specific third party is sufficient to state a claim under the VPPA." *Aldana v. GameStop, Inc.*, No. 22-CV-7063-LTS, 2024 WL 708589, at *8 (S.D.N.Y. Feb. 21, 2024). **Furthermore, even if the Court adopted the "ordinary**

> **person" standard, the information disclosed by the College would qualify as PII**. *See id.* at *8 (emphasis added).

Plaintiff could not have cited *Goodman* previously because the decision was issued on October 17, 2025, which was after the briefing had closed. A copy of the *Goodman* decision is attached hereto as **Exhibit B**.

3.  Third, the *Nguyen* decision is directly instructive because it (1) involves similar Meta Pixel allegations and (2) utilized the ordinary person standard (which Defendant relies upon) to conclude that the complaint adequately alleged the disclosure of personally identifiable information. Regarding the latter point, the court in *Nguyen* rejected the very arguments that Defendant now raises by explaining:

> The cases cited by Defendants analyze whether, and when, the disclosure of a Facebook ID through the Meta Pixel constitutes the disclosure of PII. This is because Facebook IDs—strings of numbers—beg the question of whether an ordinary person can discern personal and identifying information about a consumer from these IDs, whether by accessing their Facebook page that contains such information or otherwise. *See Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023); *Sellers v. Bleacher Report, Inc.*, No. 23-cv-00368-SI, 2023 WL 4850180, at *4–5 (N.D. Cal. July 28, 2023). **But Plaintiffs do not allege that the Meta Pixel disclosed Nguyen's Facebook ID to Meta. Rather, Plaintiffs allege that each time Nguyen viewed a video on Osmosis, Elsevier disclosed to Meta in a single transmission her full name, email address, and the title of the video she viewed. FAC ¶ 38. When combined with information disclosing a consumer's video-watching behavior, names and email addresses can identify a person and therefore qualify as PII.** *See Eichenberger*, 876 F.3d at 986; *Ghanaat*, 689 F. Supp. 3d at 720; *Lee*, 773 F. Supp. 3d at 772–73. As such, it is not clear why, as Defendants argue, Plaintiffs need to allege any information concerning Nguyen's Facebook ID or profile. *See* 2025 WL 2963221, at *3 (emphasis added).

Here, the Complaint specifically alleges similar transmission-based disclosures as in *Nguyen*. Plaintiff could not have cited *Nguyen* previously because the decision was issued on October 7,

2025, which was after the briefing had closed. A copy of the *Nguyen* decision is attached hereto as **Exhibit C**.

4. Fourth, in *Haines*, the district court adopted the report and recommendation and overruled Defendant's objections that relied on the Second Circuit's construction of the ordinary person test. Specifically, the district court rejected *Solomon* as "an unbinding decision and [that] sits in stark contrast to the vast majority of federal district and circuit courts that have held the opposite about a Facebook ID." *See* 2025 WL 2045644, at *3. Plaintiff could not have cited *Haines* previously because the decision was issued on July 22, 2025, which was after the briefing had closed. A copy of the *Haines* decision is attached hereto as **Exhibit D**.

5. Defendant's Notice concerning *Banks v. CoStar Realty Information, Inc.* should be rejected because it is completely inapposite. *See* ECF No. 35. Defendant conveniently omits that the court in *Banks* concluded that the defendant was not a "video tape service provider" because the defendant was "in the business of connecting property owners and renters, not the delivery of prerecorded video materials similar to video cassette tapes." *See* 2025 WL 2959228, at * 4. Here, Plaintiff's complaint alleges no non-video aspects to Defendant's business model. Therefore, the *Banks* holding is inapplicable to the facts before this Court.

6. Next, this Court should reject the three decisions cited in Defendant's earlier Notice (ECF No. 34), which reference rulings from the Southern District of New York. These decisions should be rejected because they are non-binding and misinterpret the phrase "personally identifiable information" as defined by the VPPA. Plaintiff further redirects this Court to her earlier notice (ECF No. 21) regarding *Manza v. Pesi, Inc.*, 784 F. Supp. 3d 1110, 1114 (W.D. Wis. 2025)—a well-reasoned decision rejecting the Second Circuit's interpretation. Moreover, the three

decisions cited by Defendant should be rejected for another reason: The ordinary person standard is now potentially subject to review by the Supreme Court of the United States because the appellant from *Solomon v. Flipps Media, Inc.* has filed a petition for writ of certiorari challenging *inter alia* the Second Circuit's conflict with the First Circuit. A true and accurate copy of the Docketing Notice and Petition for Writ of Certiorari are attached as **Composite Exhibit E**. Accordingly, principles of judicial restraint counsel against rendering a decision adopting the ordinary person standard as Defendant suggests (though Plaintiff's complaint survives that standard). *See e.g., Babineaux v. McBroom Rig Bldg. Serv., Inc.*, 811 F.2d 852, 853 (5th Cir. 1987) (withholding mandate in light of a Supreme Court's review).

Dated: October 30, 2025

Respectfully submitted,

**HEDIN LLP**

*/s/ Elliot O. Jackson*
Elliot O. Jackson
Florida Bar No. 1034536
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone:  (305) 357-2107
Facsimile:  (305) 200-8801
ejackson@hedinllp.com