IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KAREN COCHENOUR, *individually and on behalf of others similarly situated*, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:25-CV-7-RP |
| 360TRAINING.COM , INC., D/B/A MORTGAGE EDUCATORS AND COMPLIANCE, INC., | § § § § § | |
| Defendant. | § § | |

## ORDER

Before the Court is Defendant 360Training.com, Inc.'s ("Defendant") Motion to Dismiss. (Dkt. 10). Plaintiff Karen Cochenour ("Plaintiff") responded in opposition, (Dkt. 12), and Defendant replied (Dkt. 13). Both parties have submitted multiple notices of supplemental authority and responses to those notices. (Dkts. 14, 16, 17, 18, 21, 32, 33, 34, 35, and 36). Having considered the parties' submissions, the record, and the applicable law, the Court will deny the motion.

## I. BACKGROUND

Plaintiff brings this putative class action to challenge Defendant's alleged collection and disclosure of customers', including Plaintiff's, private information. Specifically, Plaintiff alleges that Defendant collected and disclosed customers' identities and the titles of videos that those customers purchased on Defendant's website. (Compl., Dkt. 1, at 2).

Defendant is an online training provider for mortgage loan originators ("MLO"). Defendant produces mortgage training materials, including videos, and makes those materials available for purchase through its website. (Mot., Dkt. 10, at 8; Compl., Dkt. 1, at 5–6). The training videos that Defendant produces include state-approved continuing education courses designed to meet MLO

1

licensure requirements, including those for Pennsylvania. (Mot., Dkt. 10, at 11). Plaintiff is a licensed MLO in Pennsylvania. (*Id.*, at 8). From 2023 through 2024, Plaintiff purchased four MLO continuing education course videos from Defendant, who shipped them to her. (*Id.*, at 11; Compl., Dkt. 1, at 4).

Plaintiff alleges that Defendant installed a piece of code called "Meta Pixel" on its website. (Compl., Dkt. 1, at 19). Meta Pixel was developed by Meta, formerly known as Facebook, to allow companies "to monitor and track the actions taken by visitors to their websites and to report them back to Meta." (*Id.*, at 15). Plaintiff alleges that Meta Pixel automatically captures both (1) the Facebook ID ("FID") of customers who purchase videos through Defendant's website and (2) the title and URL of the videos purchased by those customers, and that Meta Pixel then automatically reports that information to Meta. (*Id.*, at 19). Plaintiff alleges that Meta uses the reported information for targeted advertising and that Defendant installed Meta Pixel to "take advantage of the targeted advertising and other informational and analytical services offered by Meta." (*Id.*, at 18, 20).

Plaintiff alleges that, because she purchased videos from Defendant's website and had an active Facebook profile, Meta Pixel captured her FID and the titles and URLs of the videos she purchased and reported that information to Meta. (*Id.*, at 4–5). She further alleges that her consent for this disclosure was never sought nor given. (*Id.*). Plaintiff makes these allegations both on her own behalf and on behalf of "a class defined as all persons in the United States who, during the two years preceding the filing of this action, purchased prerecorded video material from Defendant's . . . Website while maintaining an account with Meta Platforms, Inc. f/k/a Facebook, Inc." (*Id.*, at 22).

Based on these allegations, Plaintiff asserts one cause of action, both on her behalf and on behalf of the putative class: a violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C.

§ 2710. (Compl., Dkt. 1, at 24-26). Defendant filed a motion to dismiss this claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Mot., Dkt. 10).

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the U.S. Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for

3

entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

Defendant argues that Plaintiff both lacks standing and has failed to state a claim for which relief can be granted. The Court first considers Defendant's arguments on standing before turning to the question of whether Plaintiff has stated a claim for which relief can be granted.

### A. Standing

Article III of the Constitution limits the jurisdiction of federal courts to "cases and controversies." U.S. Const. art. 3, § 2. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To demonstrate standing, a plaintiff must show: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Defendant's motion to dismiss pursuant to Rule 12(b)(1) focuses on the first element of standing: the requirement that a plaintiff show she has suffered a concrete injury in fact. "[C]ertain harms readily qualify as concrete injuries under Article III." *TransUnion*, 594 U.S. at 425. "The most obvious are traditional tangible harms, such as physical harms and monetary harms." *Id.* Various intangible harms can also satisfy this requirement, but only if they have a "'close relationship' to harms 'traditionally' recognized as providing a basis for lawsuits in American courts." *Id.* (quoting *Spokeo*, 578 U.S. at 340). "Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.*

Defendant makes two main arguments about Plaintiff's alleged injury. First, Defendant argues that Plaintiff has not alleged that private information was disclosed—because the fact of Plaintiff's MLO licensure, and therefore the fact that she consumes continuing education materials required by that licensure, are public. Anyone who knows that Plaintiff has maintained her license—information which is publicly available—knows, by implication, that she has consumed continuing education materials. As a result, Defendant argues, disclosing the titles of the videos that Plaintiff

5

purchased from Defendant is not revealing private information, and Plaintiff has not alleged any injury within the meaning of the VPPA. (Mot., Dkt. 10, at 10-14). Second, Defendant argues that even if Plaintiff has alleged that her private information was captured and shared by Meta Pixel, her alleged harm is intangible and does not have a sufficiently "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." (*Id.*, at 14); *see TransUnion*, 594 U.S. at 425 (internal quotation marks omitted). In part, Defendant argues here that Plaintiff must—and has not—alleged facts that parallel each element of a Texas-common-law claim for publication of private facts. (*See* Mot., Dkt. 10, at 15).

The Court finds that, at this stage, Plaintiff has sufficiently alleged that titles and contents of the videos she purchased were private information. The fact of Plaintiff's licensure is undoubtedly public, and MLO licensure does appear to require continuing education under Pennsylvania law. *See* 7 Pa. Cons. Stat. § 6131.1(d)(1). However, it is not apparent at this stage that the mere fact that Plaintiff had to consume content that satisfied her licensure requirements means that the specific content she consumed was public information, nor where she obtained that content, nor in what form. In other words, Defendant has not shown that Plaintiff in fact had to watch the specific videos that she purchased from Defendant in order to keep her license. As a result, construing all evidence in favor of the non-moving party, Plaintiff has alleged that her private information was disclosed.

Given that Plaintiff has sufficiently alleged that her private information was disclosed, the Court likewise finds that Plaintiff has pled an injury that is sufficiently concrete to satisfy the requirements of *Spokeo* and *TransUnion*. "[D]isclosure of private information" was specifically identified by the Supreme Court in *TransUnion* as a "harm[] traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 578 U.S. at 425. In considering whether an alleged injury has a close enough relationship with a traditional basis for a lawsuit, the Fifth Circuit

6

"focuse[s] on types of harms protected at common law, not the precise point at which those harms become actionable." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 693 (5th Cir. 2021). Or, as the Fifth Circuit has explained:

> [A] plaintiff doesn't need to demonstrate that the level of harm he has suffered would be actionable under a similar, common-law cause of action. But he does need to show that the type of harm he's suffered is similar in kind to a type of harm that the common law has recognized as actionable.

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 822 (5th Cir. 2022). The Fifth Circuit has not held that a plaintiff needs to plead each element of a specific common-law cause of action to satisfy the concreteness requirement. See *id.* (only requiring that harm be "similar" and noting that under *TransUnion*, a single unwanted communication could amount to a concrete injury if prohibited by statute, even where the parallel common law cause of action required multiple unwanted communications). Therefore, despite the parties' dispute about whether Plaintiff has alleged each element of a Texas common-law claim for publication of private facts, the Court find that Plaintiff has alleged that private information was disclosed, and further that disclosure of private information is a "type" of harm recognized at common law—and therefore that Plaintiff has pled concrete injury sufficiently for her claim to survive the motion to dismiss under Rule 12(b)(1).

Though Defendant does not challenge the other standing requirements, the Court finds those are satisfied as well: Defendant's alleged installation of Meta Pixel caused Plaintiff's alleged injury and that injury would be redressed by awarding Plaintiff damages or other relief as provided for in the VPPA. Accordingly, the Court finds that Plaintiff has standing to assert her VPPA claim and denies Defendant's Rule 12(b)(1) motion to dismiss Plaintiff's claims for lack of subject matter jurisdiction.

### B. Failure to State a Claim

The Court now turns to Defendant's Rule 12(b)(6) motion to dismiss Plaintiff's claims for failure to state a claim. The VPPA creates liability for a "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). Defendant argues that Plaintiff has failed to properly allege that: (1) Defendant is a video tape service provider ("VTSP"), (2) Plaintiff's personally identifiable information was disclosed, (3) if personally identifiable information was disclosed, Defendant did so knowingly, and (4) Plaintiff suffered actual damages. The Court considers each argument in turn.

#### 1. Plaintiff has Plausibly Alleged that Defendant is a VTSP

The VPPA defines a "video tape service provider" in relevant part as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Defendant argues that it is not a VTSP because it is in the business of providing training courses, not videos: "any videos are secondary to Mortgage Educators' business of providing continuing education courses." (Reply, Dkt. 13, at 8). However, even if Defendant defines the primary purpose of its business as providing education materials, it is undisputed that those materials include videos, and the Defendant's business includes the sale of those videos.[1] These facts plausibly show that Defendant is "engaged in the business" of "rental, sale, or delivery of audio visual materials." *See* 18

---

[1] Defendant cites nonbinding authority suggesting that delivering video content must be "a focus of the defendant's work" and further that companies only "peripherally or passively involved in video content delivery do not fall within the statutory definition of a video tape service provider." (Mot., Dkt. 10, at 17, citing *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221–2 (C.D. Cal. 2017)). Even if the Court were deciding under this authority, Plaintiff has pled that Defendant "operates and maintains" a website "where it sells various types of pre-recorded videos," (Compl., Dkt. 1 at 5-6), and at this stage that would be sufficient to allege that Defendant is more than peripherally or passively involved in video content delivery.

U.S.C. § 2710(a)(4). Therefore, the Court finds that, at this stage, Plaintiff has met her burden of pleading that Defendant is a VTSP within the meaning of the VPPA.

### 2. Plaintiff has Plausibly Alleged that Her Personally Identifiable Information was Disclosed.

Defendant argues that Plaintiff has not plausibly alleged a violation of the VPPA in part because an FID combined with a video URL is not personally identifiable information. The VPPA defines "personally identifiable information" as a term that "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). This somewhat circular definition has led to divergent approaches across circuits.

Generally, two approaches have emerged. One approach asks whether it is "reasonably foreseeable" that the disclosure of the information in question would lead to identification of individuals—taking into consideration whether information is being disclosed to a particular recipient who will, perhaps because of specialized knowledge, be able to use that information to identify individuals. *See Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016) (Souter, J., sitting by designation) ("Revealing a person's social security number to the government, for example, plainly identifies the person. Similarly, when a football referee announces a violation by 'No. 12 on the offense,' everyone with a game program knows the name of the player who was flagged."). If it is foreseeable that the information would lead to identification, the information is personally identifiable. *Id.*

By contrast, the other approach asks instead whether an "ordinary person" would be able to look at the disclosed information and identify an individual. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 290 (3d Cir. 2016) ("In our view, personally identifiable information under the Video Privacy Protection Act means the kind of information that would readily permit an ordinary person

9

to identify a specific individual's video-watching behavior."); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) ("We adopt the Third Circuit's "ordinary person" standard."). This approach bars theoretically identifying information like IP addresses from being considered personally identifiable because of their relative meaninglessness to an ordinary person. *See In re Nickelodeon*, 827 F.3d at 290. The Fifth Circuit has not yet adopted one of these positions. *Macalpine et al v. Onnit, Inc.*, No. 1:24-CV-933-DAE, at *7 (W.D. Tex. May 14, 2025).

Defendant argues for the ordinary person standard, and further argues that an ordinary person could not use an FID to identify an individual, because an FID is simply a sequence of numbers. (Mot., Dkt. 10, at 19). Plaintiff, by contrast, argues for the reasonably foreseeability standard, but claims that an FID satisfies either test. (Resp., Dkt. 12, at 14). Plaintiff alleges that an FID is a unique identifier tied to an individual's Facebook profile, and that it is a relatively simple step to enter an FID into www.facebook.com/[FID] to pull up that profile—thereby identifying the individual. (Compl., Dkt. 1, at 16).

The Court is aware that the law in this area is actively evolving—including with respect to the specific issue of whether FIDs are personally identifiable information. Specifically, the Court is aware of the recent decision by the Second Circuit in *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 55 (2d Cir. 2025), which adopts the ordinary person standard and, applying that standard, overrules some cases where District Courts in the Second Circuit had found FIDs to be personally identifiable.[2] However, the Court is also aware that there continues to be a circuit split on the relevant test for personally identifiable information, and that some district courts outside of the Second Circuit have declined to follow *Solomon. See, e.g., Manza v. Pesi, Inc.,* 784 F. Supp. 3d 1110, 1123 (W.D. Wis. 2025). At this stage, the Court continues to find the reasoning in *Macalpine* and

---

[2] *See, e.g.*, *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 159 (S.D.N.Y. 2023).

*Frawley v. Nexstar Media Group Inc.,* No. 3:23-CV-2197-L, 2024 WL 3798073, at *8 (N.D. Tex. July 22, 2024*),* R. & R. adopted, No. 3:23-CV-2197-L, 2024 WL 3807700 (N.D. Tex. Aug. 13, 2024)) persuasive. Both of those cases, from the Western and Northern District of Texas respectively, relied on a collection of district court decisions[3] to find that the plaintiffs had "sufficiently allege[d] [that] their Facebook IDs and the URLs of the video materials they requested or obtained from Defendant constitute[d] [personally identifiable information] within the meaning of the VPPA." *See Macalpine,* at *10. At the motion to dismiss stage, the Court finds that Plaintiff has sufficiently alleged that an FID, when combined with a video URL, "identifies a person as having requested or obtained specific video materials" and is therefore personally identifiable information. *See* 18 U.S.C. § 2710(a)(3).

### 3. Plaintiff has Plausibly Alleged that Defendant Disclosed her Personally Identifiable Information Knowingly

Defendant argues that, even if FIDs are personally identifiable information, it did not knowingly disclose that information because it "ha[d] no way to know whether Plaintiff—or any users—had FIDs, much less what those FIDs were, or whether Plaintiff set her browser to allow Facebook cookies." (Reply, Dkt. 13, at 11–12). However, Plaintiff has alleged that "Defendant intentionally programmed its Website to include the Meta Pixel code in order to take advantage of the targeted advertising and other informational and analytical services offered by Meta." (Compl., Dkt. 1, at 20). In short, Plaintiff has pled that Defendant installed Meta Pixel for the purpose of capturing and reporting the FIDs of users and the URLs of videos purchased by those users. This purposeful targeting of any and all customers with FIDs plausibly rises to the level of knowing

---

[3] This collection of cases includes a number of decisions from district courts from outside of the Second Circuit—decisions which are unaffected by the ruling in *Solomon. See Macalpine*, at *9 (citing *Belozerov v. Gannett Co.*, 646 F.Supp.3d 310, 314 (D. Mass. 2022) (collecting cases); *Li v. Georges Media Group LLC*, No. CV 23-1117, 2023 WL 7280519 (E.D. La. Nov. 3, 2023) (same)).

disclosure, regardless of Defendant's ignorance of whether any specific customer had an FID. At this stage, the Court finds that Plaintiff has plausibly alleged that Defendant knowingly disclosed her personally identifiable information.

### 4. Plaintiff Does Not Need to Show Actual Damages

Plaintiff and Defendant disagree about whether the VPPA requires Defendant to plead actual damages, and, if so, whether Plaintiff has plausibly alleged actual damages. (*Compare* Mot., Dkt. 10, at 16, 21, *with* Resp. Dkt. 12, at 16). This argument begins with the liability provision of the VPPA, 18 U.S.C. § 2710(b)(1), which provides that:

> A video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided in subsection (d).

Subsection (d), 18 U.S.C. § 2710(c)(2), in turn establishes that, where there is a VPPA violation:

> (2) The court may award—
> (A) actual damages but not less than liquidated damages in an amount of $2,500;
> (B) punitive damages;
> (C) reasonable attorneys' fees and other litigation costs reasonably incurred; and
> (D) such other preliminary and equitable relief as the court determines to be appropriate.

The parties' dispute on this point centers on whether § 2710(b)(1)'s reference to "subsection (d)" and then that subsection's direction that "the court may award . . . actual damages but not less than liquidated damages" means that it is necessary to plead actual damages to state a VPPA claim. At this stage, in alignment with the approach taken in the past in this district, the Court construes 18 U.S.C. § 2710(b)(1) as establishing four elements to a VPPA claim, which do not include an allegation of actual damages: a "plaintiff must allege that defendant (1) is a video tape service provider; (2) who knowingly disclosed to any person; (3) personally identifiable information; (4) concerning any consumer." *See Macalpine,* at *6.

### C. Defendant's Assertion that the VPPA Violates the First Amendment

Defendant asserts that the VPPA "places speaker- and content-based restrictions on the dissemination of information," triggering First Amendment scrutiny. (Mot., Dkt. 10, at 23). Defendant further asserts that the VPPA fails to satisfy either strict scrutiny—which Defendant asserts is the appropriate level of scrutiny—or intermediate scrutiny, and is therefore unconstitutional. (*Id.*, at 24). As a result, Defendant argues that Plaintiff's complaint "should be dismissed because it seeks to enforce an unconstitutional statute." (*Id.*, at 22).

There has been limited consideration of the constitutionality of the VPPA by federal courts. In 2024, the United States District Court for the District of Massachusetts considered this question squarely, applied intermediate scrutiny, and held that the statute was valid. *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 33 (D. Mass. 2024). In 2023, the United States District Court for the Northern District of California held that the VPPA was subject to overbreadth review but, at the motion to dismiss stage, declined to decide the issue of constitutionality. *Stark v. Patreon, Inc.*, 656 F. Supp. 3d 1018, 1039 (N.D. Cal. 2023). That court noted that a decision on the facial constitutionality of the VPPA would require comparison of the statute's "impermissible burdens" and its "plainly legitimate sweep"—analysis that would benefit from further development of the factual record. *Id.* (citing *United States v. Stevens*, 559 U.S. 460, 473 (2010)). As a result, and "taking into account the sensitivity and significance of the interests presented in clashes between First Amendment and privacy rights" the district court found the "facial challenge premature on a motion to dismiss." *Id.* (internal quotation marks and citations omitted).

At this stage, considering that the one court to have squarely examined the issue found the VPPA to be constitutional, the Court declines to dismiss on the basis that the VPPA allegedly violates the First Amendment. As the United States District Court for the Northern District of California noted in *Stark*, to the extent that Defendant is facially challenging the validity of the

13

VPPA, a ruling on that issue would benefit from a more complete factual record about the implementation and reach of the statute.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion to Dismiss, (Dkt. 10), is **DENIED**.

**SIGNED** on November 3, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE