**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| KAREN COCHENOUR, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>360TRAINING.COM, INC., D/B/A MORTGAGE EDUCATORS AND COMPLIANCE, INC.,<br><br>Defendant. | ) | Civil Action No. 1:25-CV-00007-RP |

**DEFENDANT 360TRAINING.COM, INC.'S ANSWER AND AFFIRMATIVE DEFENSES**

Defendants 360training.com, Inc., d/b/a Mortgage Educators and Compliance, Inc., ("Mortgage Educators") hereby submits its Answer and Affirmative Defenses to Plaintiff's Class Action Complaint ("Complaint"), as follows:

Plaintiff's inclusion of factual statements in footnotes and headings throughout the Complaint does not comply with Federal Rule of Civil Procedure 10(b), which requires allegations to be contained "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." As such, no response is required to these footnotes and headings. To the extent a response is required, each footnote is discussed in the relevant numbered paragraph below, and the factual assertions in the headings are all denied.

**NATURE OF THE CASE**

1. Plaintiff brings this action to redress Defendant 360training.com, LLC d/b/a Mortgage Educators and Compliance, Inc.'s practices of knowingly disclosing Plaintiff's and its other customers' identities and the titles of the prerecorded video materials that they purchased to Meta Platforms, Inc. ("Meta"), formerly known as Facebook, Inc. ("Facebook"), in violation of the federal Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 1.

2. Over the past two years, Defendant has systematically transmitted (and continues to transmit today) its customers' personally identifying video viewing information to Meta using a snippet of programming code called the "Meta Pixel," which Defendant chose to install and configure on its www.mortgageeducators.com website (the "Website").

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 2.

3. The information Defendant disclosed (and continues to disclose) to Meta via the Meta Pixel includes the customer's Facebook ID ("FID") and the title of the specific prerecorded video material that each of its customers purchased on its Website.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 3.

4. An FID is a unique sequence of numbers linked to a specific Meta profile. A Meta profile, in turn, identifies by name the specific person to whom the profile belongs (and also contains other personally identifying information about the person). Entering "Facebook.com/[FID]" into a web browser allows anyone, including Meta, to view the Meta profile of the person to whom the FID corresponds. Thus, the FID identifies a person more precisely than a name, as numerous persons may share the same name, but each person's Facebook profile (and associated FID) uniquely identifies one and only one person. In the simplest terms, the Meta Pixel installed by Defendant captures and discloses to Meta information that reveals the specific videos that a particular person purchased on Defendant's Website (hereinafter, "Private Viewing Information").

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 4.

5. Defendant disclosed and continues to disclose its customers' Private Viewing Information to Meta without asking for or obtaining their consent to these practices.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 5.

6. The VPPA clearly prohibits what Defendant has done. Subsection (b)(1) of the VPPA provides that, absent the consumer's prior informed, written consent, any "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for," 18 U.S.C. § 2710(b)(1), damages in the amount of $2,500.00, *see id.* § 2710(c).

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 6.

7. Accordingly, on behalf of herself and the putative Class members defined below, Plaintiff brings this Class Action Complaint against Defendant for intentionally and unlawfully disclosing their Personal Viewing Information to Meta.

**ANSWER**: Mortgage Educators admits that Plaintiff purports to seek the relief identified in this paragraph. Except as so admitted, Mortgage Educators denies the allegations in Paragraph 7.

## PARTIES

### I. Plaintiff

8. Plaintiff is, and at all times relevant hereto was, a citizen and resident of Allegheny County, Pennsylvania.

**ANSWER**: Mortgage Educators lacks knowledge or information sufficient to form a belief about Plaintiff's residency and therefore denies the allegations in Paragraph 8.

9. Plaintiff is, and at all times relevant hereto was, a user of Meta.

**ANSWER**: Mortgage Educators lacks knowledge or information sufficient to form a belief about whether Plaintiff uses Meta and therefore denies the allegations in Paragraph 9.

10. Plaintiff is a consumer of the video products and services offered on Defendant's www.mortgageeducators.com website. Including on or about December 7, 2023, Plaintiff purchased prerecorded video material from Defendant's www.mortgageeducators.com website by requesting and paying for such material, providing her name, email address, and home address for delivery of such material. Defendant completed the sales of goods to Plaintiff by shipping or delivering the prerecorded video material she purchased to the address she provided in her order. Accordingly, Plaintiff requested or obtained, and is therefore a consumer of, prerecorded video material sold by Defendant on its website.

**ANSWER**: Mortgage Educators admits that Plaintiff purchased access to courses on Mortgage Educators' website. Mortgage Educators admits that Plaintiff provided her name, email address, and home address in connection with her purchase, but denies that Plaintiff provided this information for delivery. Mortgage Educators denies the remaining allegations in Paragraph 10.

11. At all times relevant hereto, including when requesting or obtaining prerecorded video material from Defendant's website, Plaintiff had a Meta account, a Meta profile displaying her full name and picture, and an FID associated with such profile.

**ANSWER**: Mortgage Educators lacks knowledge or information sufficient to form a belief about the allegations in this paragraph and therefore denies the allegations in Paragraph 11.

12. Plaintiff has never consented, agreed, authorized, or otherwise permitted Defendant to disclose her Private Video Information to Meta. In fact, Defendant has never even provided Plaintiff with written notice of its practices of disclosing its customers' Private Video Information to third parties such as Meta.

**ANSWER**: Mortgage Educators denies the allegations in the first sentence of Paragraph 12. Mortgage Educators denies that it disclosed Plaintiff's private video information to third parties. Mortgage Educators denies the remaining allegations in Paragraph 12.

13. Prior to and at the time she purchased prerecorded video material from Defendant, Defendant did not notify Plaintiff that it would disclose the Private Video Information of its customers generally or that of Plaintiff in particular, and Plaintiff has never consented, agreed, authorized, or otherwise permitted Defendant to disclose her Private Video Information to third parties. Plaintiff has never been provided any written notice that Defendant discloses its customers' Private Video Information or any means of opting out of such disclosures of her Private Video Information.

**ANSWER**: Mortgage Educators denies the allegations in the first sentence of Paragraph 13. Mortgage Educators denies that it disclosed Plaintiff's or its customers' private video information to third parties. Mortgage Educators denies the remaining allegations in Paragraph 13.

14. Because Defendant disclosed Plaintiff's Private Video Information (including her FID, unique identifiers, and her request or purchase of prerecorded video material from Defendant's website) to third parties during the applicable statutory period, Defendant violated Plaintiff's rights under the VPPA and invaded her statutorily conferred interest in keeping such information (which bears on her personal affairs and concerns) private.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 14.

## II. Defendant

1. Defendant 360training.com, LLC d/b/a Mortgage Educators and Compliance, Inc. is a corporation existing under the laws of Texas, with a principal place of business at 6504 Bridge Point Pkwy Suite 10 Austin, TX 78730-5011. Defendant operates and maintains the Website www.mortgageeducators.com, where it sells various types of pre-recorded videos.

**ANSWER**: Mortgage Educators denies that it is a limited liability company but admits that it is a Texas corporation with a principal place of business at 6504 Bridge Point Pkwy Suite 100 Austin, TX 78730. Mortgage Educators admits that it operates the website

www.mortgageeducators.com. Mortgage Educators denies the remaining allegations in Paragraph 1.

## JURISDICTION AND VENUE

2. The Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 2710.

**ANSWER**: Mortgage Educators admits that Plaintiff's claims arise under a federal statute but denies that this Court has Article III jurisdiction to hear this case because Plaintiff has not suffered an injury-in-fact.

3. Personal jurisdiction and venue are proper because Defendant maintains its headquarters and principal place of business in Austin, Texas, within this judicial District.

**ANSWER**: Mortgage Educators admits the allegations in Paragraph 3.

## VIDEO PRIVACY PROTECTION ACT

4. The VPPA prohibits companies (like Defendant) from knowingly disclosing to third parties (like Meta) information that personally identifies consumers (like Plaintiff) as having viewed particular videos or other audio-visual materials.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 4.

5. Specifically, subject to certain exceptions that do not apply here, the VPPA prohibits "a video tape service provider" from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider[.]" 18 U.S.C. § 2710(b)(1). The statute defines a "video tape service provider" as "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4). It defines a "consumer" as "a renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). "'[P]ersonally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

**ANSWER**: Mortgage Educators denies that the VPPA applies and denies that exceptions to the VPPA do not apply. Mortgage Educators further denies the allegations in Paragraph 5 to the extent that they misquote 18 U.S.C. § 2710. Mortgage Educators denies the remaining allegations in Paragraph 5.

6. Leading up to the VPPA's enactment in 1988, members of the United States Senate warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes." *Id.* Senators at the time were particularly troubled by disclosures of records that reveal consumers' purchases and rentals of videos and other audiovisual materials because such records offer "a window into our loves, likes, and dislikes," such that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S. Rep. No. 100-599 at 7-8 (1988) (statements of Sens. Simon and Leahy, respectively).

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 6 to the extent that they misquote legislative history. Mortgage Educators denies the remaining allegations in Paragraph 6.

7. Thus, in proposing the Video and Library Privacy Protection Act (which later became the VPPA), Senator Patrick J. Leahy (the senior Senator from Vermont from 1975 to 2023) sought to codify, as a matter of law, that "our right to privacy protects the choice of movies that we watch with our family in our own homes." 134 Cong. Rec. S5399 (May 10, 1988). As Senator Leahy explained at the time, the personal nature of such information, and the need to protect it from disclosure, is the raison d'être of the statute: "These activities are at the core of any definition of personhood. They reveal our likes and dislikes, our interests and our whims. They say a great deal about our dreams and ambitions, our fears and our hopes. They reflect our individuality, and they describe us as people." *Id*.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 7 to the extent that they misquote legislative history. Mortgage Educators denies the remaining allegations in Paragraph 7.

8. While these statements rang true in 1988 when the act was passed, the importance of legislation like the VPPA in the modern era of data mining is more pronounced than ever before. During a more recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century," Senator Leahy emphasized the point by stating: "While it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the 'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information."[1]

---

[1] The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century, Senate Judiciary Committee Subcommittee on Privacy, Technology and the Law, http://www.judiciary.senate.gov/meetings/the-video-privacy-protection-act-protecting-viewer-privacy-in-the-21stcentury.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 8 to the extent that they misquote legislative history. Mortgage Educators denies the remaining allegations in Paragraph 8.

9. Former Senator Al Franken may have said it best: "If someone wants to share what they watch, I want them to be able to do so . . . But I want to make sure that consumers have the right to easily control who finds out what they watch—and who doesn't. The Video Privacy Protection Act guarantees them that right."[2]

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 9 to the extent that they misquote legislative history. Mortgage Educators denies the remaining allegations in Paragraph 9.

10. In this case, however, Defendant deprived Plaintiff and numerous other similarly situated persons of that right by systematically (and surreptitiously) disclosing their Private Viewing Information to Meta, without providing notice to (let alone obtaining consent from) any of them, as explained in detail below.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 10.

## BACKGROUND FACTS

### I. Consumers' Personal Information Has Real Market Value

11. In 2001, Federal Trade Commission ("FTC") Commissioner Orson Swindle remarked that "the digital revolution . . . has given an enormous capacity to the acts of collecting and transmitting and flowing of information, unlike anything we've ever seen in our lifetimes . . . [and] individuals are concerned about being defined by the existing data on themselves."[3]

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 11 to the extent that they misquote the alleged speaker. Mortgage Educators denies the remaining allegations in Paragraph 11.

---

2 Chairman Franken Holds Hearing on Updated Video Privacy Law for 21st Century, franken.senate.gov (Jan. 31, 2012).

3 Transcript, *The Information Marketplace* (Mar. 13, 2001), at 8-11, available at https://www.ftc.gov/sites/default/files/documents/public_events/information-marketplace-merging-andexchanging-consumer-data/transcript.pdf.

12. Over two decades later, Commissioner Swindle's comments ring truer than ever, as consumer data feeds an information marketplace that supports a 26 billion dollar per year online advertising industry in the United States.[4]

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 12.

13. The FTC has also recognized that consumer data possesses inherent monetary value within the new information marketplace and publicly stated that:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[5]

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 13.

14. In fact, an entire industry exists while companies known as data aggregators purchase, trade, and collect massive databases of information about consumers. Data aggregators then profit by selling this "extraordinarily intrusive" information in an open and largely unregulated market.[6]

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 14.

15. The scope of data aggregators' knowledge about consumers is immense: "If you are an American adult, the odds are that [they] know[] things like your age, race, sex, weight, height, marital status, education level, politics, buying habits, household health worries, vacation dreams—and on and on."[7]

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 15.

---

[4] *See* Julia Angwin and Emily Steel, *Web's Hot New Commodity: Privacy*, Wall Street Journal (Feb. 28, 2011), available at https://www.wsj.com/articles/SB10001424052748703529004576160764037920274.

[5] Statement of FTC Cmr. Harbour (Dec. 7, 2009), at 2, available at https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf

[6] *See* M. White, *Big Data Knows What You're Doing Right Now*, TIME.com (July 31, 2012), available at http://moneyland.time.com/2012/07/31/big-data-knows-what-youre-doing-right-now/.

[7] N. Singer, *You for Sale: Mapping, and Sharing, the Consumer Genome*, N.Y. Times (June 16, 2012), available at https://www.nytimes.com/2012/06/17/technology/acxiom-the-quiet-giant-of-consumer-database-marketing.html#:~:text=It's%20called%20the%20Acxiom%20Corporation,to%20know%20much%2C%20much%20more.

16. Further, "[a]s use of the Internet has grown, the data broker industry has already evolved to take advantage of the increasingly specific pieces of information about consumers that are now available."[8]

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 16.

17. Recognizing the severe threat the data mining industry poses to consumers' privacy, on July 25, 2012, the co-chairmen of the Congressional Bi-Partisan Privacy Caucus sent a letter to nine major data brokerage companies seeking information on how those companies collect, store, and sell their massive collections of consumer data, stating in pertinent part:

> By combining data from numerous offline and online sources, data brokers have developed hidden dossiers on every U.S. consumer. This large[-]scale aggregation of the personal information of hundreds of millions of American citizens raises a number of serious privacy concerns.[9]

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 17.

18. Data aggregation is especially troublesome when consumer information is sold to direct-mail advertisers. In addition to causing waste and inconvenience, direct-mail advertisers often use consumer information to lure unsuspecting consumers into various scams, including fraudulent sweepstakes, charities, and buying clubs. Thus, when companies like Onnit share information with data aggregators, data cooperatives, and direct-mail advertisers, they contribute to the "[v]ast databases" of consumer data that are often "sold to thieves by large publicly traded companies," which "put[s] almost anyone within the reach of fraudulent telemarketers" and other criminals.[10]

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 18.

19. Disclosures like Defendant's are particularly dangerous to the elderly. "Older Americans are perfect telemarketing customers, analysts say, because they are often at home, rely on delivery services, and are lonely for the companionship that telephone callers provide."[11]

---

[8] Letter from Sen. J. Rockefeller IV, Sen. Cmtee. On Commerce, Science, and Transportation, to S. Howe, Chief Executive Officer, Acxiom (Oct. 9, 2012) available at https://www.commerce.senate.gov/services/files/3bb94703-5ac8-4157-a97b-%20a658c3c3061c.

[9] *See Bipartisan Group of Lawmakers Query Data Brokers About Practices Involving Consumers' Personal Information*, Website of Sen. Markey (July 24, 2012), available at https://www.markey.senate.gov/news/press-releases/bipartisan-group-of-lawmakersquery-data-brokers-about-practices-involving-consumers-personal-information.

[10] *See* Charles Duhigg, *Bilking the Elderly, with a Corporate Assist*, N.Y. Times (May 20, 2007), available at https://www.nytimes.com/2007/05/20/business/20tele.html.

[11] *Id*.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 19.

20. The FTC notes that "[t]he elderly often are the deliberate targets of fraudulent telemarketers who take advantage of the fact that many older people have cash reserves or other assets to spend on seemingly attractive offers."[12]

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 20 to the extent that they misquote the FTC. Mortgage Educators denies the remaining allegations in Paragraph 20.

21. Indeed, an entire black market exists while the personal information of vulnerable elderly Americans is exchanged. Thus, information disclosures like Defendant's are particularly troublesome because of their cascading nature: "Once marked as receptive to [a specific] type of spam, a consumer is often bombarded with similar fraudulent offers from a host of scam artists."[13]

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 21.

22. Defendant is not alone in violating its customers' statutory rights and jeopardizing their well-being in exchange for increased revenue: disclosing customer and subscriber information to data aggregators, data appenders, data cooperatives, direct marketers, and other third parties has become a widespread practice. Unfortunately for consumers, however, this growth has come at the expense of their most basic privacy rights.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 22.

## II. Consumers Place Monetary Value on Their Privacy and Consider Privacy Practices When Making Purchases

23. As the data aggregation industry has grown, so has consumer concerns regarding personal information.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 23.

24. A survey conducted by Harris Interactive on behalf of TRUSTe, Inc. showed that 89 percent of consumers polled avoid doing business with companies who they believe do protect their privacy online.[14] As a result, 81 percent of smartphone users polled said that they avoid using smartphone apps that they don't believe protect their privacy online.[15]

---

12 Prepared Statement of the FTC on "Fraud Against Seniors" before the Special Committee on Aging, United States Senate (August 10, 2000).

13 *Id.*

14 *See 2014 TRUSTe US Consumer Confidence Privacy Report*, TRUSTe, http://www.theagitator.net/wp-content/uploads/012714_ConsumerConfidenceReport_US1.pdf.

15 *Id.*

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 24.

25. Thus, as consumer privacy concerns grow, consumers increasingly incorporate privacy concerns and values into their purchasing decisions, and companies viewed as having weaker privacy protections are forced to offer greater value elsewhere (through better quality and/or lower prices) than their privacy-protective competitors. In fact, consumers' personal information has become such a valuable commodity that companies are beginning to offer individuals the opportunity to sell their personal information themselves.[16]

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 25.

26. These companies' business models capitalize on a fundamental tenet underlying the personal information marketplace: consumers recognize the economic value of their private data. Research shows that consumers are willing to pay a premium to purchase services from companies that adhere to more stringent policies of protecting their personal data.[17]

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 26.

27. Thus, in today's digital economy, individuals and businesses alike place a real, quantifiable value on consumer data and corresponding privacy rights.[18] As such, where a business offers customers a product or service that includes statutorily guaranteed privacy protections, yet fails to honor these guarantees, the customer receives a product or service of less value than the product or service paid for.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 27.

## III. Defendant Uses the Meta Pixel to Systematically Disclose its Customers' Private Viewing Information to Meta

28. As alleged below, whenever a person with a Meta account purchases prerecorded video material from Defendant on its Website, the Meta Pixel technology that Defendant intentionally installed on its Website transmits the customer's personally identifying information and detailed Private Viewing Information (revealing the specific titles of the prerecorded video material that he or she purchased) to Meta – all without the customer's consent, and in clear violation of the VPPA.

---

[16] *See* Joshua Brustein, *Start-Ups Seek to Help Users Put a Price on Their Personal Data*, N.Y. Times (Feb. 12, 2012), available at https://www.nytimes.com/2012/02/13/technology/startups-aim-to-help-users-put-a-price-on-their-personal-data.html.

[17] *See* Tsai, Cranor, Acquisti, and Egelman, *The Effect of Online Privacy Information on Purchasing Behavior*, 22(2) Information Systems Research 254, 254 (2011); *see* also European Network and Information Security Agency, *Study on Monetizing Privacy* (Feb. 27, 2012), available at https://www.enisa.europa.eu/publications/monetising-privacy.

[18] *See* Hann, et al., *The Value of Online Information Privacy: An Empirical Investigation* (Oct. 2003) at 2, available at https://www.comp.nus.edu.sg/~ipng/research/privacy.pdf.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 28.

**A. The Meta Pixel**

29. On February 4, 2004, Mark Zuckerberg and others launched Facebook, now known as "Meta".[19] Meta is now the world's largest social media platform. To create a Meta account, a person must provide, *inter alia*, his or her first and last name, birth date, gender, and phone number or email address.

**ANSWER**: Mortgage Educators lacks knowledge or information sufficient to form a belief about the allegations in this paragraph and therefore denies the allegations in Paragraph 29.

30. The Meta Pixel, first introduced in 2013 as the "Facebook Pixel," is a unique string of code that companies can embed on their websites to monitor and track the actions taken by visitors to their websites and to report them back to Meta. This allows companies like Defendant to build detailed profiles about their customers and to serve them with highly targeted advertising.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 30.

31. Additionally, a Meta Pixel installed on a company's website allows Meta to "match [] website visitors to their respective Facebook User accounts."[20] This is because Meta has assigned to each of its users an "FID" number – a unique and persistent identifier that allows anyone to look up the user's unique Meta profile and thus identify the user by name[21] – and because each transmission of information made from a company's website to Meta via the Meta Pixel is accompanied by, *inter alia*, the FID of the website's visitor. As such, the FIDs assigned to Meta users are personally identifying within the meaning of the VPPA. *See* 18 U.S.C. § 2710(b)(1).

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 31 and footnote 21.

32. As Meta's developer's guide explains, installing the Meta Pixel on a website allows Meta to track actions that users with Meta accounts take on the site. Meta states that "Examples of [these] actions include adding an item to their shopping cart or making a purchase."[22]

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 32.

---

19 *See* Facebook, "Company Info," available at https://about.fb.com/company-info./.

20 Meta, "Get Started – Meta Pixel," available at https://developers.facebook.com/docs/meta-pixel/get-started/.

21 For example, Mark Zuckerberg's FID is reportedly the number "4," so logging into Facebook and typing www.facebook.com/4 in the web browser retrieves Mark Zuckerberg's Facebook page: www.facebook.com/zuck, and all of the additional personally identifiable information contained therein

22 Meta, "About Meta Pixel," available at https://www.facebook.com/business/help/742478679120153?id=1205376682832142.

33. Meta's Business Tools Terms govern the use of Meta's Business Tools, including the Meta Pixel.[23]

**ANSWER**: Mortgage Educators states that the allegations contained in this paragraph are legal conclusions to which no answer is required. To the extent an answer is required, Mortgage Educators denies the allegations in Paragraph 33.

34. Meta's Business Tools Terms state that website operators may use Meta's Business Tools, including the Meta Pixel, to transmit the "Contact Information" and "Event Data" of their website's visitors to Meta.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 34.

35. Meta's Business Tools Terms define "Contact Information" as "information that personally identifies individuals, such as names, email addresses, and phone numbers . . . ."[24]

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 35 and denies that the terms cited in footnote 24 were in effect when Plaintiff allegedly visited the website.

36. Meta's Business Tools Terms state: "You instruct us to process the Contact Information solely to match the Contact Information against user IDs [e.g., FIDs] ("Matched User IDs"), as well as to combine those user IDs with corresponding Event Data."[25]

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 36 and denies that the terms cited in footnote 25 were in effect when Plaintiff allegedly visited the website.

37. The Business Tools Terms define "Event Data" as, *inter alia*, "information that you share about people and the actions that they take on your websites and apps or in your shops, such as visits to your sites, installations of your apps, and purchases of your products."[26]

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 37 and denies that the terms cited in footnote 26 were in effect when Plaintiff allegedly visited the website.

---

23 Meta, "Meta Business Tools Terms," available at https://www.facebook.com/legal/technology_terms.

24 *Id.*

25 *Id.*

26 *Id.*

38. Website operators use the Meta Pixel to send information about visitors to their Websites to Meta. Every transmission to Meta accomplished through the Meta Pixel includes at least two elements: (1) the website visitor's FID and (2) the webpage's URL triggering the transmission.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 38.

39. Depending on the configuration of the Meta Pixel, the website may also send Event Data to Meta. Defendant has configured the Meta Pixel on its Website to send Event Data to Meta.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 39.

40. When website operators make transmissions to Meta through the Meta Pixel, none of the following categories of information are hashed or encrypted: the visitor's FID, the website URL, or the Event Data.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 40.

41. Every website operator installing the Meta Pixel must agree to the Meta Business Tools Terms.[27]

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 41.

42. Moreover, the Meta Pixel can follow a consumer to different websites and across the Internet even after the consumer's browser history has been cleared.

**ANSWER**: Mortgage Educators lacks knowledge or information sufficient to form a belief about the allegations in this paragraph and therefore denies the allegations in Paragraph 42.

43. Meta has used the Meta Pixel to amass a vast digital database of dossiers comprised of highly detailed personally identifying information about each of its billions of users worldwide, including information about all of its users' interactions with any of the millions of websites across the Internet on which the Meta Pixel is installed. Meta then monetizes this Orwellian database by selling advertisers the ability to serve highly targeted advertisements to the persons whose personal information is contained within it.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 43.

44. Simply put, if a company chooses to install the Meta Pixel on its website, both the company who installed it and Meta (the recipient of the information it transmits) are then able to

27 *See id*.

"track [] the people and type of actions they take,"[28] including, as relevant here, the specific prerecorded video material that they purchase on the website.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 44.

**B. Defendant Knowingly Uses the Meta Pixel to Transmit the Private Viewing Information of its Customers to Meta**

45. Defendant sells prerecorded video materials to consumers on its Website, www.mortgageeducators.com. The prerecorded video materials that Defendant offers include online courses for licensure and continuing education, webinars, and trainings.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 45.

46. To make a purchase of prerecorded video material from Defendant's Website, a person must provide at least his or her name, email address, billing address, and credit or debit card (or other form of payment) information.

**ANSWER**: Mortgage Educators admits that a person provides their name, email address, billing address, and payment information to purchase access to a course. Mortgage Educators denies the remaining allegations in Paragraph 46.

47. Whenever a person with a Meta account purchases prerecorded video material from Defendant on its Website, Defendant uses – and has used at all times relevant hereto – the Meta Pixel to disclose to Meta the unencrypted FID of the person who made the purchase and the specific title of video material that the person purchased, as well as the URL where such video material is available for purchase.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 47.

48. In this way, among other methods, Defendant knowingly discloses to Meta the Private Viewing Information of its consumers. Specifically, when consumers add videos to their virtual "cart" on Defendant's Website and proceed through the checkout flow, the Website executes a GET request to Facebook's tracking URL "https://www.facebook.com/tr" and sends it various query string parameters and cookie values which disclose the name of the videos watched and purchased by the consumer and the consumer's FID.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 48.

49. Defendant intentionally programmed its Website to include the Meta Pixel code in order to take advantage of the targeted advertising and other informational and analytical services offered by Meta. The Meta Pixel code systematically transmits to Meta the FID of each person

---

[28] Meta, "Retargeting: How to Advertise to Existing Customers with Ads on Facebook," available at https://www.facebook.com/business/goals/retargeting?checkpoint_src=any.

with a Meta account who purchases prerecorded video material on its Website, along with the specific title of the prerecorded video material that the person purchased.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 49.

50. With only a person's FID and the title of the prerecorded video material (or URL where such material is available for purchase) that the person purchased from Defendant on its Website—all of which Defendant knowingly provides to Meta on a systematic basis—any ordinary person could learn the identity of the person to whom the FID corresponds and the title of the specific prerecorded video material that the person purchased (and thus requested and obtained). This can be accomplished simply by accessing the URL www.facebook.com/[*insert the person's FID here*]/.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 50.

51. Defendant's practices of disclosing the Private Viewing Information of its customers to Meta continued unabated for the duration of the two-year period preceding the filing of this action. At all times relevant hereto, whenever Plaintiff or any other person purchased prerecorded video material from Defendant on its Website, Defendant disclosed to Meta (*inter alia*) the specific title of the video material that was purchased (including the URL where such material is available for purchase), along with the FID of the person who purchased it (which, as discussed above, uniquely identified the person).

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 51.

52. At all times relevant hereto, Defendant knew the Meta Pixel was disclosing its customers' Private Viewing Information to Meta.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 52.

53. Although Defendant could easily have programmed its Website so that none of its customers' Private Viewing Information is disclosed to Meta, Defendant instead chose to program its Website so that all of its customers' Private Viewing Information is disclosed to Meta.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 53.

54. Before transmitting its customers' Private Viewing Information to Meta, Defendant failed to notify any of them that it would do so, and none of them have ever consented (in writing or otherwise) to these practices.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 54.

55. By intentionally disclosing to Meta Plaintiff's and its other customers' FIDs together with the specific video material that they each purchased, without any of their consent to these practices, Defendant knowingly violated the VPPA on an enormous scale.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 55.

## CLASS ACTION ALLEGATIONS

56. Plaintiff seeks to represent a class defined as all persons in the United States who, during the two years preceding the filing of this action, purchased prerecorded video material from Defendant's www.mortgageeducators.com Website while maintaining an account with Meta Platforms, Inc. f/k/a Facebook, Inc.

**ANSWER**: Mortgage Educators admits that Plaintiff purports to represent a putative class of persons described in Paragraph 56. Mortgage Educators denies that this case can be certified as a class action and denies the remaining allegations in Paragraph 56.

57. Class members are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in at least the tens of thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the membership records of Defendant.

**ANSWER**: Mortgage Educators denies that this case can be certified as a class action and denies the remaining allegations in Paragraph 57.

58. Common questions of law and fact exist for all Class members and predominate over questions affecting only individual class members. Common legal and factual questions include but are not limited to (a) whether the Defendant embedded Meta Pixel on its Website that monitors and tracks actions taken by visitors to its Website; (b) whether Defendant reports the actions and information of visitors to Meta; (c) whether Defendant knowingly disclosed Plaintiff's and Class members' Private Viewing Information to Meta; (d) whether Defendant's conduct violates the Video Privacy Protection Act, 18 U.S.C. § 2710; and (e) whether each Plaintiff and Class members is entitled to a statutory damage award of $2,500, as provided by the VPPA.

**ANSWER**: Mortgage Educators denies that this case can be certified as a class action and denies the remaining allegations in Paragraph 58.

59. The named Plaintiff's claims are typical of the claims of the Class in that Defendant's conduct toward the putative class is the same. That is, Defendant embedded Meta Pixel on its Website to monitor and track actions taken by class members to its Website and report this to Meta. Further, the named Plaintiff and the Class members suffered invasions of their statutorily protected right to privacy (as afforded by the VPPA), as well as intrusions upon their private affairs and concerns that would be highly offensive to a reasonable person, as a result of Defendant's uniform and wrongful conduct in intentionally disclosing their Privachase Information to Meta.

**ANSWER**: Mortgage Educators denies that this case can be certified as a class action and denies the remaining allegations in Paragraph 59.

60. Plaintiff is an adequate representative of the Class because she is interested in the litigation; her interests do not conflict with those of the Class members she seeks to represent; she has retained competent counsel experienced in prosecuting class actions and who intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of all Class members.

**ANSWER**: Mortgage Educators denies that this case can be certified as a class action and denies the remaining allegations in Paragraph 60.

61. The class mechanism is superior to other available means for the fair and efficient adjudication of Class members' claims. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by this case's complex legal and factual issues. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication of the common questions of law and fact, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**ANSWER**: Mortgage Educators denies that this case can be certified as a class action and denies the remaining allegations in Paragraph 61.

## CAUSE OF ACTION
## Violation of the Video Privacy Protection Act, 18 U.S.C. § 2710

62. Plaintiff repeats the allegations asserted in the preceding paragraphs as if fully set forth herein.

**ANSWER**: Mortgage Educators hereby incorporates by reference its Answers to the preceding paragraphs of the Complaint.

63. The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally identifying information" concerning any "consumer" to a third party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C. § 2710.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 63.

64. As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials[.]" Defendant is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it is engaged in the business of selling and delivering prerecorded video materials, similar to prerecorded video cassette tapes, to consumers nationwide.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 64.

65. As defined in 18 U.S.C. § 2710(a)(1), a "'consumer' means any renter, purchaser, or consumer of goods or services from a video tape service provider." As alleged above, Plaintiff and Class members are each a "consumer" withing the meaning of the VPPA because they each purchased prerecorded video material from Defendant's Website that was sold and delivered to them by Defendant.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 65.

66. As defined in 18 U.S.C. § 2710(a)(3), "'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." The Private Viewing Information that Defendant transmitted to Meta constitutes "personally identifiable information" as defined in 18 U.S.C. § 2710(a)(3) because it identified Plaintiff and Class members to Meta as an individual who purchased, and thus "requested or obtained," specific prerecorded video material from Defendant via its Website.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 66.

67. Defendant knowingly disclosed Plaintiff's and Class members' Private Viewing Information to Meta via the Meta Pixel technology because Defendant intentionally installed and programmed the Meta Pixel code on its Website, knowing that such code would transmit to Meta the titles of the video materials purchased by its customers coupled with its customers' unique identifiers (including FIDs).

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 67.

68. Defendant failed to obtain informed written consent from any of the Plaintiff or Class members authorizing it to disclose their Private Viewing Information to Meta or any other third party. More specifically, at no time prior to or during the applicable statutory period did Defendant obtain from any person who purchased prerecorded video material on its Website (including any of the Plaintiff or Class members) informed, written consent that was given in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer, that was given at the time the disclosure is sought or was given in advance for a set period of time, not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner, or that was given after Defendant provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw consent on a case-by-case basis or to withdraw consent from ongoing disclosures, at the consumer's election. *See* 18 U.S.C. § 2710(b)(2).

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 68.

69. By disclosing Plaintiff's and Class members' Private Viewing Information, Defendant violated their statutorily protected right to privacy in their Private Viewing Information.

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 69.

70. Consequently, Defendant is liable to Plaintiff and Class members for damages in the statutorily set sum of $2,500. 18 U.S.C. § 2710(c)(2)(A).

**ANSWER**: Mortgage Educators denies the allegations in Paragraph 70.

## AFFIRMATIVE AND OTHER DEFENSES

Without admitting any of the allegations of the Complaint, and without admitting or acknowledging that Mortgage Educators bears any burden of proof as to any of them, Mortgage Educators asserts the following additional defenses:

1. The Complaint fails to state a claim upon which relief can be granted.

2. Plaintiff and some or all of the persons whom she seeks to represent in a putative class lack standing to assert a claim under the VPPA because they did not suffer any injury, much less an injury that is concrete and particularized, traceable, and redressible necessary to satisfy Article III of the U.S. Constitution.

3. Plaintiff and some or all of the persons whom she seeks to represent in a putative class have not been aggrieved by any act of Mortgage Educators.

4. Plaintiff and some or all of the persons whom she seeks to represent in a putative class have not suffered any actual damages.

5. The VPPA violates Mortgage Educators' First Amendment rights, both facially and as applied.

6. The VPPA violates Mortgage Educators' Fifth Amendment rights to Due Process, both facially and as applied.

7. To the extent that Plaintiff and any person in the putative class suffered any damages, such resulted, in whole or in part, from their own conduct and/or the conduct of third parties.

8. Mortgage Educators acted at all times in good faith and without malice, willfulness, or reckless indifference, barring any recovery of punitive or exemplary damages by Plaintiff and the putative class.

9. To the extent that Plaintiff and the putative class suffered any damages, the claims of Plaintiff and the putative class are subject to setoff and recoupment.

10. To the extent that Plaintiff and the putative class suffered any damages, they failed to mitigate such damages.

11. Plaintiff and the putative class expressly or impliedly consented to the conduct alleged in the Complaint.

12. The claims of Plaintiff and persons in the putative class are barred by estoppel, waiver, laches, unclean hands, and/or other equitable defenses to the extent that Plaintiff and persons in the putative class voluntarily participated in the conduct giving rise to the claims, including, but not limited to, how each person chose to configure their own browser settings when visiting Mortgage Educator's website.

13. The claims of Plaintiff and putative class members are barred to the extent they accrued outside the applicable statute of limitations.

14. Plaintiff's claims are barred in whole or in part by Mortgage Educators' good faith, and the absence of negligent, intentional, or reckless conduct. To the extent the VPPA applies to Mortgage Educators or the conduct at issue in this case, Mortgage Educators is not liable because

it relied in good faith upon a reasonable interpretation of the VPPA's statutory language and any alleged violation was not negligent, intentional, or reckless.

15. Upon information and belief, Plaintiff and the putative class members approved and, in some cases, participated in the complained-of conduct. Accordingly, they are barred from bringing their claims under the doctrines of ratification and acquiescence.

WHEREFORE, having fully answered or otherwise responded to the allegations in Plaintiff's Complaint, Mortgage Educators prays that:

(1) Plaintiff's Complaint be dismissed in its entirety with prejudice; and

(2) Mortgage Educators recover other and additional relief as the Court deems just and appropriate.

Dated: December 1, 2025

Respectfully submitted,

BAKER & HOSTETLER LLP

By: */s/ Rachel Palmer Hooper*

Rachel Palmer Hooper
Texas Bar No. 24039102
811 Main Street, Suite 1100
Houston, Texas 77002
Tel: 713.646.1329
Fax: 713.751.1717
rhooper@bakerlaw.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, December 1, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

/s/ *Rachel Palmer Hooper*